**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

U.S. DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

SEP 3 0 2022

FILED/REC'D
CLERK OF COURT

DANIEL M. OLSON,

　　　　Plaintiff,

v.

SAUK COUNTY, and

AEGIS CORPORATION, CROSS JENKS MERCER MAFFEI, HAWKS QUINDEL, JACKSON LEWIS, VON BRIESEN AND ROPER, WISCONSIN COUNTIES ASSOCIATION, WISCONSIN COUNTY MUTUAL INSURANCE CORPORATION, and

DAVID BISEK, GEORGIA BOEHLKE, ALENE KLEZCEK-BOLIN, CRAIG BRAUNSCHWEIG, TOMMY BYCHINSKI, JOEL CHRISLER, IAN CRAMMOND, RICHARD CROSS, ROSS CURRY, JACOB CURTIS, WALLY CZUPRYNKO, BRIAN DESMOND, MARK DETTER, JOHN DIETRICH, THOMAS DORNER, LYNN EBERL, BECKY EVERT, MIKE FLINT, SHANE GIBSON, COLIN GOOD, CARL G. GRUBER, BRENT HAZARD, PETER KINSMAN, REBECCA KLITZKE, MARTIN KRUEGER, BENJAMIN LETENDRE, BRANDON LOHR, VALERIE MCAULIFFE, TIMOTHY B. MCCUMBER, RICHARD MEISTER, ROB NELSON, DEBRA O'ROURKE, BRIAN PEPER, ANDREW PHILLIPS, DENNIS POLIVKA, MICHELLE POSEWITZ, PATRICIA REGO, GARY REHFELDT, TIMOTHY REPPEN, DAVID RIEK, DELMAR SCANLON, KEVIN SCHNELL, CHARLES SPENCER, TERRY SPENCER, RONALD STADLER, DONNA STEHLING, DONALD STEVENS, KRISTIN WHITE EAGLE, CHARLES WHITSELL, JAMES WITECHA and JANE DOE,

　　　　Defendants.

COMPLAINT
JURY TRIAL DEMANDED

22　CV　562　WMC

---

**COMPLAINT AND JURY TRIAL DEMAND**

---

Plaintiff, Daniel M. Olson, *pro se*, respectfully alleges for his Complaint and Jury Trial Demand as follows:

**INTRODUCTION**

This case is about a group of public officials, public employees and others, the Defendants, who willingly or complicitly betrayed their public, professional and private duty(s) to try and hide appalling misconduct and, when that failed, to viciously attack the one man, Mr. Olson, who would not sell his principles, his duty or his conscience for a severance check.

Mr. Olson now seeks justice for the people of Sauk County, who have a right to know what really happened, for a disabled man, who needlessly died in squalid isolation because three (3) government lawyers and a powerful county official lacked sufficient conviction and compassion to care, and for himself and his family, who needlessly suffered grave harm and damages when Defendants betrayed their public duty(s) so they could ruthlessly brutalize Mr. Olson's reputation, profession and life or betrayed their conscience so they did not have to find the courage or compassion to stop the savagery inflicted on Mr. Olson they clearly saw.

Pursuant to federal and state law, Mr. Olson brings the following actions against the named Defendants and seeks compensatory damages, punitive or exemplary damages, equitable relief, litigation costs and attorney fees, and all other just and proper remedies for injuries to his rights and interests secured by the laws and Constitution of the United States, the laws and Constitution of the State of Wisconsin and all applicable law.

STATEMENT OF CLAIMS

1. Plaintiff suffered violations of his federal civil rights by acts or omissions of Defendants that violated the First and Fourteenth Amendments to the U.S. Constitution.

2. Plaintiff suffered violations of his state civil rights by acts or omissions of Defendants that violated the Wisconsin Constitution or other Wisconsin law.

3. Plaintiff brings suit under 42 U.S.C. § 1983 and Wisconsin law.

4. Plaintiff seeks declaratory relief, money damages and equitable relief from Defendants for violating his civil rights and to prevent future violations by Defendants.

5. Plaintiff seeks declaratory relief, money damages and equitable relief from Defendants for violating his civil rights.

6. Plaintiff has served notice of his supplemental state law claims in compliance with Wis. Stat. § 893.80.

JURISDICTION & VENUE

7. This Court possesses proper subject matter jurisdiction.

8. Plaintiff's claims arise under the Constitution and laws of the United States and this Court has jurisdiction over these claims under 28 U.S.C. §§ 1331, 1343(a)(3), 42 U.S.C. §§ 1983, 1985 and 1988, 42 U.S.C. § 200d, and common law.

2

9. Plaintiff's claims arise under the Constitution and laws of Wisconsin and this Court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367(a) and Wisconsin law.

10. Plaintiff seeks declaratory relief and injunctive relief and this Court has authority to grant declaratory and injunctive relief under 28 U.S.C. § 2201-2202 and Fed. R. Civ. P. 57 and 65.

11. This Court possesses proper personal jurisdiction over the parties and venue is proper in the U.S. District Court Western District of Wisconsin under 28 U.S.C. § 1391(e).

12. Plaintiff resides in U.S. District Court Western District of Wisconsin territory.

13. All defendants except Jacob Curtis, Colin Good, Andrew Phillips, Michele Posewitz, Ronald Stadler, von Briesen and Roper law firm, Jackson Lewis law firm, Aegis Corporation, Wisconsin Counties Association and Wisconsin County Mutual Insurance Corporation, all reside or are located in U.S. District Court Western District of Wisconsin territory.

14. All of the acts or omissions complained of occurred in full or part in and all of Plaintiff's causes of action arose in U.S. District Court Western District of Wisconsin territory.

## PARTIES

### Plaintiff

15. The Plaintiff, Daniel M. Plaintiff (Plaintiff), is an adult resident of Madison, Dane County, Wisconsin.

### Defendants: Non-Natural Persons

16. Defendant Aegis Corporation was, at all relevant times, a business entity located in Wisconsin.

17. Cross Jenks Mercer Maffei was, at all relevant times, a law firm located in Wisconsin.

18. Hawks Quindel was, at all relevant times, a law firm located in Wisconsin.

19. Jackson Lewis was, at all relevant times, a law firm located in Wisconsin.

20. Sauk County was, at all relevant times, a municipal corporation located in Wisconsin.

21. Von Briesen and Roper was, at all relevant times, a law firm located in Wisconsin.

22. Wisconsin Counties Association was, at all relevant times, an entity located in Wisconsin.

23. Wisconsin County Mutual Insurance Corporation was, at all relevant times, an entity located in Wisconsin.

**Defendants: Natural Persons**

24. Defendant David Bisek was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

25. Defendant Georgia Boehlke was, at all relevant times, a Wisconsin resident. She is sued in her personal, official, and individual capacities under Wisconsin and other applicable law.

26. Defendant Alene Kleczyk-Bolin was, at all relevant times, a Wisconsin resident. She is sued in her personal, official, and individual capacities under Wisconsin and other applicable law.

27. Defendant Craig L. Braunschweig was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

28. Defendant Tommy Bychinski was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

29. Defendant Joel Chrisler was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

30. Defendant Ian Crammond was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

31. Defendant Richard Cross was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

32. Defendant Ross Curry was, at all relevant times, a Wisconsin resident.  He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

33. Defendant Jacob Curtis was, at all relevant times a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

34. Defendant Wally Czuprynko was, at all relevant times, a Wisconsin resident.  He is sued in His personal, official, and individual capacities under Wisconsin and other applicable law.

35. Defendant Mark Detter was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

36. Defendant John Deitrich was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

37. Defendant Brian Desmond was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

4

38. Defendant Thomas Dorner was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

39. Defendant Lynn Eberl was, at all relevant times, a Wisconsin resident. She is sued in her personal, official, and individual capacities under Wisconsin and other applicable law.

40. Defendant Becky Evert was, at all relevant times, a Wisconsin resident. and individual capacities under Wisconsin and other applicable law.

41. Defendant Mike Flint was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

42. Defendant Shane Gibson was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

43. Defendant Colin Good was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

44. Defendant Carl Gruber was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

45. Defendant Bryant Hazard was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

46. Defendant Peter Kinsman was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

47. Defendant Rebecca Klitzke was, at all relevant times, a Wisconsin resident. She is sued in her personal, official, and individual capacities under Wisconsin and other applicable law.

48. Defendant Martin Krueger was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

49. Defendant Benoit Letendre was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

50. Defendant Brandon Lohr was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

51. Defendant Valerie McAuliffe was, at all relevant times, a Wisconsin resident. She is sued in her personal, official, and individual capacities under Wisconsin and other applicable law.

52. Defendant Timothy McCumber was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

53. Defendant Richard "Chip" Meister was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

54. Defendant Rob Nelson was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

55. Defendant Debra V. O'Rourke was, at all relevant times, a Wisconsin resident. She is sued in her personal, official, and individual capacities under Wisconsin and other applicable law.

56. Defendant Brian Peper was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

57. Defendant Andrew Phillips was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

58. Defendant Dennis Polivka was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

59. Defendant Michelle Posewitz was, at all relevant times, a Wisconsin resident. She is sued in her personal, official, and individual capacities under Wisconsin and other applicable law.

60. Defendant Patricia Rego was, at all relevant times, a Wisconsin resident. She is sued in her personal, official, and individual capacities under Wisconsin and other applicable law.

61. Defendant Gary Rehfeldt was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

62. Defendant Tim Reppen was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

63. Defendant David Riek was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

64. Defendant Delmar Scanlon was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

65. Defendant Kevin Schell was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

66. Defendant Chuck Spencer was, at all relevant times, a Wisconsin resident.  He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

67. Defendant Terry Spencer was, at all relevant times a Wisconsin resident.  He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

68. Defendant Ronald Stadler was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

69. Defendant Donna Stehling was, at all relevant times, a Wisconsin resident. She is sued in her personal, official, and individual capacities under Wisconsin and other applicable law.

70. Defendant Donald Stevens was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

71. Defendant Kristin White Eagle was, at all relevant times, a Wisconsin resident.  She is sued in her personal, official, and individual capacities under Wisconsin and other applicable law.

72. Defendant Charles Whitsell was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

73. Defendant James C. Witecha was, at all relevant times, a Wisconsin resident. He is sued in his personal, official, and individual capacities under Wisconsin and other applicable law.

74. Defendant Jane Doe, was, at all relevant times, on information and belief, a Wisconsin resident. She is sued in her personal, official, and individual capacities under Wisconsin and other applicable law.

### BACKGROUND FACTS

### Sauk County Basic Facts

75. At all relevant times, Sauk County population was less than 750,000.

76. At all relevant times, Sauk County government operated with a Sauk County Board of Supervisors (County Board) comprised of thirty-one (31) elected supervisors (Supervisors).

77. At all relevant times, Sauk County government operated with a fulltime Sauk County Corporation Counsel (Corporation Counsel) appointed pursuant to Wis. Stat. § 59.42.

78. At all relevant times, the Corporation Counsel had exclusive primary authority to represent Sauk County and Sauk County government in all civil matters concerning Sauk County.

79. At all relevant times, the Corporation Counsel served Sauk County as an appointed statutory

7

officer subject to statutory duties and responsibilities imposed on Wisconsin public officials by the Wisconsin State Legislature.

80. At all relevant times, the Corporation Counsel served Sauk County as an attorney in an attorney-client relationship with Sauk County subject to duties and responsibilities imposed on Wisconsin attorneys by the Wisconsin Supreme Court and the Wisconsin Rules of Professional Conduct for Attorneys.

81. At all relevant times, the Corporation Counsel served Sauk County in an employer-employee relationship as the head of the Sauk County Corporation Counsel Department (Corporation Counsel Department) subject to Sauk County regulations and policies and terms and conditions of an employment contract.

82. At all relevant times, the Wisconsin Ethics Commission or Sauk County Ethics Board had primary supervisory responsibility of the Corporation Counsel in his capacity as a public official and Sauk County officer and, respectively, compliance with the State Ethics Code for Local Government Officials or Sauk County Code of Ethics.

83. At all relevant times, the Wisconsin Office of Lawyer Regulation had primary supervisory responsibility of the Corporation Counsel in his capacity as a lawyer and legal counsel for Sauk County and compliance with the Wisconsin Rules of Professional Conduct for Lawyers.

84. At all relevant times, the Sauk County Executive and Legislative Committee (E&L Committee), had primary supervisory responsibility of the Corporation Counsel in his capacity as an employee and head of the Corporation Counsel Department and compliance with requirements imposed by county ordinance or an employment contract and not otherwise the responsibility of the Wisconsin Office of Lawyer Regulation, Wisconsin Ethics Commission or the Sauk County Ethics Board.

85. At all relevant times, Sauk County supported the Corporation Counsel and Corporation Counsel Department with federal and local funds.

## Sauk County Government Abuse of Public Authority Policy

86. Every Defendant named in this Complaint who served as a Sauk County supervisor, officer, department head, employee, agent or independent contractor committed at least one serious violation of an affirmative or negative legal duty that constituted an abuse of public

8

authority and injured and damaged Olson.

87. Between July 10, 2018, and the date this Complaint was filed, Defendants committed more than two-hundred and fifty (250) unlawful acts or omissions against Mr. Olson that constituted an abuse of public authority and violated, upon information and belief, criminal laws or civil laws or both including laws prohibiting intimidation of a witnesses, misconduct in office and others.

88. Defendant O'Rourke prepared/approved The Sauk County Board of Supervisors Orientation Manual (Orientation Manual) in April 2018 while she was Interim Corporation Counsel. The Orientation Manual does not mention, even in very summary fashion, ethics duties, open government duties, constitutional duties, fiduciary duties or similar critical obligations of Supervisors to try and reduce the risk of such misconduct and prevent harm to Sauk County and thereby evidences indifference to and acceptance of a Sauk County government abuse of public authority policy that Defendants applied against Mr. Olson.

89. In the midst of the personal attacks against Mr. Olson detailed in this Complaint, on February 13, 2020, Defendant C. Spencer shared personal knowledge of the Sauk County government abuse of public authority policy that facilitated the attacks on Mr. Olson and some of the unlawful reasons[1] for them when he candidly stated in an email to a Sauk County resident:

> Two years ago the group in minority lost several seats to the other group and subsequently lost the chair which it held for I believe 12 years. Almost immediately the losing group began to use anything at hand to remove or if that was not possible to so hamper the present chair that he could not effectively do his job.
>
> One of the ways of doing that was to tie the chairman and the Corporation Council [sic] together as if they were in a conspiracy together to attack their opponents and the best way to make that seem plausible was to attack them and when they defended their

---

[1] Defendant C. Spencer described a generally accepted Sauk County policy that condoned abuse of public authority to intentionally harm non-political officers, employees or agents of Sauk County government like Mr. Olson. Defendant C. Spencer has not been linked to any of the possible criminal misconduct and associated conspiracy that occurred prior to July 2018 but his observations are perfectly consistent with the pre-July 2018 misconduct information Mr. Olson uncovered and the conclusions Mr. Olson reached. They are also perfectly consistent with the retaliation and other abuse of public authority Mr. Olson suffered while in Sauk County government.

positions scream foul and claim it is retaliation. It worked perfectly.

90. To casually and openly describe the injuries and damage to Mr. Olson as any form of perfection reveals a deeply disturbing but accepted culture and policy in Sauk County government. The imperative ethical and legal distinction between lawful politics and unlawful governance did not exist. Using public authority to intentionally harm Sauk County employees like Mr. Olson was "perfectly" fine.

91. There is a clear and constitutionally significant line between politically-motivated mudslinging to damage a political opponent and deliberate injury of a non-politician like Mr. Olson. Using public authority to intentionally damage the well-being, livelihood, or reputation of a government employee for private purposes, political or otherwise, is never perfect, legal, or constitutionally acceptable. It is always unlawful abuse of public authority.

92. The Defendants did not carelessly step over the line between lawful politics and unlawful governance. They maliciously ignored it with offensive contempt for the public trust they held, for the law they swore to uphold and for Mr. Olson's rights they repeatedly violated.

93. The facts set forth in this Complaint and Defendant C. Spencer's email establish that Sauk County government operated with an entrenched culture and policy that facilitated and supported public official and public employee misconduct, retaliation, intimidation and other abuses of public authority for private purposes. Moreover, Defendant Sauk County knew that officials, employees and others committed public official misconduct, intimidation or other abuse of government authority in Sauk County government with such regularity that it constituted a Sauk County policy. And, despite a clear and present danger to Mr. Olson or others in similar circumstances, Defendant Sauk County maintained it.

### Mr. Olson Facts

94. Mr. Olson is a sixty-four-year-old Wisconsin resident; a father of two children who were seventeen and twenty-one at all relevant times; a former United States Air Force medic; a juris doctorate graduate of the University of Wisconsin Law School; and a masters degree graduate of the University of Wisconsin School of Public Affairs.

95. During his legal career, Mr. Olson practiced law in Wisconsin full time from March 1994 through May 2020 in a career that he eagerly and completely devoted to fulltime public

10

service with local government entities in Wisconsin and thereby acquired substantial expertise in local government law and local government ethics that, prior to the adverse acts and omissions committed by Defendants against him between July 10, 2018, and the date this Complaint was filed, his professional peers respected, relied on, and frequently consulted.

96. During his legal career, Mr. Olson provided exceptional legal services and legal guidance to officials in nearly every city and village in Wisconsin and many Wisconsin counties; provided key legal analysis on local government issues in many Wisconsin appellate cases including five unanimous Wisconsin Supreme Court decisions during a period of significant acrimony between members of that court; has never been the subject of any legitimate ethics investigation as a lawyer, public official or employee, and; prior to the adverse acts and omissions committed by Defendants against him between July 10, 2018, and the date this Complaint was filed, Olson's professional reputation and personal reputation for honesty, fairness and thoughtfulness was exceptional and untarnished.

### Death, Discharge and Deception
### Abuse of Government Authority and Cover-Up
### (2016 – 2018)

97. This case is about Mr. Olson, a good lawyer with an exceptional reputation that Sauk County hired in June 2018 to be its newest Corporation Counsel who then suffered a firing squad of public authority abuse by Defendants that caused him serious injury and damage for which he now appropriately seeks justice. But the reasons and motivations for the acts and omissions Defendants assaulted Mr. Olson with are linked strongly to pre-2018 events.

98. On October 27, 2016, Sauk County Corporation Counsel Todd Liebman received news that turned his face pale from fear, a feeling likely shared shortly thereafter by Defendants Bolin, Krueger and O'Rourke. The day before, October 26, 2016, a Sauk County Sheriff's Department deputy found C.M., a sixty-four-year-old cognitively-impaired man, dead on a mattress inside his trailer that was located in an isolated rural area in Sauk County.

99. Liebman and Defendants Bolin, Krueger and O'Rourke were all very familiar with C.M.

100.   Between January 2015 and October 2016, Liebman and Bolin had commenced but failed to prosecute two abatement orders concerning C.M. Those orders were prepared and then

11

served on C.M. in January 2015 (Bolin Order) and November 2015 (Liebman Order). They directed C.M. to move out of his trailer because it did not have any running water, any heat, any electricity or any functioning toilet and those living conditions were a health hazard and life-threatening.

101.    Bolin, Liebman and O'Rourke also knew that C.M. suffered from a cognitive impairment that compromised his ability to make sound decisions. That condition made C.M. a danger to himself. And Bolin, Liebman and O'Rourke all knew it.

102.    Despite knowledge of C.M. and his living conditions, neither Liebman nor Defendants Bolin or O'Rourke took any meaningful action to enforce the Bolin Order or the Liebman Order. Staff from other County departments asked about them and received assurances but got no action.

103.    On October 27, 2016, two other people knew about the C.M. situation. One was the recently hired Sauk County Administrative Coordinator Renae Fry. The other was Martin "Marty Krueger, Defendant Krueger. Krueger was a longtime member of the County Board and as County Board chair, wielded his authority in a manner that county staff feared.

104.    Krueger learned about C.M. from Marie Miller, a legal assistant in Liebman's office. She sent Krueger an email on September 29, 2016, less than a month before they found C.M. dead, with an ominous but prescient message. She informed Krueger that a staff person in another county department familiar with C.M., told Miller that C.M. would die if Liebman did not act quickly and do something. Krueger never told anyone about the Miller message before C.M. died.

105.    After C.M. died, Liebman expressed no remorse, regret or responsibility for C.M.'s death despite no action for almost two (2) years to implement the Bolin Order or the Liebman Order. When asked, Liebman said: "He would have died in his car, or he would have died in a hotel somewhere." Defendants Bolin, Krueger and O'Rourke never publicly challenged or otherwise disagreed with Liebman's statements.

106.    The other person in the mix, Fry, knew about C.M. through her work as Administrative Coordinator and as interim director of the zoning department. She and Liebman did not see

eye to eye. But Miller was a friend. And, Miller shared information about Liebman with Fry and Liebman knew it.

107.    Fry was a wild card and risk that confronted Bolin, Krueger, Liebman and O'Rourke on October 27, 2016, because she knew too much and she did not like Liebman.

108.    On or about October 28, 2016, Liebman and Krueger, with help from O'Rourke, prepared a list of charges against Fry to secure her termination (Fry Termination). Less than a week later she was suspended. And in just over three weeks she was discharged, but only after Sauk County agreed to pay Fry more than one-hundred and twenty-thousand dollars ($120,000.00) in severance compensation and Fry agreed to sign a severance agreement that prohibited her from saying anything about C.M. or Liebman. Sauk County employed Fry for less than seven-months.[2]

109.    With Fry gone, the Administrative Coordinator Position was vacant. Defendant Krueger, with help from Liebman and O'Rourke and Sauk County Personnel Director Michelle Posewitz, turned to Defendant Bolin and she was hired (Bolin Hiring) to fill the position even though she was not qualified.

110.    In late 2015, Bolin applied for the position along with Fry. Bolin did not even get an interview invitation.

111.    Bolin then left Sauk County employment to work as the city attorney for Baraboo, Wisconsin. When Bolin left Sauk County employment she also left an unfavorable exit interview about Liebman with Posewitz. Like Krueger, who failed to share Miller's warning about C.M., Posewitz did not share Bolin's negative assessments of Liebman with anyone prior to C.M.'s death.

112.    On October 27, 2016, Liebman and Defendants Bolin, Krueger, O'Rourke and Posewitz each had unfavorable, or worse, conduct in connection with the C.M. Death that could threaten their careers, reputation or other personal interests if discovered and publicly

---

[2] By comparison, when Sauk County unlawfully terminated Mr. Olson without cause and for no lawful reason they offered him three-months salary to "keep quiet" and give up all legal claims against Sauk County and everyone else even though Mr. Olson had served Sauk County for nearly two years and suffered a wrongful investigation, wrongful suspension, wrongful termination, multiple violations of constitutional rights, multiple violations of civil rights, horrendous public humiliation and other serious injuries.

disclosed. They each had a substantial motive to conceal it, especially from a curious and good newspaper reporter.

113.    The local newspaper, the Baraboo News republic (BNR), had such a reporter. When C. died and Fry was terminated he started to ask questions. His newspaper, BNR, made official public records requests (BNR Records) that concerned Liebman and Defendants Bolin, Krueger, O'Rourke and Posewitz and could reveal connections they had to the C.M. Death, Fry Termination and Bolin Hiring events.

114.    Ethics restrictions and other law prohibited Bolin, Krueger, Liebman, O'Rourke and Posewitz from exercising their public authority to affect the BNR Records process in any way because the requests clearly included documents that they created, sent, received or were otherwise part of. But they did not step aside and unlawfully exercised their public authority to influence the BNR Records process.

115.    BNR did not get all the records they sought. So, just after Liebman retired in September 2017 and O'Rourke succeeded him as Interim Corporation Counsel, BNR sued Sauk County in November 2017 to force release of the records they did not get and for damages (BNR Lawsuit). Once again, ethics restrictions and other law prohibited Bolin, Krueger, O'Rourke and Posewitz from exercising their public authority to effect the BNR Lawsuit process. But, once again, they did not step aside and unlawfully exercised their public authority to influence the BNR Lawsuit.

116.    By April 2018, Defendants Bolin, Krueger, O'Rourke and Posewitz had unlawfully used their public authority to implement the Fry Termination and the Bolin Hiring and influence the BNR Records and BNR Lawsuit events many times. They now had even stronger motives to conceal those unlawful acts or omissions and protect their personal interests. But they did not act as if they perceived a significant threat of exposure because they did not take any action to appoint O'Rourke as the permanent Corporation Counsel replacement for Liebman prior to the April 2018 election.

117.    In April 2018, Sauk County voters shook things up in Sauk County government and ushered in a new County Board majority that took power from Defendant Krueger and his supporters and gave to it Peter Vedro (Chair Vedro) and his new majority. Consequently,

Chair Vedro and the new majority, not Krueger and his allies, now controlled who would be the new Corporation Counsel and Defendant O'Rourke had provided some controversial legal advice that the new County Board majority did not think was very thoughtful or accurate. So she was unlikely to secure any meaningful support from the new majority to be the new permanent Corporation Counsel. That was a new risk and threat of exposure for Defendants Bolin, Krueger, O'Rourke and Posewitz.

### Neutralizing Attorney Olson Part One
### (July 10, 2018 – December 10, 2019)

#### Mr. Olson Arrives

118.    On June 19, 2018, upon recommendation of the Executive and Legislative Committee (E&L Committee), the County Board passed Sauk County Resolution 97-18 and thereby appointed Mr. Olson as the new Sauk County Corporation Counsel.

119.    Mr. Olson received a strong welcome from a vast majority of Sauk County government officials and staff. But he also learned early that Sauk County government had issues with abuse of government authority.

120.    Shortly after Mr. Olson started, two department heads came to his office and welcomed him but simultaneously and without prompt stated they and other Sauk County department heads and employees tried to keep a low profile because Defendant Krueger and his allies, as evidenced by the Fry event and others, were not afraid of abusing authority to get rid of people they did not like. In the same time frame, not less than four anti-Vedro Supervisors also paid Mr. Olson an office visit to accuse Olson of being Vedro's lapdog, advise Olson to watch his back, or share similar views with Olson. Those visits confirmed the earlier statements by the two department heads. Mr. Olson would get a lot more confirmation in the months to come.

121.    In mid-August 2018, barely a month after Mr. Olson started, he had to intervene during an online email discussion by a majority of the County Board who were using the County email system to discuss issues and other County business concerning a proposal to oust Chair Vedro as County Board chair. The activity clearly violated the Wisconsin Open Meeting Law and Mr. Olson advised participants accordingly. Defendants Braunschweig, Czuprynko,

McCumber, Whitsell and others quickly attempted to disparage Mr. Olson's counsel. The event received local newspaper coverage given its severity.

122.    On July 10, 2018, Mr. Olson commenced his attorney-client relationship, public officer duties and his employment relationship with Sauk County. Mr. Olson was a distinguished local government lawyer who never played politics with the law for anybody even in Sauk County and he was a threat to Sauk County supervisors, officials, employees and agents who did before he arrived and tried after he arrived.

### The Bolin, Krueger, O'Rourke, Posewitz & Others Interference & Obstruction Effort

123.    On July 10, 2018, Defendants Bolin, Krueger, O'Rourke and Posewitz knew the risk that their public authority misconduct might be discovered increased substantially because Mr. Olson now held the most independent and powerful non-elected office in Sauk County government. They had lots of reasons to work together and with others to interfere with Mr. Olson's attorney-client, public official and employment relationships with Sauk County and push him out of Sauk County government as soon as possible. They also had significant opportunity because Mr. Olson was effectively a probationary Corporation Counsel for his first year and subject to three separate job performance reviews, 3-month, 6-month and 12-month, between July 2018 and July 2019. Consequently, on information and belief, Defendants Bolin, Krueger, O'Rourke and Posewitz, separately and in combination with themselves and others, did deliberately or repeatedly commit acts or omissions to unlawfully interfere with those relationships and push Mr. Olson out as Corporation Counsel and thereby unlawfully interfered with Mr. Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of acts or omissions. Some examples include:

    a.   On July 10, 2018, and all times thereafter, Defendants Bolin, Krueger, O'Rourke and Posewitz had an absolute and imperative legal duty to disclose any adverse personal interests in the BNR Lawsuit and the underlying and associated BNR Records, Bolin Hiring and C.M. Death events to Mr. Olson, who was now chief legal officer for Sauk County, pursuant to their fiduciary duties to Sauk County as an attorney (O'Rourke) or as a Sauk County official with policymaking authority

16

(Bolin, Krueger, Posewitz) or both (O'Rourke). But they never disclosed those interests to Mr. Olson, ever, and unlawfully concealed those adverse interests from Mr. Olson.

b. On or about July 10, 2018, Defendant O'Rourke approached Mr. Olson and specifically requested permission to continue to be involved in the BNR Lawsuit. Defendant O'Rourke unlawfully failed to disclose to Mr. Olson her adverse personal interests in the matter or her failure to obtain a conflict waiver and caused Mr. Olson to impermissibly grant her request and allow O'Rourke to continue to unlawfully exercise her public authority to influence the BNR Lawsuit.

c. Between July 10, 2018, and December 18, 2018, Defendant O'Rourke deliberately or repeatedly and unlawfully exercised her public authority to participate in and influence BNR Lawsuit, which prevented Mr. Olson from discovering the unsound legal arguments of Sauk County in the matter and the failure of anyone to have any direct discussion with BNR about resolving the issues between Sauk County and BNR without litigation.

d. On December 19, 2018, Defendants Bolin, O'Rourke and Posewitz unlawfully exercised their public authority to attempt to influence a discussion between Mr. Olson and Defendant Bisek about an interlocutory appeal in the BNR Lawsuit.

e. On December 21, 2018, Defendants Bolin, O'Rourke and Posewitz unlawfully exercised their public authority to attempt to influence a discussion between Mr. Olson, Chair Vedro, Defendant Bisek and others about possible settlement discussions with BNR in the BNR Lawsuit.

f. On or about January 15, 2019, Defendant Bolin unlawfully exercised her public authority to attempt to influence the settlement discussions between Mr. Olson, Chair Vedro and BNR representatives.

g. On April 29, 2019, Defendant Krueger unlawfully exercised his public authority multiple times to obstruct approval of a BNR Lawsuit settlement by the County Board.

17

h. On or about April 30, 2019, Defendant Posewitz unlawfully exercised her authority to contact the Sauk County Information Technology Department and provide incorrect search parameters for the BNR records search Sauk County agreed to perform pursuant to the BNR Lawsuit settlement approved on April 29, 2019;

i. On or about April 30, 2019, Defendant Posewitz unlawfully exercised her public authority to interfere with Mr. Olson's duty to provide the Sauk County Information Technology Department the correct search parameters for the BNR records search Sauk County agreed to perform pursuant to the BNR Lawsuit settlement approved on April 29, 2019;

j. Between July 1, 2019, 2019, and July 7, 2019, Defendant Posewitz unlawfully exercised her public authority to attempt to conceal a malicious, defamatory or otherwise unlawful June 30, 2019, employment grievance against Olson filed by Defendant Boehlke;

k. On or about July 1, 2019, Defendant Posewitz unlawfully exercised her public authority to disclose the malicious, defamatory or otherwise unlawful June 30, 2019, Defendant Boehlke employment grievance against Olson to Defendant Bolin;

l. On July 1, 2020, Defendant Bolin unlawfully exercised her public authority to disclose the malicious, defamatory or otherwise unlawful June 30, 2019, Defendant Boehlke employment grievance against Olson to Defendants Czuprynko, Deitrich, Evert, Gruber, Krueger, McCumber and others;

m. On or about July 1, 2019, on information and belief, Defendant O'Rourke unlawfully wrote and submitted a malicious, defamatory or otherwise unlawful "anonymous" statement about Olson to Defendants Posewitz or Bolin or both; and

n. On July 1, 2019, Defendant Bolin unlawfully exercised her public authority to disclose the malicious, defamatory or otherwise unlawful "anonymous" statement by Defendant O'Rourke against Olson to Defendants Czuprynko,

Deitrich, Evert, Gruber, Krueger, McCumber and others.

**The Bisek, Gruber, and McCumber & Others Interference & Obstruction Effort**

124. On December 14, 2018, the Sauk County Circuit Court rejected the unsound Sauk County legal arguments in the BNR Lawsuit and granted BNR's motion for summary judgment against Sauk County on all issues except one.

125. On or about December 17, 2018, Defendant Bisek immediately and unlawfully attempted to exercise statutory authority vested exclusively in the County Board and Mr. Olson in connection with the BNR litigation when, without any lawful authority to make the decision, Defendant Bisek unilaterally declared that insurance counsel would move forward with an appeal of the circuit court decision. Mr. Olson immediately questioned that directive whereby, on information and belief, Defendant Bisek unlawfully threatened to revoke Sauk County insurance coverage if Mr. Olson did not acquiesce to Bisek's unlawful attempts to make decisions for the County Board and Olson and Bisek thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

126. On or about January 21, 2019, after the adverse circuit court decision and receipt of two (2) confidential legal memorandums prepared by insurance counsel for Sauk County concerning the BNR litigation (BNR Memos), Defendant Bisek received an unauthorized request for them from Defendant Gruber or Defendant McCumber and, without seeking or securing authorization from Mr. Olson, unlawfully released them to Defendant Gruber or Defendant McCumber or both and Bisek thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

127. Between January 21, 2019, and January 23, 2019, Defendant Bisek also unlawfully failed to disclose to Mr. Olson that Bisek released the BNR Memos to Defendant Gruber or Defendant McCumber, who thereafter used or attempted to use the documents to further their adverse political or other personal interests in BNR Lawsuit settlement discussions or otherwise and Bisek thereby unlawfully interfered with Olson's constitutional rights, legal

duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

128.     On January 23, 2019, Mr. Olson discovered the BNR Memos leak when Defendant McCumber unlawfully tried to conceal his existing unauthorized access by making an after-the-fact request for them and McCumber thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

129.     On January 23, 2019, Defendant McCumber also unlawfully provided false or misleading answers to questions from Mr. Olson about the BNR Memos leak and unlawfully attempted to conceal his knowledge of the unlawful release by Defendant Bisek and the unauthorized request for, access to, and use of the BNR Memos by Defendant McCumber and Defendant Gruber and McCumber thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

130.     On or about February 1, 2019, Defendant Gruber became aware of the BNR Memos leak discussions Mr. Olson had with Defendants Bisek and McCumber and involved Gruber and, in clear contravention to Sauk County interests, Defendant Gruber contacted Chair Vedro and threatened to take sue Sauk County and Mr. Olson or take other adverse action against Mr. Olson if Olson continued to look into the unlawful BNR Memos leak that Defendants Bisek, Gruber, McCumber and others were involved in and Gruber thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

131.     On or about March 2019, Defendants Gruber and McCumber commenced a concerted and retaliatory effort to destroy Mr. Olson's attorney-client, public official and employment relationships with Sauk County and push Mr. Olson out of Sauk County government before or on Mr. Olson's 12-month job performance review in July 2019. In furtherance of those unlawful purposes, they, with willful assistance from Defendants Boehlke, Crammond, Czuprynko, Evert, O'Rourke and others, pursued an unauthorized, retaliatory and unlawful

20

"investigation" of Mr. Olson, an action that Defendants Gruber and McCumber have admitted to conducting against Mr. Olson,[3] and committed numerous unlawful acts or omissions. Some examples include:

   a. The request(s) by Defendant Gruber and/or Defendant McCumber to Defendant Crammond for electronic door swipe records concerning Olson;

   b. The release(s) by Defendant Crammond to Defendant Gruber and/or Defendant McCumber of electronic door swipe records concerning Olson;

   c. The request(s) by Defendant Gruber and/or Defendant McCumber to Defendants Boehlke and/or O'Rourke for confidential legal service request and assignment documents or information of the Corporation Counsel Office and Olson;

   d. The failure(s) by Defendants O'Rourke and/or Boehlke to report unlawful request(s) by Defendants Gruber and/or McCumber for confidential legal service request and assignment documents or information of the Corporation Counsel Office and Olson;

   e. The release(s) by Defendants Boehlke and/or O'Rourke to Defendants Gruber and/or McCumber of confidential legal service request and assignment documents or information of the Corporation Counsel Office and Olson;

   f. The receipt and use by Defendants Gruber and/or McCumber from Defendants Boehlke and/or O'Rourke of confidential legal service request and assignment documents or information of the Corporation Counsel Office and Olson;

   g. The request(s) by Defendants Gruber and/or McCumber to Defendants Boehlke and/or O'Rourke for confidential Corporation Counsel Office time sheet documents or information for Olson;

   h. The failure(s) by Defendants O'Rourke and/or Boehlke to report unlawful request(s) by Defendants Gruber and/or McCumber for confidential Corporation

---

[3] Defendant McCumber has explicitly acknowledged his "investigation" of Mr. Olson and Defendant Gruber has implicitly acknowledged his participation. Both of them have wrongly claimed that they had independent unilateral authority to conduct an "investigation" of the Sauk County Corporation Counsel whenever they wanted. Those assertions evidence not just a deeply disturbing and offensive indifference to Mr. Olson's rights but the underlying abuse of public authority policy that existed in Sauk County government and, with Defendant McCumber currently the County Board chair and Defendant Gruber still a member of the County Board, still exists.

Counsel Office time sheet documents or information for Olson;

i.   The release(s) by Defendants Boehlke and/or O'Rourke to Defendants Gruber and/or McCumber of confidential Corporation Counsel Office time sheet documents or information for Olson;

j.   The receipt and use by Defendants Gruber and/or McCumber from Defendants Boehlke and/or O'Rourke of confidential Corporation Counsel Office time sheet documents or information for Olson;

k.   The request(s) by Defendants Gruber and/or McCumber to the Sauk County Finance Department for confidential payroll records or information of Olson;

l.   The receipt by Defendants Gruber and/or McCumber from the Sauk County Finance Department of confidential payroll records or information of Olson;

m.   The solicitation by Defendant Boehlke of other Corporation Counsel staff to participate in adverse action against Olson;

n.   The failure(s) by Defendant O'Rourke to report unlawful solicitation(s) by Defendant Boehlke of other Corporation Counsel staff to participate in unlawful activity against Olson;

o.   The failures by Defendant Boehlke on June 29, 2019, to truthfully answer questions asked by Olson about her participation in the release of confidential legal information from the Corporation Counsel Department to unauthorized persons;

p.   The attempts by Defendant Boehlke on June 29, 2019, to conceal from Olson her participation in the release of confidential legal information from the Corporation Counsel Department to unauthorized persons;

q.   The preparation and submission by Defendant Boehlke to Defendant Posewitz on or about June 30, 2019, of a malicious, defamatory or otherwise unlawful employment grievance against Olson; and

r.   The unlawful disclosure by Defendant Bolin of the defamatory Boehlke grievance to Defendants Czuprynko, Evert, Gruber, Krueger and McCumber and others on July 3, 2019.

132.   On July 3, 2019, despite the coordinated efforts of Defendants Bisek, Boehlke, Bolin, Crammond, Czuprynko, Evert, Gruber, Krueger, McCumber, O'Rourke, Posewitz and probably others to damage Mr. Olson and force him out, just as Defendant C. Spencer had described in his candid email message noted earlier, the E&L Committee approved Mr. Olson's continued employment with Sauk County, a corresponding pay raise and transition to regular employment status and annual job performance reviews.

### And On It Goes But With New Recruits

133.   After July 3, 2019, Defendants still had lots of reasons to want to damage Mr. Olson's attorney-client, public official and employment relationships with Sauk County and force him out. He was still sorting through more than three-thousand emails connected to the C.M. Death, Fry Termination, and Bolin Hiring events and that was still a big risk to Defendants Bolin, Krueger, O'Rourke and Posewitz and others. And Mr. Olson was still a target of Defendants Gruber and McCumber who did not want their BNR Memos misconduct to surface publicly and decided to turn a relatively modest problem into a mountain of public authority abuse with their "investigation" of Mr. Olson and ability to convince others to join them in the unlawful enterprise.

134.   Between July 3, 2019, and December 10, 2019, Defendants continued to commit acts or omissions deliberately or repeatedly, separately or in combination, to unlawfully interfere with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravene laws prohibiting the method, substance or purpose of such action. Some examples include:

   a.   The proposal by Defendants Gruber and McCumber to "restructure" the Corporation Counsel Department on or about July 5, 2019;

   b.   The unlawful request from Defendant Gruber to Mr. Olson in August 2019 for every legal document in the Corporation Counsel Department;

   c.   The unlawful request from Defendant Gruber on September 25, 2019, for a "copy of [Olson's] 6 month and 1 year review along with any responses from [Olson] to this [request].";

   d.   The unlawful attempt by Defendant Posewitz on or about September 25, 2019,

to release copies of Olson's confidential six-month and one-year performance evaluations to Defendant Gruber;

e.  The unauthorized and unlawful "investigation" of Mr. Olson by Defendants O'Rourke and Witecha in October 2019;

f.  The unlawful attempt by Defendant Bolin on November 7, 2019, to override Olson's authority and legal advice to Defendant Posewitz and "instruct" Defendant Posewitz to release confidential performance evaluations to Defendant Gruber; and

g.  The unlawful authorization and approval by Defendant Meister for an un-noticed appearance and false public comment statement by Chief Deputy Jeff Spencer concerning Mr. Olson during the December 3, 2019, E&L Committee meeting;

h.  The ongoing willful and unlawful failure of Defendants Bolin, Krueger, O'Rourke and Posewitz to disclose their adverse personal interests in the BNR emails to Mr. Olson and to Sauk County;

i.  The ongoing willful and unlawful failure of Defendants Bolin, Krueger, O'Rourke and Posewitz to not exercise their public authority against Mr. Olson to conceal their misconduct; and

j.  The ongoing willful and unlawful failure of Defendants Gruber and McCumber to not exercise their public authority against Mr. Olson to conceal their misconduct.

135.  Between July 10, 2018 and December 10, 2019, Defendants Bisek, Boehlke, Bolin, Crammond, Evert, Gruber, McCumber, Meister, O'Rourke, Posewitz, and Witecha deliberately or repeatedly exercised and unlawfully abused their public authority to commit more than one-hundred (100) adverse acts or omissions against Mr. Olson to cover up the unlawful use of public authority by Defendants Bolin, Krueger, O'Rourke, and Posewitz in connection with the C.M. Death, Fry Termination, Bolin Hiring, BNR Records and BNR Lawsuit matters; to retaliate against Mr. Olson for taking or recommending actions for Sauk County that were adverse to their personal interests in continuing the cover-up; and to retaliate against Mr. Olson for discovering and looking into the BNR Memos leak. Things were about to get a lot worse for Mr. Olson.

**The BNR Lawsuit Emails: New Insight On Death, Discharge and Deception**

136.  The Sauk County Board approved a final settlement of the BNR Lawsuit in May 2019, which included agreement by Sauk County to perform an electronic records search using the original search terms proposed by BNR in 2017, which yielded more than three-thousand email records for review and possible release in accordance with the BNR Lawsuit settlement. Mr. Olson commenced that review on or about June 2019.

137.  Around the same time, Mr. Olson, now alerted to a concerted and unlawful "investigation" by Defendants Gruber and McCumber that had intruded into and infected the Corporation Counsel Department and its core functions, not just interfering with Mr. Olson, advised Chair Vedro of the dynamics change and the need to take the matter to the E&L Committee given the now heightened legal harms to Sauk County itself and not just Mr. Olson. Chair Vedro concurred with Mr. Olson's assessment and agreed to put the matter before the E&L Committee at a later date. Mr. Olson agreed to keep Chair Vedro informed and report any significant escalation in misconduct by Defendants Gruber or McCumber or others.

138.  Meanwhile, between May 2019 and November 2019, while fending off the ongoing unlawful "investigation" misconduct onslaught from Defendants Gruber and McCumber who had help from Defendants Boehlke, Bolin, O'Rourke, Posewitz, and Witecha and others, Mr. Olson completed review of the emails produced by the BNR search terms connected to the C.M. Death, Fry Termination, Bolin Hiring, and BNR Lawsuit events. Mr. Olson discovered in or directly connected to the emails significant objective evidence of acts or omissions by Liebman and Defendants Bolin, Evert, Krueger, O'Rourke and Posewitz that indicated numerous violations of criminal statutes, ethics statutes and/or professional duties and a concerted effort to cover up the violations and thereby warranted independent law enforcement investigation.

139.  In late November 2019, Mr. Olson contacted Chair Vedro and requested an opportunity to share the Bolin, Krueger, O'Rourke, Posewitz misconduct and the Gruber, McCumber misconduct information with the E&L Committee as soon as possible. Mr. Olson also advised Chair Vedro that his intent was to fulfill his attorney-client communication duty as

well as his public office obligations by sharing the information with the E&L Committee in
open session in summary form so that Sauk County citizens could also be informed. Mr.
Olson further explained to Chair Vedro that he would ask committee members to step
forward and fulfill their fiduciary and statutory duties just as Olson needed to do and would
do irrespective of what the E&L Committee might say. In the end, Olson could not and
would not, unlike the Defendants, try to conceal the misconduct he uncovered and Olson
made it clear to Chair Vedro that given the extent of the misconduct, Olson would share the
information with law enforcement and seek an independent investigation even if the
committee members decided not to support it. The cover up needed to end in order to
protect Sauk County organization interests as well as related, but independent, public
interests. Chair Vedro understood and agreed and put the matter on the agenda for a
special meeting of the E&L Committee on December 10, 2019.

140.    Shortly thereafter, on December 5, 2019, Mr. Olson asked Defendant O'Rourke about an
odd email message he found in the BNR emails that O'Rourke had sent to Liebman in
December 2016, and wherein O'Rourke used the designation "W2" to identify Renae Fry,
the former Administrative Coordinator ousted in late 2016 with O'Rourke's legal help,
instead of using Fry's actual name. The question caught O'Rourke off guard and she visibly
fumbled for a response that came, but it did not answer the question. Later that day and
without any prior indication from her, Defendant O'Rourke abruptly resigned her position
as an Assistant Corporation Counsel, effective as of January 2, 2020. Defendant O'Rourke's
non-response response to the Fry email question and her abrupt resignation solidified Mr.
Olson's assessment of the emails.

### Neutralizing Attorney Olson: Act II
### (December 10, 2019 – January 28, 2020)
#### Interference, Retaliation, Defamation, Suspension

141.    On December 10, 2019, Olson shared a summary of the public authority misconduct
information he uncovered and made his request that the E&L Committee step forward and
provide support for several future activities, including consideration of next steps (referral
to law enforcement for investigation). During the meeting, Defendants Bolin, Czuprynko
and McCumber, who knew from the general misconduct examples Olson provided to the

E&L Committee that the matter involved them, exercised their public authority to try and influence the E&L Committee decision and Bolin, Czuprynko and McCumber thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of the actions.

142.   On December 10, 2019, the E&L Committee agreed to step forward and fulfill its obligations as requested by Mr. Olson. But they also requested more detailed information and scheduled a closed session discussion for a later date (January 7, 2020) to give Mr. Olson the opportunity to share the public authority misconduct information and evidence he had uncovered in more detail.

143.   On December 11, 2019, having failed to prevent disclosure at the E&L Committee meeting, Defendant McCumber filed a frivolous and retaliatory Public Records Complaint against Olson with the Sauk County District Attorney and McCumber thereby interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of the complaint.

144.   On December 12, 2019, Defendant McCumber used the County email system, public authority and his office to demand confidential legal information about outside counsel Olson may have discussed legal issues with that directly or indirectly related to misconduct in office by Defendant McCumber and McCumber thereby interfered with Olson's constitutional rights, legal duties, employment, or for other improper purposes and contravened laws prohibiting the method, substance or purpose of the email.

145.   On December 12, 2019, on information and belief, Defendant McCumber filed an anonymous complaint laced with lies and distortions against Olson through the electronic Lighthouse complaint system utilized by Defendant Sauk County for anonymous complaints and thereby interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of the complaint.

146.    On December 13, 2019, Defendant Jane Doe, on information and belief, a surrogate of Defendant McCumber or Defendant Gruber, filed a frivolous and retaliatory complaint laced with lies and distortions against Olson through the electronic Lighthouse complaint system utilized by Defendant Sauk County for anonymous complaints and thereby interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of the complaint.

147.    On December 17, 2019, Defendant McCumber and Defendant Gruber each filed a frivolous, false and retaliatory public records complaint against Olson with the Wisconsin Department of Justice (WDOJ) and thereby interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of the complaint.

148.    On December 17, 2019, Defendant McCumber unlawfully read a prepared statement from the county board floor during a county board meeting that concerned Sauk County business without providing any prior public notice of the statement or business as required by the Wisconsin Open Meetings Law and unlawfully made false accusations against Mr. Olson and thereby interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of the statement.

149.    On or about December 17, 2019, Defendant Czuprynko unlawfully used his public authority and office to prepare and submit a proposed a retaliatory County ordinance that would unlawfully circumvent statutory authority and responsibility of Mr. Olson as Sauk County Corporation Counsel and thereby interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of the ordinance.

150.    On December 19, 2019, Defendant McCumber submitted additional false information against Olson to the WDOJ and thereby interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of the submittal.

151.   On December 20, 2019, Defendant Bolin, with advice and/or support from Defendants Stadler and Witecha, sent a mass email to the county board and county department heads that deliberately exposed Olson as the target of the Lighthouse Complaints and, on information and belief, did so to damage Olson's reputation or otherwise injure Olson and/or obstruct investigation of public official misconduct by Defendant Bolin and others and Bolin, Stadler and Witecha thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of the email.

152.   When asked by a county board supervisor a few days later whether a mass email disclosure of a Lighthouse Complaint was standard procedure, Defendant Bolin lied to the supervisor and said it was even though such action had never been taken on any other Lighthouse Complaint before and Bolin thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of the email.

### The Stadler Lighthouse "Investigation" Fiasco

153.   The Lighthouse Complaints were filed immediately after the December 10th public authority misconduct report by Mr. Olson. They completely lacked plausible factual allegations to warrant any in-depth investigation and were frivolous on their face. They were also clear retaliatory assaults on Mr. Olson by Defendant McCumber and Defendant Jane Doe.

154.   No competent attorney could reasonably conclude that the Lighthouse Complaints created any meaningful ethics conflict for Mr. Olson and they never did. They were manufactured "conflicts" and they could not create a legitimate conflict of interest for Mr. Olson any more than a "conveniently" timed anonymous complaint filled with unsupported accusations against a federal judge that arrived just when a case involving similar subject matter had been assigned to the judge. A suspect in a criminal investigation cannot create a legitimate conflict of interest with an anonymous complaint that is filled with specious allegations. The legal system, including an attorney-client relationship like Mr. Olson's with

29

Sauk County, cannot be manipulated or undermined at will by anonymous self-interested drivel. A thoughtful and competent lawyer knows that.

155.    The defendant lawyers in this case, especially Defendants Cross, Good, Letendre, Phillips, Stadler and Witecha, could not or would not grasp or did not care that neither Defendant McCumber nor anyone else could sling mud at Mr. Olson and create a legitimate conflict of interest for Mr. Olson. It is a profoundly disturbing thought that a lawyer would believe, promote or enforce such a deliberate and manufactured manipulation of an attorney-client relationship and the law. But Cross, Good, Letendre, Phillips, Stadler and Witecha all did. Mr. Olson paid a severe price for their ineptitude or indifference or both.

156.    The Lighthouse Complaints left Mr. Olson with two options. He could accurately declare them garbage and refuse to refer them for anything except the waste can and then get crucified by Defendant McCumber and others before he could file an investigation request that Defendant McCumber and others desperately wanted blocked or Mr. Olson could trust that a competent lawyer would see the Lighthouse Complaints for what they were and not turn them into a circus and leave Mr. Olson free to serve his client and the public and their best interests.

157.    On or about December 14, 2019, Mr. Olson authorized appointment of outside counsel to handle the Lighthouse Complaints through Sauk County's insurance provider, Wisconsin County Mutual Insurance Corporation (WCMIC), with the reasonable expectation that WCMIC, in conjunction with WCMIC's parent organization, the Wisconsin Counties Association (WCA) and WCMIC's insurance administrator, Aegis Corporation (AEGIS), would appoint a competent and fair-minded, unbiased attorney able and willing to apply clear and neutral judgment; exercise appropriate care for the rights of Mr. Olson and the others who had been frivolously and unlawfully attacked; and faithfully comply with the rules of professional conduct. Mr. Olson made the right decision but he ended up with the wrong lawyer for the job.

158.    On December 15, 2019, Defendant WCMIC selected Defendant Stadler to review the Lighthouse Complaints on behalf of Mr. Olson, the Sauk County Corporation Counsel's Office and Sauk County and on or about December 20, 2019, Defendant Stadler, along with

Defendant Witecha, with indifference to Mr. Olson's rights, on information and belief, approved or recommended that Defendant Bolin send a mass email message to every county department head, every County Board supervisor and others that immediately exposed Mr. Olson as a subject of the Lighthouse Complaints.

159. Defendant Stadler, as well as Defendants Bolin and Witecha, knew or should have known that such an email would immediately threaten Mr. Olson's reputation and credibility and it did. The mass email was not just unsound but reckless and it had a devastating impact on the entire Lighthouse Complaint investigation process and Mr. Olson's rights and Bolin, Stadler and Witecha thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of the email.

160. On December 27, 2019, Defendant Stadler emailed Mr. Olson and advised Mr. Olson that Stadler had been appointed by WCMIC to "investigate the Lighthouse complaints." Defendant Stadler indicated to Mr. Olson he "would like to set up a time next week to sit down with you and discuss the complaints, allegations and facts" and suggested dates in early January 2020.

161. Defendant Stadler received his appointment pursuant to authorization by Mr. Olson as Corporation Counsel. WCMIC did not have and never had any valid independent authority to appoint any attorney to intervene in any Sauk County legal matter without the explicit consent of Mr. Olson as Corporation Counsel or Mr. Olson's designee.

162. Defendant Stadler provided his Lighthouse Complaints review and investigation services as a licensed attorney and as an agent of Defendants WCMIC, WCA and AEGIS pursuant to Sauk County's insurance policy with WCMIC. Defendant Stadler also provided his services as an employee of Defendant Jackson-Lewis and as a joint-employee or other agent status of Sauk County and committed acts or omissions for Sauk County under color of law and pursuant to Sauk County policy, practice or custom.

163. After the holiday break, on January 7, 2020, Mr. Olson replied to Defendant Stadler and advised he would provide a full written response to the Lighthouse Complaints and

attempted to alert Stadler to the retaliatory and frivolous character of the Lighthouse Complaints when Mr. Olson stated:

> "[The Lighthouse Complaints were] filed in the immediate wake of a report I made to my oversight committee regarding misconduct in office of at least 4 county board supervisors, 5 department heads and 2 senior county staff . . . [and] the complaints are frivolous."

164.    On January 10, 2020, Defendant Stadler replied to Mr. Olson and stated:

> I would appreciate your written response that you reference, but I also want to meet with you to follow up on that. Can you please forward your response to me? And, can you let me know when you could meet with me? I am pretty open January 21-24.

165.    On January 15, 2020, Mr. Olson provided Defendant Stadler with the written response that clearly and plainly addressed and refuted each allegation in both Lighthouse Complaints; correctly asserted that "investigation of anonymous ethics complaints is not authorized under state law or the Sauk County Code of Ordinances"; reasonably and validly asked that investigation of ethics issues pursuant to the Lighthouse Complaints "cease immediately."; correctly asserted that a "Lighthouse complaint could not be used to circumvent non-Lighthouse personnel investigation procedures"; reasonably and validly asked that investigation of personnel issues pursuant to the Lighthouse Complaints "cease immediately."

166.    Mr. Olson then responded to Defendant Stadler's interrogation invitation. Mr. Olson shared his legitimate concerns that Stadler's investigation had not been handled with "the requisite concern for the reputation and privacy interests of the accused and the corresponding legal interests of the County" and cited the unprecedented and "unnecessary and reckless" decision "to broadcast these complaints to the entire county organizational leadership" which validated "the 'anonymous' character smears" and "damaged my professional reputation and injured my contractual employment relationship with Sauk County." Mr. Olson explained that those actions by Defendant Stadler had "not fostered any trust in the process or those responsible for managing it." Mr. Olson then finished his response:

I will cooperate with this inquiry fully and completely because quick resolution is in the best interest of everyone, especially my client, Sauk County. However, your initial questions will need to be submitted in writing to allow for written responses that ensure complete accuracy.

167.    Defendant Stadler did not send any questions or discuss Mr. Olson's legitimate concerns with Mr. Olson, ever, even though Defendant Stadler, and all of the other defendant attorneys in this case, had an absolute duty to not just consider Mr. Olson's concerns but actually investigate them pursuant to the Rules of Professional Conduct for Wisconsin Lawyers *before* taking any further action on behalf of Sauk County and providing Sauk County ill-informed advice; but Defendant Stadler, and all of the other attorneys who jumped into the retaliation circus cranked up by Defendant McCumber and his co-conspirators, never bothered to ask even a few simple clarifying questions before they decided to play with Mr. Olson's reputation, employment, career and wellbeing and all of them[4] thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

168.    On January 15, 2020, Defendant Stadler escalated the frivolous Lighthouse Complaints investigation and retaliated against Mr. Olson when he sent a letter to Defendant Bolin and others regarding the Lighthouse Complaints and other unspecified "subsequent complaints" and requested a meeting with the County Board to discuss them. Stadler asserted in the letter: "My attempts to investigate these matters so far have been met with resistance .... Because of this, I believe that it is urgent that I meet with you and the County Board to update the Board, provide you with information on these complaints, and obtain the Board's assistance in making all County employees understand the importance and need to cooperate with my investigation." Defendant Stadler did not disclose the reasons for the "resistance" or explain why the matter had morphed to an "urgent" status and thereby, among others, on information and belief, failed to fulfill his professional duty of honesty to

---

[4] The "all of them" refers to the group of lawyers who intruded on events that transpired between December 10, 2019, and May, 5, 2020, and never asked Mr. Olson a single question *before* they offered "informed" advice to his client, Sauk County, and injured Mr. Olson: Defendants Cross, Curtis, Good, Letendre, Phillips, Rehfeldt and Stadler.

a client and his professional duty of candor to a client and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

169.    Defendant Stadler's malicious and retaliatory decision to escalate the Lighthouse Complaints investigation gave everyone with unlawful motives or reasons to try and destroy Mr. Olson's reputation, ruin his employment relationship, or inflict other injury or damage on Mr. Olson just the pathway and tool to do it. Not surprisingly, with even more help later from Defendant Stadler, that is exactly what they did.

### Intimidation, Retaliation & More

170.    On January 7, 2020, the E&L Committee met with Mr. Olson and several other County Board supervisors to hear detailed information about public misconduct in Sauk County government in accordance with the December 10, 2019, request by the Committee. Defendant Czuprynko immediately tried to obstruct the meeting when he refused to leave the room for the closed session discussion that he was informed would include confidential information that concerned him personally. Nonetheless, Defendant Czuprynko adamantly resisted leaving until a City of Baraboo police officer came to the room and advised Defendant Czuprynko to leave. Defendant Czuprynko finally left and the closed session commenced.

171.    On January 7, 2020, along with Defendant Czuprynko, Defendants Bolin, Evert, Gruber, Krueger, McCumber, O'Rourke and Posewitz attended the E&L Committee meeting but were asked to leave by Chair Vedro, the E&L Committee chair, because the closed session involved confidential information concerning their possible criminal misconduct and next steps and they could not remain due to obvious conflicts of interest and applicable rules that required them to leave. At all times thereafter, Defendants Bolin, Evert, Gruber, Krueger, McCumber, O'Rourke and Posewitz knew that they had a personal adverse interest in obstructing, hindering, preventing or otherwise interfering with all future lawful conduct by Mr. Olson concerning the misconduct information about them that Mr. Olson presented to the E&L Committee and could or would share or attempt to share with another person

34

thereafter and also knew that they could not exercise any of their public authority to obstruct, hinder, prevent or otherwise interfere with any lawful conduct by Mr. Olson concerning the misconduct information about them that Mr. Olson presented to the E&L Committee and could or would share or attempt to share with another person thereafter.

172.   On January 7, 2020, and at all times thereafter, Defendants Bisek, Braunschweig, Bychinski, Cross, Curry, Curtis, Czuprynko, Deitrich, Desmond, Good, Gruber, Hazard, Krueger, Letendre, Lohr, McAuliffe, McCumber, Peper, Phillips, C. Spencer, Stehling, Whitsell and Witecha also knew or should have known that they could not lawfully assist, aid, abet, support or commit any act or omission of interference with any lawful conduct by Mr. Olson concerning the misconduct information of Defendants Bolin, Evert, Gruber, Krueger, McCumber, O'Rourke and Posewitz that Mr. Olson presented to the E&L Committee and could or would share or attempt to share with another person thereafter.

173.   On January 7, 2020, and at all times thereafter, Defendants Bolin, Evert, Gruber, Krueger, McCumber, O'Rourke and Posewitz individually or in concert with each other or concert with Defendants Bisek, Braunschweig, Bychinski, Cross, Curry, Curtis, Czuprynko, Deitrich, Desmond, Good, Gruber, Hazard, Krueger, Letendre, Lohr, McAuliffe, McCumber, Peper, Phillips, C. Spencer, Stehling, Whitsell and Witecha deliberately or repeatedly violated or otherwise disregarded limitations on their exercise of governmental or non-governmental authority to commit acts or omissions that injured and damaged Mr. Olson.

174.   On or about January 8, 2020, Defendant McCumber unlawfully prepared a petition (McCumber Petition) that contained twenty-three (23) pages of material and a cover letter arguing in support of a proposed January 21, 2020, County Board meeting agenda item for: "Discussion and possible action to place the Corporation Counsel on paid administrative leave pending any determination from the Attorney General and appointing Jim Witecha as Interim Corporation Counsel" and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

175.   And, on January 9, 2020, Defendant McCumber unlawfully emailed the McCumber Petition to every member of the Sauk County Board to seek support for the adverse action

against Mr. Olson set forth in the McCumber Petition and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

176. Between January 9, 2020, and January 16, 2020, Defendants Braunschweig, Bychinski, Curry, Czuprynko, Deitrich, Gruber, Krueger, Lohr, McAuliffe, McCumber, Peper, C. Spencer, Stehling and Whitsell, unlawfully aided, abetted, signed, supported, circulated or otherwise exercised their public authority in combination with Defendant McCumber to implement the McCumber Petition and its adverse employment action against Mr. Olson and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

177. On January 16, 2020, Defendant Witecha unlawfully called Mr. Olson as he drove to work and requested that Mr. Olson immediately resign as the Sauk County Corporation Counsel. Defendant Witecha could not and would not provide Mr. Olson any reason for the resignation request. But Defendant Witecha told Mr. Olson he would provide a reason later that day. However, Defendant Witecha, who remained out of the office all day, did not initiate contact with Mr. Olson to provide any reason for the resignation request or an apology for not providing one as promised. After waiting for nearly twelve hours, Mr. Olson, still at the office, texted Defendant Witecha and asked him when Witecha would be providing the reason he promised earlier that day. After waiting an additional 1 and 1/2 hours, Defendant Witecha finally responded and stated: "I still don't know much more than I did this morning."

178. Defendant Witecha did not competently or diligently investigate facts and law prior to requesting Mr. Olson's resignation as Sauk County Corporation Counsel and, on information and belief, sought Mr. Olson's resignation to prevent Olson from filing the Investigation Request; interfere with Olson's official duties; damage Olson's reputation; injure Olson's employment relationship, or; for other improper purposes and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally

protected interests and contravened laws prohibiting the method, substance or purpose of such action.

179.    On January 16, 2020, Defendant Witecha caused Mr. Olson to suffer severe emotional distress with his demand that Mr. Olson resign as the Sauk County Corporation Counsel and subsequent failure to provide any explanation for the demand and Defendant Witecha never expressed any concern, remorse or accountability for making such a reckless and ill-advised demand or for the severe emotional stress he inflicted on Mr. Olson from such an irresponsible action.

180.    On January 17, 2020, Chair Vedro properly exercised his agenda authority as County Board chair and County Board presiding officer and rejected the McCumber Petition whereupon Defendant Czuprynko unlawfully emailed all County Board members and others through the official Sauk County email system and with knowledge of or a reckless disregard for the falsity of the defamatory allegation, falsely claimed that Mr. Olson was a "legal lackey" who, along with Chair Vedro, had "terrorized and threatened a supervisor to withdraw their signature" from the McCumber Petition.

181.    On information and belief, Defendant Czuprynko sent the email defaming Mr. Olson to prevent Olson from filing the Investigation Request; interfere with Olson's official duties; damage Olson's reputation; injure Olson's employment relationship, or; for other improper purposes and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

182.    On January 17, 2020, Defendant Witecha filed a meritless employment grievance against Mr. Olson with Defendants Posewitz and/or Bolin and Defendants Bolin or Posewitz or both unlawfully concealed the Witecha grievance from Mr. Olson for more than two weeks.

183.    On and after January 17, 2020, Defendant Posewitz shared Witecha's grievance against Mr. Olson with Bolin or other persons but unlawfully failed to disclose the grievance to Olson and thereby unlawfully interfered with Olson's constitutional rights, legal duties,

employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

184. On information and belief, Defendant Posewitz did not disclose Witecha's grievance and withheld it from Mr. Olson to support Defendant Witecha's unethical and unlawful deception of the County Board on January 18, 2020; to prevent Olson from filing the Investigation Request; interfere with Olson's official duties; damage Olson's reputation; injure Olson's employment relationship, or; for other improper purposes and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

185. On information and belief, Defendant Bolin did not disclose Witecha's grievance to and withheld it from Mr. Olson to support Defendant Witecha's unethical and unlawful deception of the County Board on January 18, 2020; obstruct justice; harm Olson's reputation; injure Olson's employment relationship, or; for other unlawful purposes and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

186. On January 17, 2020, Defendant Bolin sent Chair Vedro an email on the official Sauk County email system that requested some unlawful agenda items from Defendant Stadler concerning the Lighthouse Complaints.

187. On information and belief, Defendant Bolin forwarded the unlawful agenda item requests from Defendant Stadler despite her prohibitive legal conflicts to the County Board to prevent Olson from filing the Investigation Request; interfere with Olson's official duties; damage Olson's reputation; injure Olson's employment relationship, or; for other improper purposes and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

188. On January 17, 2020, Defendant Lohr emailed Chair Vedro and requested placement of the unlawful McCumber Petition agenda items on the agenda for the January 21, 2020,

County Board meeting for an "emergency" determination because "this matter is timely and cannot wait another month as these items are already in motion" but did not offer any rationale why the patently retaliatory and unlawful McCumber Petition involved a legitimate "emergency" for the County Board.

189. On information and belief, Defendant Lohr sent his January 17, 2020, agenda request to Chair Vedro to place the unlawful McCumber Petition agenda items on the January 21, 2020, County Board agenda to: aid and abet Defendant McCumber's unlawful conduct; prevent Olson from filing the Investigation Request; interfere with Olson's official duties; damage Olson's reputation; injure Olson's employment relationship, or; for other improper purposes and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

190. On January 18, 2020, Defendant Witecha, although prohibited, on information and belief, by criminal or ethics restrictions or other law, sent Chair Vedro and all other County Board members an email message on the Sauk County email system that: contained malicious or recklessly false statements about Mr. Olson and Chair Vedro; offered unsupported factual allegations and unsound legal conclusions advising or encouraging County Board members to override lawful agenda actions of Chair Vedro; attempted to usurp authority of Mr. Olson as Corporation Counsel to share Witecha's "thoughts" on the Chair Vedro agenda decisions and represent Sauk County without authorization from the Corporation Counsel, Mr. Olson, on a matter not assigned to Defendant Witecha and well beyond his professional competence; and attempted to represent Sauk County without disclosing a legitimate conflict of interest, his deception, his own misconduct, or the improper purpose(s) for the email.

191. On information and belief, Defendant Witecha sent his January 18, 2020, email to the County Board to prevent Olson from filing the Investigation Request; interfere with Olson's official duties; damage Olson's reputation; injure Olson's employment relationship, or; for other improper purposes and thereby unlawfully interfered with Olson's constitutional

rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

192.    On January 19, 2020, Defendant Braunschweig emailed Chair Vedro, Mr. Olson, the County Board and Defendants Bolin, and Evert, to declare his support for the unlawful McCumber Petition agenda items and requested that they be placed in the January 21, 2020, County Board agenda along with an item commanding Mr. Olson to "have all 'evidence' on the Sauk County District Attorney's desk no later than Wednesday at noon." Defendant Braunschweig offered no reasons for his support of the unlawful McCumber Petition or why he thought the County Board had any authority to supplant the District Attorney's authority to consult with Mr. Olson and determine how, when, where or even if Mr. Olson should or might provide evidence to the District Attorney concerning the public corruption information Mr. Olson discovered. Defendant Braunschweig also offered no explanation for including Defendants Bolin or Evert in his communication and no reason for including Defendant Witecha, a now suspended employee, in his communication.

193.    On information and belief, Defendant Braunschweig sent his January 19, 2020, agenda requests to Chair Vedro to place the unlawful McCumber Petition agenda items and the unlawful agenda item usurping District Attorney authority on the January 21, 2020, County Board agenda to: aid and abet Defendant McCumber's unlawful conduct; prevent Olson from filing the Investigation Request; interfere with Olson's official duties; damage Olson's reputation; injure Olson's employment relationship, or; for other improper purposes and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

194.    On January 21, 2020, Defendant Whitsell emailed Chair Vedro and requested placement of the unlawful McCumber Petition agenda items on the agenda for the January 21, 2020, County Board because Defendant Whitsell "believe[d] that [Mr. Olson] has targeted individuals, elected officials and department who do not believe he is performing the duties of his position with Sauk County, a hit list of sorts of anyone who disagrees with him." Given that the allegations were patently false, Defendant Whitsell did not even attempt to

provide anything in the email to support them and never provided anything at any time thereafter.

195.   On January 21, 2020, Defendant Whitsell sent his "hit list" email message to Chair Vedro and all other County Board with knowledge of or a reckless disregard for the falsity of the absurd allegation and to: prevent Olson from filing the Investigation Request; interfere with Olson's official duties; damage Olson's reputation; injure Olson's employment relationship; or for other improper purposes and Defendant Whitsell thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

### A Wrongful Suspension & Intimidation of a Witness

196.   On January 21, 2020, and prior to the County Board meeting on that date, Mr. Olson filed the Investigation Request with the Sauk County District Attorney (SCDA) and the Wisconsin Department of Justice (WDOJ), which specifically alleged more than thirty (30) criminal misconduct or criminal ethics violations by four (4) County Board supervisors and five (5) County officials or employees including Defendants Bolin, Czuprynko, Evert, Gruber, Krueger, McCumber, O'Rourke and Posewitz.

197.   On January 21, 2020, nor anytime thereafter, neither Sauk County nor any county board supervisor or any Sauk County official or attorney, other than Mr. Olson, noted, identified, discussed, or enforced any restriction or limitation on the use of public authority by Defendants Bolin, Czuprynko, Evert, Gruber, Krueger, McCumber, or Posewitz while they were subject to investigation pursuant to the Investigation Request. Consequently, on information and belief, Defendants Bolin, Czuprynko, Evert, Gruber, Krueger, McCumber, or Posewitz unlawfully used their public authority deliberately or repeatedly on or after January 21, 2020, to commit, separately or in concert with others, not less than fifty (50) acts or omissions combined that injured and damaged Mr. Olson, and violated, on information and belief, criminal or civil law or both or otherwise constituted an abuse of government authority.

198.   On January 21, 2020, and prior to the County Board meeting on that date, Olson emailed all County Board members and advised them of the District Attorney and WDOJ

41

filing. As soon as they received the message, every County Board member knew that Liebman and Defendants Bolin, Czuprynko, Evert, Gruber, Krueger, McCumber, O'Rourke and Posewitz had just been named as possible criminal defendants in a pending criminal investigation and that they had substantial personal interests in any adverse action of any kind against Mr. Olson that adverse interest absolutely prohibited them from using their public authority to take or facilitate any adverse action against Mr. Olson.

199.   On January 21, 2020, and prior to the County Board meeting on that date, Mr. Olson clearly and unmistakably became a witness in a criminal matter involving public corruption in Sauk County and every Defendant knew or should have known that when Mr. Olson publicly informed the County Board of the Investigation Request filing. But every Defendant ignored that fact every day from January 21, 2020, and thereafter. And Defendants Bisek, Bolin, Braunschweig, Bychinski, Cross, Curry, Curtis, Czuprynko, Deitrich, Evert, Good, Gruber, Hazard, Krueger, Lohr, McAuliffe, McCumber, Meister, O'Rourke, Peper, Phillips, Rehfeldt, C. Spencer, Stehling, Whitsell and Witecha flagrantly disregarded the fact that Mr. Olson was a witness in a criminal public corruption matter.

200.   Wisconsin law provides strong protection for people like Mr. Olson who step forward and report potential criminal misconduct, especially public corruption misconduct, through laws that authorize criminal penalties against people who try to stop such imperative and absolutely lawful conduct.[5] But Defendants deliberately or repeatedly committed adverse acts or omissions against Mr. Olson that unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action, including, on information and belief, non-civil restrictions imposed by the intimidation of a witness statute or other laws and their clear and well-established mandate prohibiting such conduct.

201.   On January 21, 2020, the Stadler Lighthouse fiasco and the misconduct discovery retaliation trains came together and severely assaulted and injured Mr. Olson. By the end of the evening, Defendants Bolin, Braunschweig, Bychinski, Curry, Czuprynko, Deitrich, Evert,

---

[5] See e.g., Wis. Stat. §§ 940.42 and 940.43 (prohibiting Intimidation of Witnesses with misdemeanor or felony penalties) and Wis. Stat. § 134.01 (prohibiting Conspiracy to Hinder Lawful Conduct with misdemeanor penalties).

Gruber, Hazard, Krueger, Lohr, McAuliffe, McCumber, Peper, C. Spencer, Stadler, Stehling and Whitsell had, on information and belief, committed at least one new serious violation of the law or aided and abetted one as part of the ongoing effort to unlawfully neutralize Mr. Olson, forcibly remove him from office and ultimately terminate his employment with Sauk County.

202.    On January 21, 2020, during the County Board meeting, Defendant Czuprynko unlawfully prepared and circulated a petition (Czuprynko Petition) to hold a special meeting on January 28, 2020, to: "address issues raised in Atty Stadler's communication of 1/21/20." Defendants Czuprynko, Gruber, Krueger and McCumber unlawfully exercised their official authority and signed the Czuprynko Petition. Defendants Braunschweig, Bychinski, Curry, Deitrich, Hazard, Lohr, McAuliffe, Peper, C. Spencer, Stehling and Whitsell also signed it. Supervisor Bob Newport, now deceased, also signed it. Defendant Evert immediately but unlawfully exercised her official authority to verify and approve it.

203.    On January 22, 2020, Defendant Evert exercised her authority as County Clerk to unlawfully: revise the Czuprynko Petition agenda item request; prepare a meeting notice for the January 28, 2020, County Board special meeting that did not include the Czuprynko Petition agenda item; prepare a meeting notice for the January 28, 2020, County Board special meeting that included an agenda item she created; publish a meeting notice for the January 28, 2020, County Board special meeting that did not include the Czuprynko Petition agenda item; and publish a meeting notice for the January 28, 2020, County Board special meeting that included an agenda item she created.

204.    On January 23, 2020, Defendant Good unlawfully sent a letter to the entire County Board falsely accusing Mr. Olson of ethics violations, abuse of government authority, county ordinance violations and violating Defendant Witecha's rights. Defendant Good knew that he could not intimidate a witness and knew that he could not communicate directly with Mr. Olson's client, Sauk County, without Mr. Olson's consent and deliberately did not seek such consent and intentionally sent his letter to intimidate Mr. Olson and injure Mr. Olson's reputation, employment relationship, personal wellbeing or other interests or rights and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment,

43

or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

205.    On January 26, 2020, Defendant Letendre unlawfully sent a letter to the entire County Board falsely accusing Mr. Olson of ethics violations, abuse of government authority. Defendant Letendre knew that he could not intimidate a witness and knew that he could not communicate directly with Mr. Olson's client, Sauk County, without Mr. Olson's consent and deliberately did not seek such consent and intentionally sent his letter to intimidate Mr. Olson and injure Mr. Olson's reputation, employment relationship, personal wellbeing or other interests or rights and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

206.    On January 28, 2020, Chair Vedro emailed all County Board members and advised them that Evert's meeting notice improperly deviated from the Czuprynko Petition and further advised that the meeting notice may not comply with the Open Meeting Law. Consequently, he also advised them that the January 28, 2020, special County Board meeting should be cancelled but permitted each County Board member to make their own decision about attending.

207.    On January 28, 2020, Defendant Stadler, then sent an unlawful email to Mr. Olson, Chair Vedro and the County Board and, once again disregarding Mr. Olson's prior objections to Defendant Stadler's interference with Mr. Olson's representation of Sauk County, intruded on Mr. Olson's attorney-client relationship with Sauk County and provided unauthorized and contrary legal advice to the County Board:

> I believe that the meeting notice properly balances the factors required to be considered pursuant to *State ex rel. Buswell v. Tomah Area School District*, 2007 WI 71, 301 Wis. 2d 178, 732 N.W.2d 804.

208.    Mr. Olson responded to Mr. Stadler's unlawful interference:

> Once again, you have exceeded your authority by involving yourself in matters well outside the very limited role you have to review the Lighthouse complaints as insurance counsel. You are not the County's attorney and have no authority to advise or communicate with my client as if you were.

> I specifically advised you yesterday that your interference is improper and unauthorized. I also advised that I would seek outside counsel guidance and you needed to stop interfering.
>
> For the third time, you are advised that your interference is unwelcome and improper. Please stop.

209.   But Mr. Stadler refused to comply with Mr. Olson's request and once again communicated directly with Mr. Olson's client without consent and stated:

> Mr. Olson, I have been asked to represent the County in regard to investigating the Lighthouse complaints, both of which involve allegations against you. I requested the opportunity to meet with my client and a majority of the supervisors signed off on a petition to hold a special meeting to meet with me. I have every right, and obligation, to communicate with my client. I will communicate with my client.

210.   Defendant Stadler was hired pursuant to an exercise of authority by Mr. Olson as Corporation Counsel to assist the Corporation Counsel with one matter and only one: the Lighthouse Complaints. Defendant Stadler was not hired by Sauk County or the County Board or anyone else to do anything else for Sauk County, ever and neither Sauk County nor the County Board were his client. Consequently, Defendant Stadler never had any authority at any time to provide general legal advice on Wisconsin Open Meeting Law or anything else directly and independently to Sauk County, the County Board, Defendant Evert, Defendant Witecha, Defendant Bolin or anyone else in Sauk County government, ever and he knew it.[6] But he did, deliberately or repeatedly, and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

211.   On January 28, 2020, although prohibited, on information and belief, by criminal or ethics restrictions, Sauk County Board supervisors, including Defendants Deitrich, Gruber and McCumber, called other supervisors prior to the special county board meeting and threatened them with arrest if they did not attend.

212.   On January 28, 2020, sixteen (16) members of the County Board met for roll call of the County Board special meeting: Defendants Braunschweig, Bychinski, Curry, Czuprynko, Deitrich, Gruber, Hazard, Krueger, Lohr, McAuliffe, McCumber, Stehling, Peper, and C.

---

[6] On February 6, 2020, Defendant Stadler wrote to Chair Vedro and unequivocally stated: "I am not corporation counsel for the County, nor have I been retained to provide general advice to the County."

Spencer and Supervisors John Miller (pursuant to unlawful arrest threat) and Robert
Newport (now deceased). Fourteen members lawfully refused to attend any part of it.
Supervisor Kriegl attended after the roll call.

213.   On January 28, 2020, Defendants Braunschweig, Bychinski, Curry, Czuprynko, Deitrich,
Gruber, Hazard, Krueger, Lohr, McAuliffe, McCumber, Peper, C. Spencer and Stehling,
unlawfully participated in an unlawful County Board meeting, held a closed session to
consider evidence or other information concerning Mr. Olson, and voted to suspend Mr.
Olson and thereby unlawfully interfered with Olson's constitutional rights, legal duties,
employment, or other legally protected interests and contravened laws prohibiting the
method, substance or purpose of such action.

214.   On January 28, 2020, Defendants Braunschweig, Bychinski, Curry, Czuprynko, Deitrich,
Gruber, Hazard, Krueger, Lohr, McAuliffe, McCumber, Peper, C. Spencer, Stehling, and
former supervisor Robert Newport (now deceased), with unlawful assistance from
Defendants Bolin, Evert and Stadler, unlawfully exercised their government authority
against Mr. Olson and suspended his employment without adequate notice to Mr. Olson,
without providing Mr. Olson a reasonable to rebut the evidence or information used against
him, without providing an impartial decisionmaker, and contrary to other mandatory
procedural requirements under Wis. Stat. §59.42, Sauk County ordinances, County Board
Rules, and other law and thereby unlawfully interfered with Olson's constitutional rights,
legal duties, employment, or other legally protected interests and contravened laws
prohibiting the method, substance or purpose of such action.

215.   On January 28, 2020, during the unlawful County Board special meeting, Defendant
Stadler once again knowingly, deliberately and unlawfully assumed the role of Corporation
Counsel and knowingly, deliberately and unlawfully exercised Corporation Counsel
authority to wrongfully advise the supervisors in attendance that they could suspend Mr.
Olson with a simple majority vote by the those present and Stadler thereby unlawfully
interfered with Olson's constitutional rights, legal duties, employment, or other legally
protected interests and contravened laws prohibiting the method, substance or purpose of
such action.

216. On January 28, 2020, despite a vote of just fifteen (15) supervisors, which included not less than four (4) votes by disqualified members (Czuprynko, Gruber, Krueger and McCumber) and represented less than a majority of the County Board, Defendant Deitrich emailed Mr. Olson late in the evening and unlawfully declared: "It is my duty in [sic] inform you the Board voted to place you on administrative leave with pay until the Lighthouse investigation has been completed." Deitrich further informed Mr. Olson that he "no longer had access to personal systems," would "not be allowed access to your office," and should "stay away from the West Square Building." Defendant Deitrich did not provide any reason why suspension of Mr. Olson was warranted and necessary and neither Sauk County nor Defendants Bolin, Braunschweig, Bychinski, Curry, Czuprynko, Deitrich, Evert, Gruber, Hazard, Krueger, Lohr, McAuliffe, McCumber, Stehling, Peper, C. Spencer or Stadler ever provided Mr. Olson with such a reason.

217. On January 28, 2020, Mr. Olson responded to Defendant Deitrich's email and sent an email message to the entire County Board: "Please be advised that the adverse employment action you and a handful of supervisors took tonight is indisputably retaliatory. Accordingly, the action has exposed the county and individual supervisors to a substantial liability claim."

218. Since January 28, 2020, Defendants named in this Complaint have never publicly disagreed with or even attempted to disagree with Mr. Olson's conclusion that the employment suspension action against him was retaliatory and, on information and belief, the Defendants suspended Mr. Olson to: retaliate against him for filing the Investigation Request; interfere with Olson's official duties; damage Olson's reputation; injure Olson's employment relationship, or; for other improper purposes and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

219. Between January 21, 2020, and January 28, 2020, at all times, Defendants Bolin, Braunschweig, Bychinski, Czuprynko, Curry, Deitrich, Evert, Gruber, Hazard, Krueger, Lohr, McAuliffe, McCumber, O'Rourke, Peper, Phillips, Posewitz, C. Spencer, Stadler, Stehling, and

Whitsell, despite an obvious danger to Mr. Olson's rights, deliberately or repeatedly failed to take any action to intervene and prevent harm to Mr. Olson or Sauk County from any act or omission connected to the unlawful suspension of Mr. Olson's employment and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

### Neutralizing Attorney Olson: Act III
### (January 29, 2020 – May 5, 2020)

### Intimidation, Retaliation, Defamation, Termination

220.    On January 29, 2020, County Board Chair, Peter Chair Vedro, sent an email message to the County Board and stated that "last evenings actions were unlawful" and the "actions taken against Mr. Olson are retaliation," and thereby publicly confirmed on behalf of Sauk County, Mr. Olson's conclusion and position concerning the unlawful suspension.

221.    On January 29, 2020, Defendants Bolin, Braunschweig, Bychinski, Czuprynko, Curry, Deitrich, Evert, Gruber, Hazard, Krueger, Lohr, McAuliffe, McCumber, Peper, C. Spencer, Stadler, and Stehling each had clear notice of a compelling adverse personal interest in all matters concerning Mr. Olson as of that date and thereby knew or should have known that any further exercise of official authority by them against Mr. Olson would violate criminal or civil restrictions or both and, therefore, such exercise of authority was prohibited by law.

222.    On January 29, 2020, and at all times thereafter, Defendants Bolin, Braunschweig, Bychinski, Curry, Czuprynko, Deitrich, Evert, Gruber, Hazard, Krueger, Lohr, McAuliffe, McCumber, Peper, C. Spencer, Stadler, and Stehling, with new and unlawful assistance from Defendants Curtis and Phillips, willfully, aggressively and unlawfully enforced the January 28, 2020, County Board minority decisions to unlawfully place Mr. Olson on administrative leave, unlawfully deny him access to personal systems, unlawfully deny him access to his office, and unlawfully advise Mr. Olson to "stay away from the West Square Building" and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

### Sauk County Deprives Olson of Contract Benefits

48

223.   On January 29, 2020, and at all times thereafter, the Employment Contract required Defendant Sauk County to pay Olson's annual professional dues to the State Bar of Wisconsin.

224.   On January 29, 2020, Olson's annual professional dues to the State Bar of Wisconsin were not yet paid.

225.   On January 29, 2020, Defendant Sauk County, ordered Sauk County Corporation Counsel office staff to not communicate with Olson and at all times thereafter, Olson could not contact any Sauk County Corporation Counsel staff to arrange payment of Olson's 2020 professional dues to the State Bar of Wisconsin. Consequently, Sauk County did not pay Olson's 2020 professional dues to the State Bar of Wisconsin as required by the Employment Contract.

226.   Olson is required to submit sufficient Continuing Legal Education (CLE) credits to the Wisconsin Board of Bar Examiners every two years on odd-year cycles to maintain his Wisconsin law license in good standing.

227.   Olson's two most recent CLE reporting periods were 2017-2019 and 2019-2021.

228.   As of January 29, 2020, Olson had completed sufficient CLE credits for his 2017-2019 reporting period.

229.   As of January 29, 2020, Olson had not yet submitted his CLE information for the 2017-2019 reporting period.

230.   On January 29, 2020, Olson's CLE reporting documents and his CLE information were kept in a private file in Olson's Sauk County Corporation Counsel Department office.

231.   Commencing January 28, 2020, Defendant Sauk County prevented Olson from accessing his 2017-2019 CLE reporting period documents and information.

232.   Commencing January 29, 2020, Defendant Sauk County prevented Olson from timely filing his CLE information for the 2017-2019 reporting period.

233.   On or about March 2020, the Wisconsin Office of Lawyer Regulation imposed a late CLE reporting fee against Olson of two-hundred dollars ($200.00) and prohibited Olson from filing his CLE information until the late fee was paid.

234.   On or about March 2020, and all relevant times thereafter, Mr. Olson could not submit a

49

benefit claim to Defendant Sauk County for payment of the late CLE reporting fee imposed against him and still could not access the CLE information in his office. On or about June 1, 2020, the Wisconsin Office of Lawyer Regulation suspended Olson's license to practice law in Wisconsin for failure to file his CLE information for the 2017-2019 reporting period and failure to pay the late filing fee for the same reporting period.

## The Olson Petition for Mandamus

235.    On February 12, 2020, Mr. Olson exercised a constitutionally protected right and filed a mandamus petition with the Sauk County Circuit Court wherein he requested "[a] writ of mandamus ordering Defendant [Sauk County] to immediately cease enforcement of the January 28, 2020 suspension vote and immediately restore workplace privileges to Olson in full without restriction." The petition included a statement of facts describing substantial abuses of government authority by Sauk County government officials including Defendants Evert

236.    The trial court conducted a motion hearing on August 10, 2020, and, without considering the merits of Olson's mandamus petition claims, dismissed the petition because Sauk County had terminated Olson's employment on May 5, 2020, while Olson's petition request for reinstatement from suspension was pending and, according to the court, extinguished the court's ability to reinstate Olson from his suspension.

237.    Olson timely appealed the trail court dismissal decision to the Wisconsin Court of Appeals District IV and Sauk County argued on appeal that the trial court dismissed the mandamus petition for mootness. The Court of Appeals accepted but clarified the mootness argument of Sauk County. The Court of Appeals held that the trial court dismissed the mandamus petition for mootness and no other reason. Neither Sauk County nor Mr. Olson appealed all or any part of the Court of Appeals decision.

238.    Pursuant to the Wisconsin Court of Appeals decision and well-established mootness law, the trail court did not consider or resolve directly or indirectly the merits of any claim or issue in this action and, therefore, none of the claims or issues in this action are precluded.

239.    Irrespective of the Court of Appeals decision and mootness law, none of the claims or issues in this action that were not raised in the mandamus action are also not precluded

because they could not be raised in the mandamus action given the waiting period for
claims against local government units created by Wis. Stat. § 893.80.[7]

240.    The claims or issues in this action were not addressed on the merits in the Mandamus
action in the Sauk County Circuit Court and are not precluded by any law or fact.

**Unconscionable Defamation, Indifference and Retaliation**

241.    Prior to and after January 29, 2020, Olson never engaged in or exhibited any public or
private acts or threats of violence, physical aggression, or unreasonable anger towards any
Sauk County supervisor, official, or employee.

242.    Olson has no history of violence, physical aggression or unreasonable anger towards any
other person except a single childhood tussle at age seven (7) with a ten-year-old neighbor
boy that led to Olson suffering a dislocated shoulder when the ten-year-old rolled on top of
Plaintiff.

243.    On January 29, 2020, Olson was at home more than sixty (60) miles from his office
preparing for major surgery the next day. Olson posed no legitimate threat to forcibly enter
his office or cause physical injury to any person in Sauk County.

244.    On January 30, 2020, Olson underwent major surgery on his left Achilles Tendon in a
Madison, WI hospital, which left him unable to walk for several days and unable to
ambulate without crutches and/or a disability scooter for more than a month. And, on
January 30, 2020, and at all relevant times thereafter, Olson did not pose a legitimate
foreseeable threat to forcibly enter his office or cause physical injury to any person in Sauk
County.

245.    On January 29, 2020, Defendant Sauk County, by Defendant Meister, ordered two (2)
fully-armed deputies of the Sauk County Sheriff's Department to "guard" the public
entrance to the Sauk County Corporation Counsel Department and "prevent" entry by
Olson. On January 29, 2020, Olson had no history of violence, was sixty (60) miles away
preparing for surgery the next day and, on January 30, 2020, had major surgery to his
achilles tendon that left him unable to walk without crutches or other mechanical

---

[7] Section 893.80 does not apply to mandamus actions and, therefore, unlike the non-mandamus claims in this
action, the mandamus action could be filed and prosecuted by Olson against Sauk County without waiting for a
denial of the claims therein by Sauk County.

assistance. Defendant Sauk County and Defendant Meister did not have any legitimate reason to order two armed deputies be posted adjacent to the Sauk County Corporation Counsel Department door in a public hallway on January 29, 2020 or anytime thereafter and, on information and belief, did so to intimidate, threaten, humiliate, or denigrate Mr. Olson or for other unlawful purposes and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action..

246.   On January 29, 2020, Defendant Meister knew that Mr. Olson was a witness in a possible criminal investigation and trial and knew that he could not exercise his government authority as Sheriff to intimidate a witness. On January 29, 2020, Defendant Meister, on information and belief, intentionally and unlawfully ordered two armed deputies be posted adjacent to the Sauk County Corporation Counsel Department door in a public hallway and Mr. Olson suffered substantial and severe distress, fear, anxiety and other emotional responses associated with an act of intimidation by a law enforcement official and Mr. Olson still suffers severe distress, fear and other emotional injury and damage due to the acts or omissions of Defendant Meister.

247.   Defendants Bolin, Braunschweig, Bychinski, Czuprynko, Curry, Deitrich, Evert, Gruber, Hazard, Krueger, Lohr, McAuliffe, McCumber, Peper, Phillips, C. Spencer, Stadler, Stehling and Whitsell were silent and indifferent to Defendant Meister's unlawful conduct and made no effort to intervene and prevent harm to Mr. Olson or Sauk County and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

248.   On January 29, 2020, Defendant Deitrich, maliciously or recklessly sent an email message to all members of the County Board and others that contained numerous defamatory false allegations about Olson and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

249.   Defendants Bolin, Braunschweig, Bychinski, Czuprynko, Curry, Evert, Gruber, Hazard,

Krueger, Lohr, McAuliffe, McCumber, Peper, Phillips, C. Spencer, Stadler, Stehling and Whitsell were silent and indifferent to Defendant Deitrich's unlawful conduct and made no effort to intervene and prevent harm to Mr. Olson or Sauk County and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

250.   On January 30, 2020, Defendant Evert maliciously or recklessly made defamatory statements to a BNR newspaper reporter and others that she ordered the doors to the Clerk's Office locked to the public because Olson was a safety threat to her and her staff and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

251.   The BNR published a front-page story on January 31, 2020, that was widely circulated and distributed to thousands of people and contained Defendant Evert's false "safety concern" allegations against Olson in it.

252.   Defendants Bolin, Braunschweig, Bychinski, Czuprynko, Curry, Deitrich, Gruber, Hazard, Krueger, Lohr, McAuliffe, McCumber, Peper, Phillips, C. Spencer, Stadler, Stehling and Whitsell were silent and indifferent to Defendant Evert's unlawful conduct and made no effort to intervene and prevent harm to Mr. Olson or Sauk County and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

### More Unauthorized Lawyers & More Unlawful Interference

253.   On February 4, 2020, Defendant Cross knew that he could not communicate with the County Board without the consent of the Corporation Counsel or Corporation Counsel's designee on a matter involving Cross' client(s). Nonetheless, although prohibited, on information and belief, by criminal or ethics restrictions, Defendant Cross, indifferent to Mr. Olson's rights, forwarded an email message from his client Defendant McCumber concerning the February 7, 2020, County Board special meeting to the entire County Board,

Defendant Stadler and others and opined:

> "This folks is what they call a 'witch-hunt'. These are allegations in search of a
> crime. Sound familiar? RWC."

254. Although prohibited, on information and belief, by criminal or ethics restrictions, Defendant Czuprynko then replied to the entire County Board and stated: "Hopefully, both witch hunts are concluded this week."

255. Defendants Bolin, Braunschweig, Bychinski, Curry, Deitrich, Evert, Gruber, Hazard, Krueger, Lohr, McAuliffe, McCumber, Peper, Phillips, C. Spencer, Stadler, Stehling and Whitsell were silent and indifferent to Defendant Cross's and Defendant Czuprynko's unlawful conduct and made no effort to intervene and prevent harm to Mr. Olson or Sauk County and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

256. Defendant Cross knew his February 4, 2020, falsely and maliciously or recklessly accused Olson of engaging in a "witch-hunt" against his clients, Defendants Czuprynko, Evert, Gruber Krueger and McCumber and knew or should have known that such communication by him on behalf of his clients could violate intimidation of a witness or criminal misconduct in office restrictions and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

257. Defendant Czuprynko knew his February 4, 2020, falsely and maliciously or recklessly accused Olson of engaging in "witch-hunts" as Corporation Counsel and knew or should have known that it could violate intimidation of a witness or criminal misconduct in office restrictions.

258. On February 4, 2020, Defendant Stadler, indifferent to Mr. Olson's rights and in clear contrast to his prior "protective" instincts that compelled him to unlawfully interfere with Mr. Olson's representation of Sauk County and create chaos in January 2020, somehow misplaced those instincts and did not intervene or otherwise communicate any criminal intimidation of a witness concerns (Cross, Czuprynko, McCumber), criminal misconduct

concerns (Czuprynko, Gruber, Krueger, McCumber), ethics violation concerns (Cross), defamation liability concerns (Cross, Czuprynko) or Open Meeting Law concerns (County Board). But he found them again on February 6, 2020, when he felt "compelled" to send an email message to Chair Vedro and point out "issues" with a County Board agenda.

259.   On February 5, 2020, Defendant Phillips sent a letter to Mr. Olson (Phillips Letter 1) and a letter to Chair Vedro (Phillips Letter 2) and shared legal analysis and advice concerning the unlawful suspension action against Mr. Olson on January 28, 2020. Both letters were uninvited and unauthorized intrusions into Sauk County government.

260.   At all relevant times, Defendant Wisconsin County Mutual Insurance Corporation (WCMIC) was the insurance provider for Sauk County. WCMIC does not have any authority to authorize any lawyer it hires to contravene any rule of professional conduct established by the Wisconsin Supreme Court and applicable to WCMIC lawyers pursuant to the Rules of Professional Conduct for Wisconsin Lawyers. Sauk County also does not have such authority. So, any insurance agreement between WCMIC and Sauk County cannot authorize a WCMIC lawyer to disregard the Wisconsin Rules of Professional Conduct for Attorneys.

261.   The Wisconsin Rules of Professional Conduct for Attorneys prohibit a lawyer from communicating with a represented client (e.g., Sauk County) in the course of representing another client (e.g., WCMIC) in the same matter (e.g., Olson suspension) unless the lawyer (e.g., WCMIC lawyer) seeks and secures permission from the other lawyer (e.g., Sauk County lawyer) to communicate with the other lawyer's client (e.g., Sauk County) or the client's officers (e.g., Mr. Olson and Mr. Chair Vedro).

262.   On February 5, 2020, Defendant Phillips sent a letter to Mr. Olson (Phillips Letter 1) and to Mr. Chair Vedro (Phillips Letter 2). Defendant Phillips did not have any permission from any Sauk County lawyer to send either letter.[8]

263.   The Wisconsin Rules of Professional Conduct for Attorneys also require lawyers to investigate the factual and legal background of matter *before* they advance a proposition in

---

[8] Defendant Phillips unambiguously acknowledges the lack of permission in the letters. For example, in the Chair Vedro letter he states: "Given Attorney Olson's status on administrative leave, we are providing a copy of this letter to Administrative Coordinator Kleczek Bolin and would ask that she forward the letter to the appropriate attorney in the corporation counsel's office."

it. Defendant Phillips did not competently investigate either the factual or legal background of the Olson suspension matter before he sent the letters to Mr. Olson, Mr. Chair Vedro, Defendant Bolin and Defendant Bisek

264.   Defendant Phillips asserted in his letters that the January 28, 2020, vote by fifteen members of the County Board was lawful because the Sauk County District Attorney had provided an opinion saying it complied with the Wisconsin Open Meeting Law. But the suspension decision could not be deemed valid solely because of the District Attorney opinion because the suspension also suffered from other severe flaws that rendered it invalid. But Defendant Phillips did not know that because he did not diligently investigate the facts or law intimately connected to the suspension meeting decision.

265.   Defendant Phillips did not investigate the District Attorney opinion he relied on. So he did not learn that the District Attorney opinion was rendered even though Defendant O'Rourke was an employee in the District Attorney's Office and no one in the District Attorney's Office should have rendered any opinion on the suspension meeting.

266.   Defendant Phillips did not investigate the participation of Defendants Czuprynko, Gruber, Krueger and McCumber in the suspension discussion and vote. So, he did not learn that they were disqualified and could not participate or vote because they had been named in the Investigation request filed by Mr. Olson on January 28, 2020.

267.   Defendant Phillips did not investigate the agenda petition that was used to schedule the suspension meeting. So, he did not learn that it had been signed by Defendants Czuprynko, Gruber, Krueger and McCumber and was approved by Defendant Evert even though they were all disqualified from exercising any public authority in connection with such a petition because they had been named in the Investigation Request filed by Mr. Olson the same day they signed or approved the petition.

268.   The letters Defendant Phillips sent to Mr. Olson and Chair Vedro were not based on any competent investigation of facts or law by Defendant Phillips and contained grave factual and legal errors and omissions. Those errors and omissions would be relatively benign if the letters did not end up in the wrong hands. But they did, because, once again, Defendant Phillips did not diligently investigate the suspension decision and associated matters before

he sent the letters.

269.   On February 5, 2020, Defendant Phillips did not send his letters to just Mr. Olson and Mr. Chair Vedro. He also sent them to Defendants Bisek and Bolin, two individuals with personal interests in the January 28, 2020, suspension decision that are not just adverse to Mr. Olson and Sauk County but probably his own clients WCMIC and WCA. Defendant Bolin participated in the suspension decision even though she had just been named in the Investigation Request by Mr. Olson and could not lawfully participate and, on information and belief, violated at least two criminal restrictions when she did (Intimidation of Witness and Misconduct in Office). Defendant Bisek also had personal interests adverse to Mr. Olson because Bisek unlawfully released the confidential legal documents in January 2019 that triggered the unlawful Gruber/McCumber investigation of Mr. Olson and subsequent events, which, along with the Bolin, et. al conspiracy and the Stadler fiasco, ultimately led to the unlawful January 28, 2020, suspension decision against Mr. Olson.

270.   When Defendant Phillips sent Phillips Letter 1 and Phillips Letter 2 to Defendants Bisek and Bolin, he sent adverse parties more ammunition to attack Mr. Olson, damage Sauk County and probably harm his own clients, WCMIC and WCA because he did not diligently or competently investigate the factual or legal background of the Olson suspension decision he "evaluated" in his letters to Mr. Olson and Chair Vedro. Not surprisingly, Defendant Bisek used the ammunition Defendant Phillips provided to attack and injure Mr. Olson.

271.   On February 6, 2020, Defendant Bisek sent a copy of Phillips Letter 1 and Phillips Letter 2 to Defendant Evert and requested that Evert, another party with a clear adverse interest in the suspension decision against Mr. Olson, send it to the entire County Board.

272.   On February 6, 2020, although prohibited, on information and belief, by criminal or ethics restrictions, Defendant Evert, indifferent to Mr. Olson's rights, unlawfully exercised her official authority and sent a copy of Phillips Letter 1 and Phillips Letter 2 to the entire County Board.

273.   On February 6, 2020, and all times thereafter, Defendants Bisek, Czuprynko, Evert, Gruber, Krueger, McCumber, and others used Phillips Letter 1 and Phillips Letter 2 to attack and harm Mr. Olson.

**The February 7, 2020, Meeting Obstruction**

274.    On February 1, 2020, County Board Chair Chair Vedro sent an email message to twenty-
        one (21) County Board members that requested signatures on a County Board special
        meeting petition proposed for February 7, 2020, and advised: "The meeting will cover in
        closed session the details of the 'referral' previously presented to [the E&L Committee] and
        now in the hands of the Attorney General's Criminal Investigations unit." It proposed a
        single agenda item:

> Conferring with legal counsel for the governmental body who is rendering oral or
> written advice concerning strategy to be adopted by the body with respect to litigation
> in which it is or is likely to become involved. Update on E&L Committee misconduct
> Referral; unlawful/unethical actions by officials to hinder filing; Lighthouse Complaints
> against Corporation Counsel and others in response to Misconduct Report, and; abuse
> of Lighthouse complaint system and procedures.

275.    On February 7, 2020, Mr. Olson attended the February 7, 2020, pursuant to a subpoena
        issued and signed by Chair Vedro to try and share public corruption information with the
        County Board so long as any of the persons named in the Investigation Request were not
        present and able to access the information and thereby compromise the investigation into
        their misconduct.

276.    At all times, Defendants Bolin, Czuprynko, Evert, Gruber, Krueger or McCumber, did not
        have any legal right to use their public authority to peak into the investigation file and be
        given the opportunity to compromise evidence of their possible criminal misconduct and or
        undermine the investigation before it got off the ground just because they were public
        officials. But they thought they did.

277.    On February 7, 2020, Defendants Czuprynko, Gruber, Krueger and McCumber,
        intentionally obstructed presentation of confidential information from Mr. Olson to the
        County Board concerning the Investigation Request filed by Mr. Olson. Czuprynko, Gruber,
        Krueger and McCumber repeatedly and unlawfully exercised their authority by: making and
        supporting a motion to adjourn the meeting shortly after it was called to order; making and
        supporting a motion to remove an agenda item to approve hiring special counsel to oversee
        the investigations; threatening legal action against Olson; seconding and supporting a
        motion to postpone discussion of their misconduct; arguing against and voting to oppose

two different motions for a closed session that would protect the confidentiality of Olson's information, and; refusing to leave a closed session to permit Olson to share confidential public corruption information with the County Board. Defendants Braunschweig, Bychinski, Curry, Evert, Hazard, Lohr, McAuliffe, and Peper, equally indifferent to Mr. Olson's rights, intentionally and knowingly supported the unlawful obstruction of Defendants Czuprynko, Gruber, Krueger and McCumber with votes or debate or both. The combined obstruction succeeded and prevented Mr. Olson from providing information to the County Board and seeking a County Board response and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

278.   Defendant Sauk County never attempted to give Mr. Olson another opportunity to discuss the Investigation Request or ask for County Board assistance again and adopted by acquiescence the petition obstruction and the content-based speech restriction inflicted on Mr. Olson on February 7, 2020, as its own and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

**More Defamation and More Indifference**

279.   On February 11, 2020, Defendant Witecha, attended a public E&L Committee meeting and willfully, maliciously and falsely asserted that Mr. Olson "fostered a culture of fear and reprisal" and made other false accusations about Mr. Olson. Defendant Witecha plainly echoed and acted in concert with Defendants Deitrich, Evert and Meister and others who made or supported similar reprehensible defamations against Mr. Olson just days before that falsely tried to stigmatize Mr. Olson as a violent unstable bully and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

280.   On February 16, 2020, at 6:16 a.m. CST, Defendant Witecha, indifferent to Mr. Olson's rights, sent an email message to the County Board and, without offering any credible supporting evidence because there is none, unlawfully hurled another vicious, defamatory

and grossly unethical pile of lies at Mr. Olson that falsely claimed Mr. Olson was involved in "a mass" of ethics transgressions, committed criminal misconduct, and, again echoing the personal safety stigmatizing defamation by Defendants Deitrich, Evert and Meister, alleged Mr. Olson was a "volatile and reactionary" person and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

281.    On February 18, 2020, Mr. Olson was compelled to defend his reputation, career, livelihood and wellbeing and respond to the concerted effort by Defendants Deitrich, Czuprynko, Deitrich, Evert, Gruber, McCumber, Witecha and Whitsell to destroy them with obscenely malicious and blatantly false claims about Mr. Olson. Mr. Olson accurately defined the email as a desperate attempt by Defendant Witecha to cover his backside and save his career by trashing Mr. Olson's reputation and the defamations by Defendants Deitrich, Czuprynko, Deitrich, Evert, Gruber, McCumber, and Witecha were made in furtherance of similar unlawful and vile purposes.

282.    Mr. Olson also again appealed to the County Board for immediate relief from the onslaught of unlawful actions against him by Witecha and others. The County Board ignored his request and Mr. Olson did not get any intervention or other help from anyone. It was actually rejected.

283.    On or about February 18, 2020, Defendant C. Spencer, indifferent to Mr. Olson's rights, sent an email to the County Board that quickly and callously dismissed Mr. Olson's request for help. Defendant C. Spencer incredulously and falsely suggested that Mr. Olson's conduct was comparable to Witecha's vicious backsliding slander. Then, with an appalling disregard for the grave injuries and damages already inflicted on Mr. Olson on a near daily basis for two months, Defendant C. Spencer declared that the County Board needed time to "heal" itself first.

284.    Not a single County Board member or other person named in this Complaint stepped forward to disagree with or even modestly question the callous disregard for Mr. Olson's basic humanity let alone his legal rights embedded in the C. Spencer email. So, the attacks on Mr. Olson continued without challenge or intervention by any of the lawyers involved,

Defendants Curtis, Phillips, Rehfeldt and Stadler, who had a mandatory professional duty to protect their client from liability for injury(s) and damage(s) inflicted on Mr. Olson or by any of the the non-lawyers, Defendants Bolin, Braunschweig, Bychinski, Curry, Czuprynko, Deitrich, Evert, Gruber, Hazard, Krueger, Lohr, McAuliffe, McCumber, Peper, C. Spencer, Stehling, Whitsell, and others who all had a mandatory fiduciary duty to act in the best interest of Sauk County. They all willfully ignored the ongoing assault on Mr. Olson and meekly watched or eagerly helped it and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

285.    On February 19, 2020, Defendant O'Rourke, although prohibited, on information and belief, by criminal or ethics restrictions, indifferent to Mr. Olson's rights, attended the County Board meeting and made multiple false allegations against Mr. Olson and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

### The March 17, 2020, Termination "Authorization"

286.    On or about March 14, 2020, Defendant Evert exercised her authority as County Clerk and posted notice of a March 17, 2020, County Board meeting that Rehfeldt approved or otherwise accepted as valid as legal counsel for Sauk County and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

287.    On March 17, 2020, the County Board discussed Olson's employment and, on information and belief, some evidence related to it, but did not take any formal action on Mr. Olson's employment status.

288.    On March 17, 2020, Defendants Branschweig, Bychinski, Curry, Czuprynko, Deitrich, Gruber, Krueger, McAuliffe, McCumber, Peper, Stehling and Whitsell, despite prior unlawful conduct connected to actions against Mr. Olson and the associated biases therefrom, unlawfully participated in meeting discussions, and considered information about Mr. Olson

and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

289.    On March 17, 2020, Defendants Rehfeldt and Phillips, despite prior unlawful conduct connected to actions against Mr. Olson and the associated biases therefrom, also unlawfully participated and unlawfully aided the unlawful participation of Defendants Branschweig, Bychinski, Curry, Czuprynko, Deitrich, Gruber, Krueger, McAuliffe, McCumber, Peper, Stehling and Whitsell, and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

290.    A Wisconsin county corporation counsel in counties with a population under 750,000, like Sauk County, can only be terminated upon a majority vote of all members of a county board under Wis. Stat. § 59.42 or a two-thirds vote under Wis. Stat. §17.10. In either case, there is no termination decision without a vote and on March 17, 2020, the County Board did not conduct any vote to terminate Olson's employment relationship with Sauk County and, therefore, the County Board did not make any lawful and enforceable employment termination decision concerning Olson on March 17, 2020. But that did not dissuade Defendants or slow down their ongoing effort to get Olson out of the way as soon as possible.

291.    On March 18, 2020, despite knowledge that the County Board did not vote to terminate Olson's employment with Sauk County on March 17, 2020, or even specifically authorize any action consistent with such a decision, and despite their own conflicts, Defendants Rehfeldt and Phillips, indifferent to Mr. Olson's rights, unlawfully emailed Olson and claimed: "As a result of the County Board meeting last night, I and Andy Phillips are charged with resolving your employment issue." When asked for clarification by Olson, Defendants Rehfeldt and Phillips, still aware that the County Board did not cast any termination vote, lied and unlawfully claimed: "Attorney Phillips and I have been charged with the termination of your employment with Sauk County pursuant to your contract and the paperwork associated with that." There was no vote. The County Board "charged" no one to

act. Rehfeldt and Phillips acted unlawfully without authority and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

292.   Although there is no record of any termination or "charged" vote on March 17, 2020, the representations by Rehfeldt and Phillips clearly indicate that some form of discussion concerning Olson's employment occurred during that County Board meeting and, consequently, also reveals additional misconduct by Defendants Braunschweig, Czuprynko, Deitrich, Gruber, Krueger, Lohr, McCumber and Whitsell, who could not exercise any of their official authority in connection with such a discussion due to adverse personal conflicts as well as Defendants Phillips and Rehfeldt who not only failed to advise Braunschweig, Czuprynko, Deitrich, Gruber, Krueger, Lohr, McCumber and Whitsell of the legal prohibitions on their activity but Rehfeldt and Phillips, on information and belief, also committed misconduct directly through their participation during and after the meeting given the substantial conflicts of interest they both had and are described in more detail in the subsequent Wrongful Termination section and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

293.   On March 20, 2020, Defendants Rehfeldt and Phillips, indifferent to Mr. Olson's rights, unlawfully offered Mr. Olson three-months severance pay if Olson relinquished all claims against Sauk County, an "offer" that Olson deemed offensive and immediately rejected, whereupon Rehfeldt and Phillips emailed Olson and unlawfully threatened Olson with a retaliatory "investigative review" and such actions unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

**The Wrongful Termination**

294.   On or about April 28, 2020, Stadler completed his "investigation" of the Lighthouse Complaints and submitted an "investigation" report (Stadler Report) to Sauk County and Defendant McCumber and, on information and belief to Defendants Curtis, Phillips and

Rehfeldt. Defendants Curtis, Phillips, Rehfeldt, Stadler and Sauk County, indifferent to Mr. Olson's rights, never provided Olson a copy of the Stadler Report.

295.    On April 28, 2020, McCumber stated during an E&L Committee meeting that the personnel investigations of Olson were completed and the County Board would likely hold a special meeting to determine Olson's employment status with Sauk County.

296.    On April 28, 2020, Defendant Curtis told Olson and Circuit Court Judge Patricia Barrett during a telephone conference that he was not aware of any pending effort or decision to terminate Olson's employment. Defendant Curtis owed Judge Barrett and Olson a duty to amend that statement but he did not fulfill that duty. Defendant Curtis never amended his response or otherwise informed Judge Barrett or Olson of the subsequently scheduled May 5, 2020, County Board special meeting for considering termination of Olson's employment with Sauk County and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

297.    On or after April 28, 2020, Defendant Stadler, indifferent to Mr. Olson's rights, did not notify Olson that the Lighthouse Complaints "investigation" was done and did not provide Olson with a copy of the report or any information in or about it. Mr. Olson subsequently requested a copy of the report(s) as part of the Mandamus action. Defendant Phillips acknowledged the request and represented consideration and a future response. Neither Defendant Phillips nor anyone on his behalf provided Mr. Olson a response to the request. Rather, Defendant Curtis first falsely claimed that Mr. Olson did not make a request and then said the request was not in "proper form" to be considered a valid discovery request even though there is no official "proper form" for any discovery request and it was incumbent on Defendants Curtis and Phillips to object as to the content of the request or request clarification. They did neither. They ignored it and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

298.    On or about April 28, 2020, Defendant Evert unlawfully prepared the official meeting notice for the May 5, 2020, County Board special meeting and thereafter mailed the notice on April 30, 2020, to Defendant McCumber and all other County Board members and, upon information and belief, also mailed it to Defendants Curtis, Phillips, Rehfeldt, Stadler and others. Defendant Evert did not mail or otherwise in any manner send or attempt to send the notice to Mr. Olson and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

299.    Between April 30, 2020, and May 5, 2020, neither Defendants Curtis, Phillips, Rehfeldt, Stadler nor any members of the County Board mailed or otherwise in any manner sent or attempted to send the May 5, 2020, County Board special meeting notice to Olson and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

300.    Between April 30, 2020, and May 5, 2020, Defendants Curtis, Evert, Gruber, Krueger, McCumber, Phillips, Rehfeldt, Stadler and others knew the County Board special meeting for May 5, 2020, would include discussion of and possible action on Olson's employment status with Sauk County but intentionally failed to notify Olson of the pending discussion or action and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

301.    Between April 30, 2020, and May 5, 2020, Defendants Curtis, Evert, McCumber, Phillips, Rehfeldt, Stadler and others knew the County Board special meeting for May 5, 2020, would include submission and consideration of written or oral testimony or both or other evidence as part of the discussion of and possible action on Olson's employment status with Sauk County and such activity is an evidentiary hearing under and subject to Wis. Stat. §19.85(1)(b), which imposes specific advance notice requirements to the subject of the evidentiary hearing and gives the subject a statutory right to compel activity in open session.

302.    Defendants Curtis, Evert, McCumber, Phillips, Rehfeldt, Stadler and others intentionally failed to provide Mr. Olson notice of the May 5, 2020, evidentiary hearing to be conducted and that was conducted during the County Board special meeting on that date concerning Olson's employment status with Sauk County and thereby violated the mandatory notice requirement of Wis. Stat. §19.85(1)(b) and unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

303.    The May 5, 2020, notice included two (2) agenda items related to Mr. Olson's employment with Sauk County. The First, agenda item VI.B., identified a proposed closed session to: "Under [19.85](1)(c) to evaluate the performance of Attorney Olson as corporation counsel of Sauk County." The second, agenda item VII. stated: "Return to open session and take action on matters discussed in closed including, without limitation, the employment status of Attorney Olson."

304.    Mr. Olson did not have a regular job performance review due until July 2020 and the proposed performance review, early by three months, contravened the typical job performance review procedure for Mr. Olson. Job performance reviews had previously been done exclusively by the E&L Committee at regular meetings. Job performance review by the County Board at a special meeting was an abnormal and random event that Defendants decided to conceal from Mr. Olson.

305.    The May 5, 2020, notice did not explicitly identify any adverse employment action to be taken against Mr. Olson as part of the meeting. The notice is completely devoid of the terms "terminate", "discharge" or any other similar term that would provide specific public notice or personal notice to Mr. Olson of employment termination. Instead, the Defendants masked the intended discharge action against Mr. Olson from public scrutiny and from Olson with the more ambiguous "employment status" term, which, given the incredibly heightened public interest in such action that Defendants themselves created with their own unlawful conduct, is wholly inconsistent with the specificity requirements under the Wisconsin Open Meeting Law as interpreted by the Wisconsin Supreme Court and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other

legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

306.   But the unlawfulness of the May 5, 2020, County Board special meeting does not end with the substantial notice errors. There were many other violations of law.

307.   The termination decision included active discussion and voting participation by self-interested and grossly biased County Board members including Defendants Czuprunko, Gruber, Krueger and McCumber, who were named in the Investigation Request by Olson and publicly linked to criminal misconduct allegations, as well as Defendants Deitrich, Bychinski, Curry, Hazard, Peper, Lohr, Stehling and McAuliffe, who previously participated in the unlawful McCumber Petition, unlawful Czuprynko Petition, unlawful January 28, 2020, suspension meeting, unlawful obstruction during the February 7, 2020, County Board meeting, unlawful March 17, 2020, County Board meeting "termination" decision, and, last but not least, in the case of Defendant Deitrich, an ugly defamatory assault of Olson on January 31, 2020. Participation by these County Board members despite their substantial personal interests in adverse action against Olson contravened federal and state constitutional guarantees for Olson as well as Wisconsin common law that recognizes a right to fundamental fairness in these kinds of individualized government decisions and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

308.   The termination action also included or was otherwise impacted by legal analysis from lawyers with severe conflicts of interest that prohibited their involvement or, at best, required a written conflicts waiver, which none of them secured before the May 5, 2020, meeting.

309.   Attorney Stadler knew that Olson severely objected to Stadler's unlawful and unethical interference with Olson's attorney-client relationship in January 2020 and his gross mishandling of the Lighthouse Complaints. In fact, hoping to protect Sauk County from impending legal jeopardy created by Stadler and others, Olson fired Stadler on January 28, 2020, for his abhorrent ethics violations and other misconduct, pursuant to Olson's

authority as Corporation Counsel, the sole source of Stadler's appointment authority to review the Lighthouse Complaints. Stadler blatantly and unethically ignored that termination and unlawfully exercised Corporation Counsel authority he did not have to facilitate the January 28, 2020, suspension meeting and decision. When Olson finally had the opportunity to state his objections in person in early February 2020, Defendant Stadler caustically replied: "I don't care. I don't care. I don't care." That offensive response not only betrays Stadler's severe indifference to the injury(s) and damage(s) inflicted on Olson by Defendant Stadler but reveals Stadler's prejudgment that absolutely barred him from continuing the sham "investigation" of Olson as well as any participation by Stadler or his report in the Olson termination action and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

310.    Attorneys Curtis and Phillips were also ethically conflicted in the Olson termination action but still participated and without disclosing their conflict to Sauk County. Defendant Phillips had previously injected and interfered with Sauk County legal representation in early February, when, without any lawful request or permission or adequate investigation, Defendant Phillips sent letters to Mr. Olson and Chair Vedro with legal analysis, opinions and conclusions that he had not been asked or authorized to provide. Mr. Olson believed such action violated the Wisconsin Rules of Professional Conduct and he so advised Phillips immediately to no avail. Phillips and Defendant Curtis, attorneys in the same law firm, also had a severe conflict associated with their simultaneous representation of Sauk County and the Wisconsin Counties Association (WCA) because Defendant Phillips was at all times the WCA legal counsel and Defendant Krueger, now a possible criminal defendant pursuant to the Investigation Request, was at all relevant times the second-highest ranking member on the WCA Board of Directors. Defendant Krueger, and consequently the WCA, had a direct adverse personal interest in the Olson termination that absolutely barred any participation by Defendants Curtis and Phillips. But, on information and belief, they participated anyway and thereby unlawfully interfered with Olson's constitutional rights, legal duties,

employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

311.    Defendant Rehfeldt also improperly participated. Defendant Rehfeldt failed to fully inform himself concerning the Investigation Request and the matters reported in it to law enforcement despite an ethical duty to make himself informed. Rehfeldt never contacted Olson during Rehfeldt's Interim Corporation Counsel period to discuss the Investigation Request. If he had, Defendant Rehfeldt would have learned that a key witness and potentially another criminal defendant currently worked in his office, Georgia Boehlke. Boehlke likely assisted Defendants Gruber and McCumber in an unlawful abuse of authority and possibly more. Rehfeldt did not know this because he did not make any attempt to completely and faithfully fulfill his ethical duty to his client, Sauk County. By law, the ethical conflict of Boehlke is imputed to Rehfeldt and barred him from participating in the Olson termination. Rehfeldt also unlawfully threatened Olson with an "investigative review" in March 2020 when Olson declined to accept a deeply offensive settlement "offer" presented by Defendants Phillips and Rehfeldt after an alleged termination decision "authorization" by the County Board on March 17, 2020. Despite these glaring conflicts, Defendant Rehfeldt also unlawfully participated in the Olson termination meeting and hearing and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

312.    The May 5, 2020, County Board special meeting, termination hearing and termination decision also encompassed serious violations of the State Ethics Code for Local Government Officials by most of the attendees and participants and did not comport with the removal standards applicable to Olson under the Employment Contract, Wis. Stat. 59.42 and 17.10 (Olson's employment with Sauk County was supported by federal funds) and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

313.    On May 8, 2020, Defendant McCumber notified Olson of his employment termination

by email. The message did not include or otherwise refer to any reason for the termination decision.

314.   However, the termination notice did include a proposed severance agreement that the County was contractually required to offer Olson only if the County Board determined that Olson was not discharged for "neglect of duty, malfeasance or misfeasance." Therefore, the County Board had a fiduciary or other legal duty to deliberate and consider such reasons but clearly did not discharge Olson for any of them. But, as already noted, they also did not give Olson any notice of the information they ultimately relied on or any opportunity to rebut it or any reason.

315.   On or about May 15, 2020, Defendant McCumber publicly confirmed that the County Board did not terminate Olson on May 5, 2020, for any specific or valid reason when he told a newspaper reporter that the County Board did not need a reason to terminate Olson's employment.

316.   The County Board did not decide to discharge Olson just because they felt like it as implied by Defendant McCumber's statement. They discharged Olson because he refused to violate the law or because he complied with mandatory legal duties or both despite the severe and unlawful retaliation or other coercion inflicted on Mr. Olson by Defendants and thereby unlawfully interfered with Olson's constitutional rights, legal duties, employment, or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

317.   *Refusing to conceal public official misconduct evidence.* At all relevant times, Olson had an affirmative duty to refuse and resist any intimidation, coercion or other effort by Defendants to force Olson to conceal public misconduct evidence and violate laws and professional rules that prohibited such concealment. Olson refused and resisted numerous attempts by Defendants to intimidate, coerce or otherwise force Olson to conceal substantial evidence of criminal misconduct and violate laws or rules prohibiting such concealment by Olson.

318.   *Resisting witness intimidation and obstruction of justice*. At all relevant times, Olson had an affirmative duty to refuse and resist any intimidation, coercion or other effort by

Defendants to prevent Olson from sharing public misconduct evidence as a witness. Olson refused and resisted all attempts by Defendants to intimidate, coerce or otherwise prevent Olson from sharing public misconduct evidence as a witness.

319.   *Reporting public official misconduct to a government organization client.* On December 10, 2019, and January 7, 2020, Olson had an affirmative duty to share the misconduct evidence with his client and he shared the evidence with his client on those dates. Olson reported public corruption information and evidence concerning Sauk County officials, officers and employees to the E&L Committee on December 10, 2019, and on January 7, 2020.

320.   *Reporting public official misconduct to law enforcement.* On January 21, 2020, Olson had an affirmative duty to share the misconduct evidence with law enforcement and he shared the evidence with law enforcement on that date. Olson shared criminal public corruption information and evidence concerning Sauk County officials, officers and employees with local and state law enforcement agencies on January 21, 2020.

**Neutralizing Attorney Olson: Act IV**

**(May 5, 2020 - Now)**

**Trying to Kill the Olson Investigation Request**

321.   The wrongful discharge of Olson by Defendants did not completely "solve" the problems they faced and wanted desperately to go away. Like all bad plans to commit crimes or other unlawful acts, there was a loose end. But the public corruption trail blazed by Defendants had a very big loose end: the Investigation Request Olson filed on January 21, 2020.

322.   On January 23, 2020, Sauk County District Attorney, Michael Albrecht (Albrecht), referred the Investigation Request to Sauk County Sheriff, Richard "Chip" Meister, Defendant Meister, with a cover letter that added an investigation request from Albrecht to the request from Olson.

323.   Defendant Meister and the Sauk County Sheriff's Department cannot lawfully or ethically take any action to prevent or otherwise obstruct investigation of the Allegations Letter due to conflicts of interest including but not limited to: Meister's personal interests in Olson's legal claims against Meister and other Defendants in this matter; Meister's and the

Sheriff Department's substantial organizational, functional and financial relationship with Sauk County, whose current County Board membership includes Czuprynko, Gruber, Krueger and McCumber, who are subjects of many allegations in the Investigation Request, and; the likelihood that current or former Sheriff Department employees will be questioned about events related to the criminal misconduct and other allegations against current and former county officials.

324.    On or about January 24, 2020, Chair Vedro emailed Meister and asked Meister to refer the matter to an outside agency for investigation because of Meister's and the Sheriff Department's substantial conflicts of interest but Meister never responded to Chair Vedro's email and has continuously and repeatedly refused to refer the Investigation Request to a competent neutral outside law enforcement agency for investigation for since January 23, 2020, and thereby deprived Olson of his full and complete right to petition government guaranteed by the First Amendment to the United States Constitution and other legal rights of Olson under the Constitution and laws of Wisconsin

325.    Defendant Meister has history of abusing his authority to obstruct investigations involving his friends, which includes a well-publicized matter in 2017 when Defendant Meister declined to move forward with an investigation of criminal corruption allegations against a personal friend, a former Sauk County Highway Commissioner, until a newspaper reporter observed Meister enjoying lunch at a public restaurant with the ex-Commissioner. Meister is a friend and close political ally of at least four of the individuals named in the Investigation Request: Defendants Czuprynko, Gruber, Krueger, and McCumber.

326.    On April 24, 2020, Assistant Attorney General David Maas on behalf of the WDOJ sent a letter to Olson and responded to Olson's request that the WDOJ investigate the matters set forth in the Investigation Request and stated:

> The Wisconsin Department of Justice has thoroughly reviewed the allegations in your letter and based on that review, the Department will not be pursuing a criminal investigation or prosecution at this time.

327.    The letter does not explicitly or implicitly state that the WDOJ reviewed the merits of the Investigation Request; it does not contain the word "merits" or "merit" or any

derivation thereof; the WDOJ never reviewed any evidence before it sent the April 2020 WDOJ letter to Olson, and; WDOJ never spoke to Olson or any other witness before WDOJ declined to investigate the Investigation Request and, in the end, the letter is simply a "no thank not right now" letter and cannot be reasonably read to be anything else.

328.   On or about May 1, 2020, Chair Vedro, county board chair and chair of the E&L Committee when Olson filed the Investigation Request, publicly confirmed that the Maas letter and WDOJ response did not evaluate the merits of the Investigation Request when Chair Vedro stated to a newspaper reporter: "Failing to seek—as directed—abundant and available evidence in support of the referral allegations is merely a politically convenient response by the AG's office to kick the ball back from whence it came." And, accordingly Chair Vedro confirmed, on behalf of Sauk County that the Investigation Request matter was not "closed" or over or finished no matter how desperately or how loud some Defendants who don't want to investigated say it is.

329.   Unfortunately, Defendant Meister had no intention of picking the ball up or passing it to someone with legal authority to make a lawful decision about the Investigation Request, which Meister did not have on January 21, 2020 or anytime thereafter and still does not have because of the substantial conflicts of interest already noted.

330.   On August 10, 2020, Olson sent a letter to Defendant Meister requesting referral of the Investigation Request to an appropriate outside law enforcement agency and, with complete disregard for Mr. Olson's rights, Meister ignored the letter and did not respond.

331.   On August 6, 2021, after waiting for Covid pandemic matters to settle down in Sauk County, Mr. Olson sent a second letter to Defendant Meister requesting referral of the Investigation Request to an appropriate outside law enforcement agency, but, just as he did in 2020, Meister, with complete disregard for Mr. Olson's rights, again ignored the letter and refused to respond.

332.   On August 18, 2021, Mr. Olson sent a letter to Defendant Desmond and the Sauk County District Attorney Michael Albrecht to seek their assistance with the Investigation Request due to the lack of response from Defendant Meister and stated in the letter:

It is well-established that a sheriff has a legally enforceable duty to investigate criminal activity within his/her jurisdiction. Moreover, failure to investigate reported criminal activity exposes a sheriff to civil and criminal sanctions. Therefore, to avoid more formal action against Sheriff Meister to compel the investigation, I ask that you communicate to or advise him of his legal duty to immediately refer the January 21, 2020 complaint/referral to a qualified and independent law enforcement agency for investigation and secure such investigation.

333.    District Attorney Albrecht and Defendant Desmond did not respond, at least not directly.

334.    On August 23, 2021, Defendants Curtis and Phillips sought to intervene and sent Mr. Olson a letter *on behalf of District Attorney Albrecht and Defendant Desmond and Defendant Meister* asserting their claim that the matter was "closed" and Mr. Olson should stop communicating with Defendant Meister about it, an obvious attempt to violate Mr. Olson's First Amendment rights. It is also clear that Defendants Curtis and Phillips could not intervene because, on information and belief, such action is absolutely prohibited by a myriad of conflicts of interest attached to current or former clients as well as the impermissible simultaneous representation of current clients such as the WCA and WCMIC and attempted representation in the letter of Defendant Desmond and Defendant Meister and District Attorney Albrecht in the same matter but they did, and by their "representation" so did District Attorney Albrecht and Defendants Desmond and Meister, who also cannot participate directly or indirectly due to their own conflicts of interest. Defendants Curtis, Desmond, Meister and Phillips thereby, pursuant to their unlawful participation in the evaluation of the Maas letter, unlawfully interfered with Olson's constitutional rights or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

335.    There are also several critical facts for an accurate reading of the Maas letter. First, the Investigation Request letter from Mr. Olson did not include any specific evidence; none. It was a statement of allegations with references to supporting evidence and nothing more. Second, no one from WDOJ contacted or interviewed any potential witness before sending the response letter. And, finally, no one from the Department contacted Mr. Olson at any

time before sending the response letter. Therefore, the Maas letter cannot logically or reasonably be deemed an evaluation of or response to the merits of the Investigation Request. Rather, it was a resource or policy decision or a bit of both. But it was not a decision based on any legal analysis and it would be gross distortion of the letter to assert that it provided any evaluation of the allegations on their merits.

336.   Defendants Curtis, Desmond and Phillips, even if they could intervene in the Investigation Request matter, were required to diligently and competently investigate, research or otherwise evaluate facts and information before they provided an opinion or take any other action concerning the Investigation Request filed by Mr. Olson. They did not do that. They never discussed the Investigation Request with Olson and never reviewed the evidence supporting the Investigation Request with Olson and, on information and belief, they never contacted WDOJ about the Aril 2020 WDOJ letter to Mr. Olson, discussed the Investigation Request with WDOJ, reviewed evidence supporting the Investigation Request with anyone who could competently describe the evidence for them, attempted to diligently and competently determine whether WDOJ reviewed the merits of the Investigation Request. But they still sent a letter to Mr. Olson that falsely and erroneously claimed the WDOJ reviewed the merits of the Investigation Request and thereby unlawfully interfered with Olson's constitutional rights or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

337.   On August 23, 2021, Defendants Curtis, Desmond, Meister and Phillips unlawfully attempted to "close" the Investigation Request Mr. Olson filed on January 21, 2020, a constitutionally protected petition under the First Amendment to the United States Constitution, thereby unlawfully interfered with Olson's constitutional rights or other legally protected interests and contravened laws prohibiting the method, substance or purpose of such action.

**CAUSES OF ACTION**

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983**

## CONSPIRACY TO DEPRIVE CIVIL RIGHTS

(Against Defendants Bisek, Boehlke, Bolin, Braunschweig, Bychinski, Chrisler, Cross, Curry, Curtis, Czuprynko, Detter, Deitrich, Desmond, Dorner, Eberl, Evert, Flint, Gibson, Good, Gruber, Hazard, Kinsman, Klitzke, Krueger, Letendre, Lohr, McAuliffe, McCumber, Meister, Nelson, O'Rourke, Peper, Phillips, Polivka, Posewitz, Rego, Rehfeldt, Reppen, Riek, Scanlon, Schell, C. Spencer, T. Spencer, Stadler, Stehling, Stevens, White Eagle, Whitsell, Witecha and Jane Doe)

338.   Each paragraph of this Complaint is incorporated as if restated fully herein.

339.   Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1983.

340.   Defendants subjected Plaintiff or caused Plaintiff to be subjected to the deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States.

341.   Defendants, acting in concert with each other and other co-conspirators, conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves to deprive Plaintiff of his: First Amendment right to gather information without retaliation; First Amendment right to exercise free speech without retaliation; First Amendment right to petition government without retaliation; Fourteenth Amendment right to be free from repeated or deliberate violations of law; Fourteenth Amendment right to be free from egregious government abuse; Fourteenth Amendment right to not suffer "depraved indifference" to injurious unconstitutional conduct; or; Fourteenth Amendment right to constitutionally sufficient procedural due process for deprivation of his liberty interests, including but not limited to reputation, privacy and contract or his property interests, including but not limited to employment, litigation claims and contract benefits.

342.   Repeated or deliberate violations of the Law. Defendants intentionally and repeatedly exercised government authority to commit corrupt acts or omissions against Plaintiff for the purpose of causing harm that included acts or omissions that prohibit Criminal Intimidation of a Witness (Wis. Stat. §§ 940.43 and 940.42); Criminal Misconduct in Office by a Dishonest Exercise of Power (Wis. Stat. § 946.12(3); Criminal Misconduct in Office by Unauthorized or Forbidden Act (Wis. Stat. § 946.12(2); Criminal Defamation (Wis. Stat. § 942.01); Criminal Ethics Violation

343.   Deliberate Indifference. Defendants intentionally assaulted Plaintiff with a tsunami and conscience shocking abuse of government authority that included not only the criminal violations described in this claim but also numerous unlawful but not criminal acts or omissions that contravened the Constitution and laws of the United States, Constitution and

laws of the State of Wisconsin, the Rules of Professional Conduct for Wisconsin Lawyers, the Sauk County Code of ordinances, Sauk County Board Rules and more.

344.   Failure to Intervene. Defendants knew or should have known that their acts or omissions or the acts or omissions of others created an obvious or increased threat to Plaintiff's constitutional rights but, with deliberate indifference, consciously and willfully failed, despite numerous reasonable opportunities, to intervene and prevent constitutional injury(s) to Plaintiff.

345.   Defendants committed acts or omissions that deprived or intended to deprive Plaintiff of rights or privileges guaranteed by the Constitution and laws of the United States.

346.   Plaintiff suffered injury(s) and damage(s) as a direct and proximate result of the unlawful acts or omissions of Defendants described in this claim.

347.   Defendants failed to mitigate Plaintiff's injury(s) and damage(s) and thereby aggravated them.

348.   Defendants committed the unlawful acts or omissions described in this claim under color of law and pursuant to Sauk County policy, custom or practice.

349.   Defendants are liable to Plaintiff for compensatory damages in amounts to be determined by the trier of fact but exceeds the jurisdictional requirements of this Court as can nearly be determined at this time.

350.   Defendants committed the unlawful acts or omissions described in this claim with a callous or reckless indifference to Plaintiff's rights.

351.   Defendants are liable to Plaintiff for punitive damages in amounts to be determined by the trier of fact.

### SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### U. S. CONSTITUTION SUBSTANTIVE DUE PROCESS LIBERTY INTEREST VIOLATIONS
### (Public Corruption)(Deliberate Indifference)(Failure to Intervene)

(Against Defendants  Bisek, Boehlke, Bolin, Braunschweig, Bychinski, Chrisler, Cross, Curry, Curtis, Czuprynko, Detter, Deitrich, Desmond, Dorner, Eberl, Evert, Flint, Gibson, Good, Gruber, Hazard, Kinsman, Klitzke, Krueger, Letendre, Lohr, McAuliffe, McCumber, Meister, Nelson, O'Rourke, Peper, Phillips, Polivka, Posewitz, Rego, Rehfeldt, Reppen, Riek, Scanlon, Schell, C. Spencer, T. Spencer, Stadler, Stehling, Stevens, White Eagle, Whitsell, Witecha, Jane Doe and Sauk County)

352.    Each paragraph of this Complaint is incorporated as if restated fully herein.

353.    Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1983.

354.    Defendants subjected Plaintiff or caused Plaintiff to be subjected to the deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States.

355.    The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees three related but independent liberty rights essential to ordered liberty and democracy in state and local government. It guarantees a right to the rule of law that is violated by public corruption that is evidenced by repeated or deliberate violations of the law. It also guarantees a right to fair and rational government that is violated by a shocking abuse of government authority. And, it guarantees a right to government misconduct intervention that is violated by deliberate indifference to the misconduct.

356.    Repeated or deliberate violations of Law. Defendants Defendants  Bolin, Braunschweig, Bychinski, Cross, Curry, Czuprynko, Deitrich, Evert, Good, Gruber, Hazard, Krueger, Letendre, Lohr, McAuliffe, McCumber, Meister, O'Rourke, Peper, Posewitz, Rehfeldt, C. Spencer, Stadler, Stehling, Whitsell, Witecha and Jane Doe each repeatedly or deliberately exercised government authority to commit a corrupt act(s) or omission(s) against Plaintiff that contravened a law prohibiting: Criminal Intimidation of a Witness (Wis. Stat. §§ 940.43 and 940.42); Criminal Misconduct in Office by a Dishonest Exercise of Power (Wis. Stat. § 946.12(3); Criminal Misconduct in Office by Unauthorized or Forbidden Act (Wis. Stat. § 946.12(2); Criminal Defamation (Wis. Stat. § 942.01); Criminal Ethics Violation (Wis. Stat. § 19.59); Non-Criminal Ethics Violation (Wis. Stat. § 19.59); or other law.

357.    Deliberate Indifference. Defendants each intentionally assaulted Plaintiff with an act(s) or omission(s) with such deliberate indifference to Plaintiff's rights as to constitute a conscience shocking abuse of government authority including but not limited to: filing a

retaliatory anonymous Lighthouse Complaint filled with lies; prosecuting an unwarranted and reckless investigation of patently frivolous and retaliatory Lighthouse Complaints filed against Plaintiff; filing a frivolous and retaliatory public records complaint with the Wisconsin Attorney General; filing or signing a retaliatory agenda petition (McCumber Petition) to punish Plaintiff; demanding resignation of Plaintiff without cause; disclosing to a newspaper confidential legal advice Plaintiff provided; sending a malicious lie-filled email to the County Board attacking Plaintiff for alleged ethics violations while simultaneously concealing the sender's own ethics violations; attempting to prevent Plaintiff from filing criminal misconduct information with law enforcement for investigation; casting a grossly self-interested and unlawful vote to suspend Plaintiff's employment; ordering armed deputies to be posted outside Plaintiff's office door to discredit and stigmatize Plaintiff when he could not even walk; circulating a lie-filled email message falsely accusing and stigmatizing Plaintiff as a threat to women; making a malicious and false allegation that the doors to the County Clerk's office needed to be locked to prevent potential harm by Plaintiff who could not even walk; circulating a second email message to the County Board making malicious and false ethics allegations against the Plaintiff while concealing the sender's own ethics violations; or casting a grossly self-interested and unlawful vote to terminate Plaintiff's employment.

358.    Failure to Intervene. Defendants knew or should have known that their acts or omissions or the acts or omissions of others created an obvious or increased threat to Plaintiff's constitutional rights but, with deliberate indifference, consciously and willfully failed, despite numerous reasonable opportunities, to intervene and prevent constitutional injury(s) to Plaintiff.

359.    Defendants committed acts or omissions that deprived or intended to deprive Plaintiff of rights or privileges guaranteed by the Constitution and laws of the United States.

360.    Plaintiff suffered injury(s) and damage(s) as a direct and proximate result of the unlawful acts or omissions of Defendants described in this claim.

361.    Defendants failed to mitigate Plaintiff's injury(s) and damage(s) and thereby aggravated them.

362. Defendants committed the unlawful acts or omissions described in this claim under color of law and pursuant to Sauk County policy, custom or practice.

363. Defendants are liable to Plaintiff for compensatory damages in amounts to be determined by the trier of fact but exceeds the jurisdictional requirements of this Court as can nearly be determined at this time.

364. Defendants committed the unlawful acts or omissions described in this claim with a callous or reckless indifference to Plaintiff's rights.

365. Defendants are liable to Plaintiff for punitive damages in amounts to be determined by the trier of fact.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**U. S. CONSTITUTION FIRST AMENDMENT FREE SPEECH CLAUSE VIOLATION**
**Right to Petition Deprivation or Attempted Deprivation**
(Against Defendants Bolin, Braunschweig, Bychinski, Curtis, Czuprynko, Deitrich, Desmond, Evert, Gruber, Hazard, Krueger, Lohr, McCumber, McAuliffe, Meister, O'Rourke, Peper, Phillips, Rehfeldt, C. Spencer, Stadler, Whitsell, Witecha and Sauk County)

366. Each paragraph of this Complaint is incorporated as if restated fully herein.

367. Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1983.

368. On January 21, 2020, Plaintiff did not have any duty as a Sauk County employee to file the Investigation Request with the Sauk County District Attorney, Wisconsin Attorney General or anyone else.

369. On January 21, 2020, Plaintiff sent the Investigation Request to the Sauk County District Attorney and the Wisconsin Attorney General in his independent legal representative but non-employee capacity as Corporation Counsel and his statutory and official but non-employee capacity as Corporation Counsel and requested a criminal investigation on the information provided and concerning Defendants Bolin, Czuprynko, Gruber, Krueger, McCumber, O'Rourke, and Posewitz.

370. On January 23, 2020, the Sauk County District Attorney, adding his own official request for investigation to Plaintiff's, referred Plaintiff's Investigation Request by cover letter to Defendant Meister.

80

371.    Defendant Meister, pursuant to state criminal and ethics laws, could not and cannot exercise any discretion with respect to the Investigation Request because of substantial personal and departmental conflicts of interest that implicate potential criminal and ethics sanctions.

372.    Defendant Meister is wholly unable to lawfully decide whether to respond or not to respond to the Investigation Request and thereby unable to complete the constitutional petition process Plaintiff commenced on January 21, 2020.

373.    Plaintiff is not entitled to any direct response to the Investigation Request but his constitutional right to petition is incomplete as long as Defendants refuse to forward or otherwise obstruct transmission of his petition to someone who can lawfully decide whether or not to respond.

374.    Defendant Meister has, for thirty-three (33) months, willfully and repeatedly refused to forward the Investigation Request to a local government law enforcement department who, unlike Defendant Meister, can lawfully exercise discretion and decide whether or not to respond to it.

375.    Defendants Bolin, Braunschweig, Bychinski, Curtis, Czuprynko, Deitrich, Desmond, Evert, Gruber, Hazard, Krueger, Lohr, McCumber, McAuliffe, O'Rourke, Peper, Phillips, Rehfeldt, C. Spencer, Stadler, Whitsell and Witecha willfully, repeatedly and unlawfully assisted the obstruction or other interference by Defendant Meister with the Investigation Request and Plaintiff's First Amendment right to petition described in this claim.

376.    Defendants committed acts or omissions that deprived or intended to deprive Plaintiff of rights or privileges guaranteed by the Constitution and laws of the United States.

377.    Plaintiff suffered injury(s) and damage(s) as a direct and proximate result of the unlawful acts or omissions of Defendants described in this claim.

378.    Defendants failed to mitigate Plaintiff's injury(s) and damage(s) and thereby aggravated them.

379.    Defendants committed the unlawful acts or omissions described in this claim under color of law and pursuant to Sauk County policy, custom or practice.

380.   Defendants are liable to Plaintiff for compensatory damages in amounts to be
determined by the trier of fact but exceeds the jurisdictional requirements of this Court as
can nearly be determined at this time.

381.   Defendants committed the unlawful acts or omissions described in this claim with a
callous or reckless indifference to Plaintiff's rights.

382.   Defendants are liable to Plaintiff for punitive damages in amounts to be determined by
the trier of fact.

### FOURTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### U. S. CONSTITUTION FIRST AMENDMENT FREE SPEECH CLAUSE VIOLATION
### Right to Petition Retaliation or Attempted Retaliation

(Against Defendants Bolin, Braunschweig, Bychinski, Chrisler, Curry, Curtis, Czuprynko, Detter,
Deitrich, Desmond, Dorner, Eberl, Evert, Flint, Gibson, Gruber, Hazard, Kinsman, Klitzke,
Krueger, Lohr, McAuliffe, McCumber, Meister, Nelson, O'Rourke, Peper, Phillips, Polivka,
Posewitz, Rego, Rehfeldt, Reppen, Riek, Scanlon, Schell, C. Spencer, T. Spencer, Stadler,
Stehling, Stevens, White Eagle, Whitsell, Witecha and Sauk County)

383.   Each paragraph of this Complaint is incorporated as if restated fully herein.

384.   Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1983.

385.   Defendants subjected Plaintiff or caused Plaintiff to be subjected to the deprivation of
rights, privileges, or immunities secured by the Constitution and laws of the United States.

386.   At all relevant times, Defendant Sauk County did not commission or otherwise acquire
from Plaintiff through his employment and Plaintiff did not have any Sauk County
employment duty or responsibility to petition the government as described in this claim.

387.   Between December 10, 2019, and January 21, 2020, and at all other times, Plaintiff did
not have any duty as a Sauk County employee to petition Sauk County or any other
governmental entity or official as described in this claim.

388.   Between December 10, 2019, and January 21, 2020, Plaintiff petitioned Sauk County
four (4) separate times to take action concerning public corruption in Sauk County
government:

    a.   The December 10, 2019, written and verbal requests to the E&L Committee for
action during a public meeting;

    b. The January 7, 2020, verbal request to the E&L Committee for action during a public meeting;

    c. The January 15, 2020, written request to Stadler to cease and desist the unlawful prosecution of the unlawful Lighthouse Complaints, and;

    d. The January 21, 2020, Investigation Request to the Sauk County District Attorney and the Wisconsin Attorney General.

389. On January 28, 2020, fifteen (15) members of the County Board met and voted to suspend Plaintiff's employment with Sauk County and, despite objections by Plaintiff, Sauk County enforced the suspension against him, which prohibited Plaintiff from acting as a Sauk County employee during the suspension and, consequently, Plaintiff could not petition or take any action in his Sauk County employee capacity during his suspension from January 28, 2020, through May 8, 2020.

390. Between January 29, 2020, and May 8, 2020, Plaintiff petitioned Sauk County five (5) additional times to take action concerning public corruption in Sauk County government:

    a. The January 30, 2020, letter to the County Board and Defendant Bolin to cease and desist enforcement of the unlawful suspension;

    b. The January 31, 2020, email to Defendant Stadler arranging in-person Lighthouse "Investigation" interview while expressing desire to seek an end to Stadler's "incompetent services" as soon as possible in order "to prevent injury to Sauk County and its agents."

    c. The February 3, 2020, interview with Defendant Stadler that included requests for him to stop the sham Lighthouse "Investigation" he was "conducting";

    d. The February 18, 2020, letter to Chair Vedro responding to character smears and asking County Board to resolve fiasco created by illegal conduct of Defendants Bolin, Czuprynko, Evert, Gruber, Krueger, and McCumber;

    e. The February 12, 2020, Petition for Writ of Mandamus to the Sauk County Circuit Court that highlighted substantial public official misconduct and requested immediate relief from unlawful suspension;

      f.   March 20, 2020, email response to Defendant Rehfeldt that included statements about public official misconduct and a request for appropriate relief for damages; and

      g.   The May 5, 2020, notice of injuries/claims to the County Board and Defendant Rehfeldt that includes significant information about Sauk County public official misconduct.

391.    On May 5, 2020, the County Board voted to terminate Plaintiff's employment relationship with Sauk County effective May 8, 2020, and at all times thereafter Plaintiff could not and did not petition or take any action as a Sauk County employee after May 8, 2020.

392.    Between May 8, 2020, and now, Plaintiff petitioned Sauk County government five (5) more times concerning public corruption in Sauk County government:

      a.   The August 10, 2020, letter to Defendant Meister concerning the Investigation Request;

      b.   The September 4, 2020, second notice of injuries/claims to the County Board and Defendants Evert and Phillips that includes significant information about Sauk County public official misconduct;

      c.   The November 16, 2020, letter to Defendants Curtis, Evert and Phillips regarding failure to report the September 4, 2020, notice of injuries/claims to the County Board;

      d.   The August 6, 2021, letter to Defendant Meister concerning the Investigation Request; and

      e.   The August 18, 2021, letter to Sauk County District Attorney Michael Albrecht and Defendant Desmond concerning Defendant Meister's failure to respond to Plaintiff's inquiries and the Investigation Request;

393.    Defendants responded to the Plaintiff petition activity and the content thereof with a vengeance and a myriad of adverse acts or omissions including, but not limited to the following:

obstructing his statutory duties as a public official; interfering with his attorney-client relationship; assaulting his professional reputation repeatedly with false and unlawful allegations; concealing adverse interests in the BNR Lawsuit; releasing confidential information about Plaintiff unlawfully; violating Plaintiff's privacy; filing frivolous or otherwise unlawful public records requests; conducting an unethical "investigation" of Plaintiff's ethics; facilitating, supporting or prosecuting unlawful anonymous complaints against Plaintiff; preparing, circulating or supporting the unlawful McCumber Petition; requesting Plaintiff's resignation without any cause; committing blatant professional ethics violations to attack Plaintiff; preparing, circulating or supporting the unlawful Czuprynko Petition; facilitating or supporting an unlawful suspension meeting; participating in the unlawful suspension meeting; voting unlawfully to suspend Plaintiff's employment; enforcing an unlawful suspension vote against Plaintiff; posting armed deputies outside in a public hallway adjacent to the office door to "prevent" access by Plaintiff; making malicious and defamatory personal "safety" allegations about Plaintiff to a newspaper; obstructing presentation by Plaintiff of information to the County Board; making vile and grossly unethical allegations against Plaintiff to the County Board; threatening Plaintiff with an 'investigative review" when Plaintiff declined a ridiculous and offensive settlement proposal; facilitating or supporting an unlawful termination meeting; participating in the unlawful termination meeting; voting unlawfully to terminate Plaintiff's employment; enforcing an unlawful termination vote against Plaintiff; obstructing prosecution of a criminal investigation request made by against Plaintiff, and; a number of other adverse acts or omissions.

394.   The Plaintiff petition activity as well as the content thereof was a substantial or motivating factor for the intentional and adverse acts or omissions committed by Defendants against Plaintiff.

395.   The Defendants committed adverse acts or omissions against Plaintiff because he engaged in protected First Amendment activity and such acts or omissions would likely

dissuade or otherwise have a chilling effect on a reasonable person from engaging in protected First Amendment activity and were materially adverse.

396. The Defendants retaliated or attempted to retaliate against Plaintiff for exercising his First Amendment right to petition the government as a public official, attorney or other constitutionally protected citizen status.

397. Defendants committed acts or omissions that deprived or intended to deprive Plaintiff of rights or privileges guaranteed by the Constitution and laws of the United States.

398. Plaintiff suffered injury(s) and damage(s) as a direct and proximate result of the unlawful acts or omissions of Defendants described in this claim.

399. Defendants failed to mitigate Plaintiff's injury(s) and damage(s) and thereby aggravated them.

400. Defendants committed the unlawful acts or omissions described in this claim under color of law and pursuant to Sauk County policy, custom or practice.

401. Defendants are liable to Plaintiff for compensatory damages in amounts to be determined by the trier of fact but exceeds the jurisdictional requirements of this Court as can nearly be determined at this time.

402. Defendants committed the unlawful acts or omissions described in this claim with a callous or reckless indifference to Plaintiff's rights.

403. Defendants are liable to Plaintiff for punitive damages in amounts to be determined by the trier of fact.

### FIFTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### U. S. CONSTITUTION FIRST AMENDMENT FREE SPEECH CLAUSE VIOLATION
### Speech Retaliation or Attempted Retaliation

(Against Defendants Bolin, Braunschweig, Bychinski, Chrisler, Curry, Curtis, Czuprynko, Detter, Deitrich, Desmond, Dorner, Eberl, Evert, Flint, Gibson, Gruber, Hazard, Kinsman, Klitzke, Krueger, Lohr, McAuliffe, McCumber, Meister, Nelson, O'Rourke, Peper, Phillips, Polivka, Posewitz, Rego, Rehfeldt, Reppen, Riek, Scanlon, Schell, C. Spencer, T. Spencer, Stadler, Stehling, Stevens, White Eagle, Whitsell, Witecha and Sauk County)

404. Each paragraph of this Complaint is incorporated as if restated fully herein.

405. Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1983.

406.    Defendants subjected Plaintiff or caused Plaintiff to be subjected to the deprivation of
rights, privileges, or immunities secured by the Constitution and laws of the United States.

407.    At all relevant times, Defendant Sauk County did not commission or otherwise acquire
from Plaintiff through his employment and Plaintiff did not have any Sauk County
employment duty or responsibility to petition the government as described in this claim.

408.    Between December 10, 2019, and January 21, 2020, and at all other times, Plaintiff did
not have any duty as a Sauk County employee to petition Sauk County or any other
governmental entity or official as described in this claim.

409.    Between December 10, 2019, and January 21, 2020, Plaintiff petitioned Sauk County five
(5) separate times to take action concerning public corruption in Sauk County government:

   a. The December 10, 2019, written and verbal requests to the E&L Committee for
      action during a public meeting;

   b. The January 7, 2020, verbal request to the E&L Committee for action during a
      public meeting;

   c. The January 15, 2020, written request to Stadler to cease and desist the unlawful
      prosecution of the unlawful Lighthouse Complaints;

   d. The January 18, 2020, response to the grossly unethical and unlawful County
      Board email by Witecha;

   e. The January 21, 2020, Investigation Request to the Sauk County District Attorney
      and the Wisconsin Attorney General.

410.    On January 28, 2020, fifteen (15) members of the County Board met and voted to
suspend Plaintiff's employment with Sauk County and, despite objections by Plaintiff, Sauk
County enforced the suspension against him, which prohibited Plaintiff from acting as a
Sauk County employee during the suspension and, consequently, Plaintiff could not petition
or take any action in his Sauk County employee capacity during his suspension from January
28, 2020, through May 8, 2020.

411.    Between January 29, 2020, and May 8, 2020, Plaintiff petitioned Sauk County three (3)
additional times to take action concerning public corruption in Sauk County government:

    a. The January 30, 2020, letter to the County Board and Defendant Bolin to cease and desist enforcement of the unlawful suspension;

    b. The February 1, 2020, response to Deitrich defamation

    c. February 7, 2020, discussion with County Board

    d. February 12, 2020, Circuit Court petition for mandamus relief

    e. The February 18, 2020, response to Witecha defamation

    f. March 18, 2020, response to Rehfeldt

    g. The May 5, 2020, notice of injuries/claims to Sauk County

412. On May 5, 2020, the County Board voted to terminate Plaintiff's employment relationship with Sauk County effective May 8, 2020, and at all times thereafter Plaintiff could not and did not petition or take any action as a Sauk County employee after May 8, 2020.

413. Between May 8, 2020, and now, Plaintiff petitioned Sauk County government four (4) more times concerning public corruption in Sauk County government:

    a. The August 10, 2020, letter to Defendant Meister concerning the Investigation Request;

    b. The September 5, 2020, notice of injuries/claims to the County Board and Defendant Evert;

    c. The August 6, 2021, letter to Defendant Meister concerning the Investigation Request;

    d. The August 18, 2021, letter to Sauk County District Attorney Michael Albrecht and Defendant Desmond concerning Defendant Meister's failure to respond to Plaintiff's inquiries and the Investigation Request;

414. Defendants responded to the Plaintiff petition activity and the content thereof with a myriad of adverse acts or omissions including, but not limited to the following:

    a. obstructing his statutory duties as a public official; interfering with his attorney-client relationship; assaulting his professional reputation repeatedly with false and unlawful allegations; concealing adverse interests in the BNR Lawsuit; releasing confidential information about Plaintiff unlawfully; violating Plaintiff's

privacy; filing frivolous or otherwise unlawful public records requests; conducting an unethical "investigation" of Plaintiff's ethics; facilitating, supporting or prosecuting unlawful anonymous complaints against Plaintiff; preparing, circulating or supporting the unlawful McCumber Petition; requesting Plaintiff's resignation without any cause; submitting or supporting a frivolous and retaliatory "urgent" meeting letter; making stigmatizing, defamatory, grossly unethical and unlawful public allegations about Plaintiff; preparing, circulating or supporting the unlawful Czuprynko Petition; making unlawful modifications to a special meeting request; facilitating or supporting an unlawful special meeting; participating in the unlawful special meeting; voting unlawfully to suspend Plaintiff's employment during an unlawful special meeting; enforcing an unlawful suspension vote against Plaintiff; posting armed deputies outside in a public hallway adjacent to the office door to "prevent" access by Plaintiff; making malicious and defamatory personal "safety" allegations about Plaintiff to a newspaper; attempting to unlawfully hinder appointment of special counsel to oversee criminal investigation request; obstructing presentation by Plaintiff of criminal investigation request information to the County Board; making vile and grossly unethical allegations against Plaintiff to the County Board; threatening Plaintiff with an 'investigative review" when Plaintiff declined a ridiculous and offensive settlement proposal; facilitating or supporting an unlawful termination meeting; participating in the unlawful termination meeting; voting unlawfully to terminate Plaintiff's employment; enforcing an unlawful termination vote against Plaintiff; obstructing prosecution of a criminal investigation request made by against Plaintiff, or; other acts or omissions.

415. The Plaintiff petition activity as well as the content thereof was a substantial or motivating factor for the intentional and adverse acts or omissions committed by Defendants against Plaintiff.

416. The Defendants committed adverse acts or omissions against Plaintiff because he engaged in protected First Amendment activity and such acts or omissions would likely

dissuade or otherwise have a chilling effect on a reasonable person from engaging in protected First Amendment activity and were materially adverse.

417.   The Defendants retaliated or attempted to retaliate against Plaintiff for exercising his First Amendment right to petition the government as a public official, attorney or other constitutionally protected citizen status.

418.   Defendants committed acts or omissions that deprived or intended to deprive Plaintiff of rights or privileges guaranteed by the Constitution and laws of the United States.

419.   Plaintiff suffered injury(s) and damage(s) as a direct and proximate result of the unlawful acts or omissions of Defendants described in this claim.

420.   Defendants failed to mitigate Plaintiff's injury(s) and damage(s) and thereby aggravated them.

421.   Defendants committed the unlawful acts or omissions described in this claim under color of law and pursuant to Sauk County policy, custom or practice.

422.   Defendants are liable to Plaintiff for compensatory damages in amounts to be determined by the trier of fact but exceeds the jurisdictional requirements of this Court as can nearly be determined at this time.

423.   Defendants committed the unlawful acts or omissions described in this claim with a callous or reckless indifference to Plaintiff's rights.

424.   Defendants are liable to Plaintiff for punitive damages in amounts to be determined by the trier of fact.

### SIXTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### U. S. CONSTITUTION FIRST AMENDMENT FREE SPEECH CLAUSE VIOLATION
### Speech Creation Retaliation or Attempted Retaliation
(Against Defendants Bisek, Boehlke, Bolin, Braunschweig, Bychinski, Chrisler, Curry, Curtis, Czuprynko, Detter, Deitrich, Desmond, Dorner, Eberl, Evert, Flint, Gibson, Gruber, Hazard, Kinsman, Klitzke, Krueger, Lohr, McAuliffe, McCumber, Meister, Nelson, O'Rourke, Peper, Phillips, Polivka, Posewitz, Rego, Rehfeldt, Reppen, Riek, Scanlon, Schell, C. Spencer, T. Spencer, Stadler, Stehling, Stevens, White Eagle, Whitsell, Witecha and Sauk County)

425.   Each paragraph of this Complaint is incorporated as if restated fully herein.

426.   Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1983.

427.   Defendants subjected Plaintiff or caused Plaintiff to be subjected to the deprivation of
rights, privileges, or immunities secured by the Constitution and laws of the United States.

428.   At all relevant times, Defendant Sauk County did not commission or otherwise acquire
from Plaintiff through his employment and Plaintiff did not have any Sauk County
employment duty or responsibility to gather information concerning public corruption in
Sauk County government.

429.   At all relevant times, Plaintiff did not have any duty as a Sauk County employee to
gather information concerning public corruption in Sauk County government in order to
report on it.

430.   Between July 10, 2018, and now, Plaintiff witnessed a number of events or activities in
Sauk County government that implicated non-employment duties or responsibilities to
gather information concerning government misconduct in order to communicate it later in
accordance with his public office and professional duties that included three (3) substantial
events:

   a.   BNR Lawsuit Decision. On December 18, 2018, the Sauk County Circuit Court
   ruled in favor of BNR and against Sauk County in the BNR Lawsuit, which alerted
   Plaintiff to immediate concerns about the legal arguments pressed by
   Defendants Bolin, O'Rourke and Posewitz in the matter, release of records they
   had been trying to suppress and then discovery by Plaintiff of a disturbing public
   official misconduct cover-up by them and others in connection with the C.M.
   Death, Fry Termination, Bolin Hiring, BNR Records and BNR Lawsuit that
   ultimately led to preparation of discussion items and written materials by
   Plaintiff including the January 21, 2020, Investigation Request to the Sauk County
   District Attorney and Wisconsin Attorney General.

   b.   BNR Memos Leak. On January 23, 2019, after he received an after-the-fact
   request from Defendant McCumber that alerted Plaintiff to a possible
   unauthorized release of two confidential legal documents, the BNR Memos,
   Plaintiff, in furtherance of his professional duties as a lawyer and his fiduciary
   duties as a statutory officer, made several inquiries and learned that Defendant

91

Bisek had unlawfully released two (2) confidential legal documents to Defendants Gruber and McCumber without seeking or obtaining any release authorization from Plaintiff as chief legal officer for Sauk County, information Plaintiff was obligated by his official and professional duties to report to the E&L Committee at a later date.

c. Investigation Request. On December 10, 2019, Plaintiff, in furtherance of his professional duties as a lawyer and his fiduciary duties as a statutory officer, met with the E&L Committee to provide information concerning serious public official misconduct in Sauk County government that Plaintiff recently uncovered and to ask the Committee members to step forward and fulfill their fiduciary duties to Sauk County and support next steps, whereupon the Committee members agreed to provide support and asked for a subsequent meeting to hear more detailed information and suggestions from Plaintiff, which led to a January 7, 2020, meeting presentation by Plaintiff to Committee members and other County Board members and ultimately to the January 21, 2020, Investigation Request filing by Plaintiff with obvious and considerable speech creation along the way.

431.   Defendants responded to the foregoing speech creation activities by Plaintiff with a vengeance and a myriad of adverse acts or omissions including, but not limited to the following:

a. obstructing his statutory duties as a public official; interfering with his attorney-client relationship; assaulting his professional reputation repeatedly with false and unlawful allegations; threatening adverse employment action against Plaintiff for looking into an unlawful release of the BNR Memos, conducting or participating in a retaliatory and unlawful personnel "investigation" of Plaintiff for looking into the BNR Memos Leak; filing frivolous and defamatory employment grievances against Plaintiff; releasing confidential information about Plaintiff unlawfully; violating Plaintiff's privacy; filing frivolous or otherwise unlawful public records requests; conducting an unethical "investigation" of

Plaintiff's ethics; attempting to usurp essential duties and responsibilities statutorily delegated to Plaintiff; filing, supporting or prosecuting two unlawful anonymous Lighthouse complaints against Plaintiff; preparing, circulating or supporting the unlawful McCumber Petition; requesting Plaintiff's resignation without any cause; submitting or supporting a frivolous and retaliatory "urgent" meeting letter; making stigmatizing, defamatory, grossly unethical and unlawful public allegations about Plaintiff; preparing, circulating or supporting the unlawful Czuprynko Petition; making unlawful modifications to a special meeting request; facilitating or supporting an unlawful special meeting; participating in the unlawful special meeting; voting unlawfully to suspend Plaintiff's employment during an unlawful special meeting; enforcing an unlawful suspension vote against Plaintiff; posting armed deputies outside in a public hallway adjacent to the office door to "prevent" access by Plaintiff; making malicious and defamatory personal "safety" allegations about Plaintiff to a newspaper; attempting to unlawfully hinder appointment of special counsel to oversee a filed criminal investigation request; obstructing presentation by Plaintiff of criminal investigation request information to the County Board; making vile and grossly unethical allegations against Plaintiff to the County Board; threatening Plaintiff with an "investigative interview" when Plaintiff declined a ridiculous and offensive settlement proposal; facilitating or supporting an unlawful termination meeting; participating in the unlawful termination meeting; voting unlawfully to terminate Plaintiff's employment; enforcing an unlawful termination vote against Plaintiff; obstructing prosecution of a criminal investigation request made by against Plaintiff, and; a number of other adverse acts or omissions.

432.   The Plaintiff speech creation activity described in this claim as well as the content thereof was a substantial or motivating factor for the intentional and adverse acts or omissions committed by Defendants against Plaintiff.

433.   The Defendants committed adverse acts or omissions against Plaintiff because he engaged in protected First Amendment activity and such acts or omissions would likely dissuade or otherwise have a chilling effect on a reasonable person from engaging in protected First Amendment activity and were materially adverse.

434.   The Defendants retaliated or attempted to retaliate against Plaintiff for exercising his First Amendment right to gather information as a public official, attorney or other constitutionally protected citizen status.

435.   Defendants committed acts or omissions that deprived or intended to deprive Plaintiff of rights or privileges guaranteed by the Constitution and laws of the United States.

436.   Plaintiff suffered injury(s) and damage(s) as a direct and proximate result of the unlawful acts or omissions of Defendants described in this claim.

437.   Defendants failed to mitigate Plaintiff's injury(s) and damage(s) and thereby aggravated them.

438.   Defendants committed the unlawful acts or omissions described in this claim under color of law and pursuant to Sauk County policy, custom or practice.

439.   Defendants are liable to Plaintiff for compensatory damages in amounts to be determined by the trier of fact but exceeds the jurisdictional requirements of this Court as can nearly be determined at this time.

440.   Defendants committed the unlawful acts or omissions described in this claim with a callous or reckless indifference to Plaintiff's rights.

441.   Defendants are liable to Plaintiff for punitive damages in amounts to be determined by the trier of fact.

**SEVENTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**U. S. CONSTITUTION PROCEDURAL DUE PROCESS VIOLATIONS**
**UNLAWFUL DEPRIVATION OF PROPERTY INTERESTS**
**(Employment Position) (Litigation Claims)(Contract Benefits)**

(Against Defendants Boehlke, Bolin, Braunschweig, Bychinski, Chrisler, Crammond, Curry, Czuprynko, Detter, Deitrich, Dorner, Eberl, Evert, Flint, Gibson, Gruber, Hazard, Kinsman, Klitzke, Krueger, Lohr, McAuliffe, McCumber, Meister, Nelson, O'Rourke, Peper, Polivka, Posewitz, Rego, Rehfeldt, Reppen, Riek, Scanlon, Schell, C. Spencer, T. Spencer, Stehling, Stevens, White Eagle, Whitsell, Witecha, and Sauk County)

442. Each paragraph of this Complaint is incorporated as if restated fully herein.

443. Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1983.

444. Defendants subjected Plaintiff or caused Plaintiff to be subjected to the deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States.

445. At all relevant times, Plaintiff had constitutionally protected property interests that Defendant Sauk County could not deprive Plaintiff of without procedures that satisfied the Fourteenth Amendment to the United States Constitution that included his employment, litigation claims and employment contract benefits.

    a. The prosecution of the malicious and retaliatory Gruber-McCumber personnel investigation of Plaintiff;

    b. The prosecution of two (2) malicious and retaliatory Lighthouse Complaint investigations against Plaintiff;

    c. The preparation, circulation or other prosecution of the frivolous and defamatory public records complaints filed by Defendants Gruber and McCumber;

    d. The preparation, circulation or other prosecution of the malicious, frivolous and unlawful resignation request from Defendant Witecha to Plaintiff;

    e. The preparation, circulation or other prosecution of the malicious, retaliatory and criminal McCumber Petition against Plaintiff;

    f. The preparation, circulation or other prosecution of the malicious and retaliatory "urgent meeting" letter from Defendant Stadler;

    g. The secret administration, circulation or other prosecution of the malicious, retaliatory and frivolous Witecha Grievance against Plaintiff;

    h. The preparation, circulation or other prosecution of the defamatory and grossly unethical January 18, 2020, Witecha Email smearing Plaintiff;

i. The preparation, circulation or other prosecution of the malicious, retaliatory and criminal Czuprynko Petition against Plaintiff;

j. The preparation, circulation or other prosecution of the criminal Evert Meeting Notice for the unlawful January 28, 2020, suspension meeting;

k. The administration, facilitation or other prosecution of the unlawful January 28, 2020, suspension meeting;

l. The administration, facilitation or other support for the criminal participation of Bolin, Czuprynko, Evert, Gruber, Krueger and McCumber during the unlawful January 28, 2020, suspension meeting;

m. The administration, facilitation or other unlawful enforcement of the unlawful January 28, 2020, suspension meeting vote against Plaintiff;

n. The administration, facilitation or other support for the criminal participation of Bolin, Czuprynko, Evert, Gruber, Krueger and McCumber during the February 7, 2020, special County Board meeting;

o. The administration, facilitation or other support for the criminal participation of Czuprynko, Evert, Gruber, Krueger and McCumber during the March 17, 2020, County Board meeting;

p. The administration, facilitation or other unlawful enforcement of an unlawful March 17, 2020, County Board "decision" to end Plaintiff's employment with Sauk County;

q. The administration, facilitation or other prosecution of the unlawful May 5, 2020, County Board termination meeting;

r. The administration, facilitation or other support for the criminal participation of Evert, Gruber, Krueger and McCumber during the unlawful May 5, 2020, County Board termination meeting;

s. The administration, facilitation or other support for the malicious, retaliatory, defamatory or otherwise unlawful character assaults against Plaintiff from Bolin, Cross, Czuprynko, Deitrich, Evert, Good, Gruber, Letendre, McCumber, Meister,

O'Rourke, Phillips, Stadler, Witecha, or the Unknown Lighthouse Complainant pursuant to Sauk County resources; and

t. Other acts or omissions that threatened or accomplished deprivation of Plaintiff's constitutionally protected liberty interests.

446. Defendants did not provide any constitutionally sufficient procedural protections in connection any of the events or actions described in this claim except the constitutionally incomplete and thereby deficient notice and a copy of the Lighthouse Complaints.

447. Plaintiff suffered injury(s) and damage(s) to his constitutionally protected property interests as a direct and proximate result of the events or actions described in this claim.

448. Defendants unlawfully deprived Plaintiff of constitutionally protected property interests without due process contrary to the Fourteenth Amendment to the United States Constitution.

449. Defendants committed acts or omissions that deprived or intended to deprive Plaintiff of rights or privileges guaranteed by the Constitution and laws of the United States.

450. Plaintiff suffered injury(s) and damage(s) as a direct and proximate result of the unlawful acts or omissions of Defendants described in this claim.

451. Defendants failed to mitigate Plaintiff's injury(s) and damage(s) and thereby aggravated them.

452. Defendants committed the unlawful acts or omissions described in this claim under color of law and pursuant to Sauk County policy, custom or practice.

453. Defendants are liable to Plaintiff for compensatory damages in amounts to be determined by the trier of fact but exceeds the jurisdictional requirements of this Court as can nearly be determined at this time.

454. Defendants committed the unlawful acts or omissions described in this claim with a callous or reckless indifference to Plaintiff's rights.

455. Defendants are liable to Plaintiff for punitive damages in amounts to be determined by the trier of fact.

**EIGHTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**U. S. CONSTITUTION PROCEDURAL DUE PROCESS VIOLATION**

**UNLAWFUL DEPRIVATION OF LIBERTY INTERESTS**
**(Right to Contract)(Reputation)(Right to Occupation)**
(Against Defendants Bisek, Bolin, Braunschweig, Bychinski, Chrisler, Curry, Curtis,
Czuprynko, Detter, Deitrich, Desmond, Dorner, Eberl, Evert, Flint, Gibson, Gruber, Hazard,
Kinsman, Klitzke, Krueger, Lohr, McAuliffe, McCumber, Meister, Nelson, O'Rourke, Peper,
Phillips, Polivka, Posewitz, Rego, Rehfeldt, Reppen, Riek, Scanlon, Schell, C. Spencer, T.
Spencer, Stadler, Stehling, Stevens, White Eagle, Whitsell, Witecha and Sauk County)

456.  Each paragraph of this Complaint is incorporated as if restated fully herein.

457.  Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1983.

458.  Defendants subjected Plaintiff or caused Plaintiff to be subjected to the deprivation of
rights, privileges, or immunities secured by the Constitution and laws of the United States.

459.  At all relevant times, Plaintiff had constitutionally protected liberty interests that
Defendant Sauk County could not deprive Plaintiff of without procedures that satisfied the
Fourteenth Amendment to the United States Constitution that included his right to
contract, reputation and right to pursue an occupation.

460.  Defendants intentionally committed acts or omissions against Plaintiff that threatened,
implicated, altered or otherwise affected Plaintiff's constitutionally protected liberty
interests by adverse actions that included, but were not limited to:

   a.  The prosecution of the malicious and retaliatory Gruber-McCumber personnel
   investigation of Plaintiff;

   b.  The prosecution of two (2) malicious and retaliatory Lighthouse Complaint
   investigations against Plaintiff;

   c.  The preparation, circulation or other prosecution of the public records
   complaints filed by Defendants Gruber and McCumber;

   d.  The preparation, circulation or other prosecution of the resignation request from
   Defendant Witecha to Plaintiff;

   e.  The preparation, circulation or other prosecution of the McCumber Petition
   against Plaintiff;

   f.  The preparation, circulation or other prosecution of the "urgent meeting" letter
   from Defendant Stadler;

g. The preparation, circulation or other prosecution of the January 18, 2020, Witecha Email smearing Plaintiff;

h. The preparation, circulation or other prosecution of the Czuprynko Petition against Plaintiff;

i. The preparation, circulation or other prosecution of the criminal Evert Meeting Notice for the unlawful January 28, 2020, suspension meeting;

j. The administration, facilitation or other prosecution of the January 28, 2020, suspension meeting;

k. The administration, facilitation or other enforcement of the January 28, 2020, suspension meeting vote against Plaintiff;

l. The administration, facilitation or other enforcement of a March 17, 2020, County Board "decision" to end Plaintiff's employment with Sauk County;

m. The administration, facilitation or other prosecution of the May 5, 2020, County Board termination meeting; or

n. The administration, facilitation or other enforcement of the May 5, 2020, termination meeting vote against Plaintiff.

461. Plaintiff suffered reputation injury in connection with a deprivation of a tangible or otherwise sufficient non-reputation property or liberty interest in multiple circumstances, including the Lighthouse Complaints investigation that involved false character allegations about Plaintiff; the McCumber Petition process that included defamatory allegations against Plaintiff; the January 28, 2020, suspension action that closely followed or immediately preceded defamations by Defendants Dietrich, Evert, McCumber, Meister, Witecha and others; and the termination action that immediately followed completion of the Lighthouse Complaints investigation.

462. Defendants did not provide Plaintiff with any opportunity to clear his good name and reputation in connection with any of reputation injury(s) he suffered in connection with a deprivation of a tangible or otherwise sufficient non-reputation property or liberty interest including but not limited to his Sauk County employment.

463.   Defendants did not provide constitutionally sufficient procedural protections to safeguard Plaintiff's constitutionally protected right to contract, right to occupation or reputation liberty interests in connection any of the events or actions described in this claim.

464.   Plaintiff suffered injury(s) and damage(s) to his constitutionally protected liberty interests as a direct and proximate result of the events or actions described in this claim.

465.   Defendants unlawfully deprived Plaintiff of constitutionally protected liberty interests without due process contrary to the Fourteenth Amendment to the United States Constitution.

466.   Defendants committed acts or omissions that deprived or intended to deprive Plaintiff of rights or privileges guaranteed by the Constitution and laws of the United States.

467.   Plaintiff suffered injury(s) and damage(s) as a direct and proximate result of the unlawful acts or omissions of Defendants described in this claim.

468.   Defendants failed to mitigate Plaintiff's injury(s) and damage(s) and thereby aggravated them.

469.   Defendants committed the unlawful acts or omissions described in this claim under color of law and pursuant to Sauk County policy, custom or practice.

470.   Defendants are liable to Plaintiff for compensatory damages in amounts to be determined by the trier of fact but exceeds the jurisdictional requirements of this Court as can nearly be determined at this time.

471.   Defendants committed the unlawful acts or omissions described in this claim with a callous or reckless indifference to Plaintiff's rights.

472.   Defendants are liable to Plaintiff for punitive damages in amounts to be determined by the trier of fact.

**NINTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**MONELL CLAIM**
(Against Sauk County)

473.   Each paragraph of this Complaint is incorporated as if restated fully herein.

474.    The unconstitutional acts or omissions that injured Plaintiff and contravened his
constitutional rights and 42 U.S.C. § 1983 were committed pursuant to (1) enforcement of
an express Sauk County policy; (2) repeated and entrenched acceptance, including
deliberate indifference to the harmful consequences, of employee intimidation and other
related public official misconduct; or (3) by a person with final policymaking authority in
Sauk County government.

475.    Defendant Sauk County maintained and enforced an official policy, practice or custom
against Plaintiff that was the moving force behind and caused the unconstitutional act(s) or
omission(s) that injured Plaintiff and contravened his constitutional rights and 42 U.S.C. §
1983.

476.    Defendant Sauk County is liable under 42 U.S.C. § 1983 to Plaintiff for damages related
to Plaintiff's constitutional injury(s) in amounts to be determined by the trier of fact.

**TENTH CLAIM FOR RELIEF**
**STATE LAW CLAIM**
**CONSPIRACY TO VIOLATE WISCONSIN CIVIL RIGHTS/OBSTRUCT DISCHARGE OF OFFICIAL DUTY**
**(COMMON LAW AND WISCONSIN CONSTITUTION ARTICLE I SECTION 9)**
**(UNLAWFUL PURPOSE)**
(Against Defendants Bisek, Boehlke, Bolin, Braunschweig, Bychinski, Chrisler, Crammond, Cross,
Curry, Curtis, Czuprynko, Desmond, Detter, Deitrich, Dorner, Eberl, Evert, Flint, Gibson, Good,
Gruber, Hazard, Kinsman, Klitzke, Krueger, Letendre, Lohr, McAuliffe, McCumber, Meister,
Nelson, O'Rourke, Peper, Phillips, Polivka, Posewitz, Rego, Rehfeldt, Reppen, Riek, Scanlon,
Schell, C. Spencer, T. Spencer, Stadler, Stehling, Stevens, White Eagle, Whitsell, Witecha and
Unknown Lighthouse Complainant)

477.    Each paragraph of this Complaint is incorporated as if restated fully herein.

478.    Defendants conspired or otherwise agreed, explicitly or otherwise, to accomplish an
unlawful purpose and thereby deprived Plaintiff of rights or privileges guaranteed by the
laws and Constitution of Wisconsin and/or deprived Plaintiff of rights or privileges of a
public office guaranteed by laws of Wisconsin.

479.    Defendants conspired or otherwise agreed, explicitly or otherwise, to: interfere with
Plaintiff's individual, professional or official constitutional right to gather information;
prevent or otherwise obstruct discovery of evidence or information concerning their
unlawful conduct or the unlawful conduct of others; interfere with Plaintiff's individual,

professional or official constitutional right to petition government; prevent or otherwise obstruct disclosure of evidence or information concerning their unlawful conduct or the unlawful conduct of others; prevent or otherwise obstruct a request by Plaintiff to law enforcement authority(s) for investigation of evidence or information concerning their unlawful conduct or the unlawful conduct of others, or; interfere with Plaintiff's individual, professional or official constitutional right to speak.

480. Defendants committed act(s) or omission(s) in furtherance of one or more of the unlawful purposes stated, which deprived Plaintiff of rights or privileges guaranteed by the Constitution and laws of Wisconsin or otherwise injured and damaged Plaintiff and/or deprived Plaintiff of a duty, right or privilege of a Wisconsin public office and guaranteed by laws of Wisconsin or otherwise injured Plaintiff and such act(s) or omission(s) were a substantial contributing factor of his injury(s) and damage(s).

481. Article I Section 9 of the Wisconsin Constitution guarantees Plaintiff a path to a remedy for all of his injuries and damages inflicted by Defendants, including those stated in this section that are not otherwise subject to a legal remedy under Wisconsin law.

482. Defendants committed the acts or omissions in furtherance of the conspiracy(s) stated and thereby injured Plaintiff when Defendants did not have any valid justification or privilege.

483. Defendants committed the acts or omissions in furtherance of the conspiracy(s) stated and thereby injured Plaintiff when he was not performing service growing out of and incidental to his employment with Sauk County.

484. Defendants failed to mitigate Plaintiff's injuries and damages and thereby aggravated them.

485. Defendants are liable to Plaintiff for compensatory damages in amounts to be determined by the trier of fact but exceed the jurisdictional requirements of this Court as can nearly be determined at this time.

486. Defendants committed the acts or omissions in furtherance of the conspiracy(s) stated and thereby injured Plaintiff with a wanton, reckless, or grossly negligent disregard for his rights.

487.    Defendants are liable to Plaintiff for punitive damages in amounts to be determined by the trier of fact.

**ELEVENTH CLAIM FOR RELIEF**
**STATE LAW CLAIM**
**CONSPIRACY TO VIOLATE WISCONSIN CIVIL RIGHTS/OBSTRUCT DISCHARGE OF OFFICIAL DUTY**
**(COMMON LAW AND WISCONSIN CONSTITUTION ARTICLE I SECTION 9)**
**(UNLAWFUL MEANS)**
(Against Defendants Bisek, Boehlke, Bolin, Braunschweig, Bychinski, Chrisler, Crammond, Cross, Curry, Curtis, Czuprynko, Desmond, Detter, Deitrich, Dorner, Eberl, Evert, Flint, Gibson, Good, Gruber, Hazard, Kinsman, Klitzke, Krueger, Letendre, Lohr, McAuliffe, McCumber, Meister, Nelson, O'Rourke, Peper, Phillips, Polivka, Posewitz, Rego, Rehfeldt, Reppen, Riek, Scanlon, Schell, C. Spencer, T. Spencer, Stadler, Stehling, Stevens, White Eagle, Whitsell, Witecha and Unknown Lighthouse Complainant)

488.    Each paragraph of this Complaint is incorporated as if restated fully herein.

489.    Defendants conspired or otherwise agreed, explicitly or otherwise, to accomplish by unlawful means some purpose not in it itself unlawful and thereby deprived Plaintiff of rights or privileges guaranteed by the laws and Constitution of Wisconsin and/or deprived Plaintiff of rights or privileges of a public office guaranteed by laws of Wisconsin.

490.    Defendants conspired or otherwise agreed, explicitly or otherwise, to pursue an otherwise lawful purpose by unlawful means, including but limited to: unlawful investigations of Plaintiff; unlawful Lighthouse complaints against Plaintiff; defamatory or other unlawful statements unlawful agenda petition against Plaintiff; unlawful communications or other contact with Plaintiff's client; an unlawful suspension meeting; an unlawful termination meeting, or; other unlawful means.

491.    Defendants, in furtherance of an otherwise lawful purpose, committed unlawful act(s) or omission(s), which unlawfully deprived Plaintiff of rights or privileges guaranteed by the Constitution and laws of Wisconsin or otherwise injured Plaintiff and/or unlawfully deprived Plaintiff of a duty, right or privilege of a Wisconsin public office and guaranteed by laws of Wisconsin or otherwise injured Plaintiff and such act(s) or omission(s) were a substantial contributing factor of his injury(s) and damage(s).

492.   Article I Section 9 of the Wisconsin Constitution guarantees Plaintiff a path to a remedy for all of his injuries and damages inflicted by Defendants, including those stated in this section that are not otherwise subject to a legal remedy under Wisconsin law.

493.   Defendants committed the acts or omissions in furtherance of the conspiracy(s) stated and thereby injured Plaintiff when Defendants did not have any valid justification or privilege.

494.   Defendants committed the acts or omissions in furtherance of the conspiracy(s) stated and thereby injured Plaintiff when he was not performing service growing out of and incidental to his employment with Sauk County.

495.   Defendants failed to mitigate Plaintiff's injuries and damages and thereby aggravated them.

496.   Defendants are liable to Plaintiff for compensatory damages in amounts to be determined by the trier of fact but exceed the jurisdictional requirements of this Court as can nearly be determined at this time.

497.   Defendants committed the acts or omissions in furtherance of the conspiracy(s) stated and thereby injured Plaintiff with a wanton, reckless, or grossly negligent disregard for his rights.

498.   Defendants are liable to Plaintiff for punitive damages in amounts to be determined by the trier of fact.

**TWELVETH CLAIM FOR RELIEF**
**STATE LAW CLAIM**
**BREACH OF EMPLOYMENT CONTRACT BY GOVERNMENT EMPLOYER**
**GENERAL BREACH**
(Against Defendant Sauk County)

499.   Each paragraph of this Complaint is incorporated as if restated fully herein.

500.   Defendant Sauk County employed Plaintiff pursuant to the Employment Contract and all explicit or implicit terms and conditions established thereby.

501.   Defendant Sauk County, pursuant to all terms and conditions of the Employment Contract,  could not terminate, suspend, or otherwise alter its employment relationship with Plaintiff at any time for any reason, or without any reason at all.

502.   Defendant Sauk County, pursuant to all terms and conditions of the Employment Contract, could not terminate, suspend or otherwise alter its employment relationship with Plaintiff except in accordance with all applicable procedures.

503.   Defendant Sauk County, pursuant to all terms and conditions of the Employment Contract, could not violate any contractual duties it owed to Plaintiff.

504.   Defendant Sauk County violated terms or conditions of the Employment Contract on multiple occasions, which included but are not limited to:

     a.   Unlawful failure to prevent unlawful interference with Plaintiff's ability to execute or otherwise perform contract duties.

     b.   Job performance interference without cause.

     c.   Unlawful investigation of retaliatory or otherwise unlawful Lighthouse Complaints.

     d.   Investigation without cause.

     e.   Unlawful prosecution of a retaliatory or otherwise unlawful petition, meeting notice, meeting, discussion and vote to suspend the Employment Contract and Plaintiff's employment relationship with Sauk County on January 28, 2020.

     f.   Suspension without cause.

     g.   Unlawful enforcement of the retaliatory or otherwise unlawful suspension of the Employment Contract between January 28, 2020, and May 5, 2020.

     h.   Unlawful prosecution of a retaliatory or otherwise unlawful petition, meeting notice, meeting, discussion and vote to terminate the Employment Contract and Plaintiff's employment relationship with Sauk County on May 5, 2020.

     i.   Termination without cause.

     j.   Unlawful enforcement of the retaliatory or otherwise unlawful termination of the Employment Contract after May 5, 2020.

505.   Defendant Sauk County breached the Employment Contract with Plaintiff as described in this claim.

506.   Defendant Sauk County is liable to Plaintiff for all necessary remedies to make him "whole" or otherwise remediate his injuries including but not limited to reinstatement as the Sauk County Corporation Counsel with an effective date of May 9, 2020.

507.   Defendant Sauk County is liable to Plaintiff for back pay, front pay, uninsured dental expenses, uninsured healthcare expenses, dental insurance expenses, healthcare insurance expenses, law license expenses, retirement benefit reductions, social security benefit reductions, and all other appropriate damages in amounts to be determined by the trier of fact.

508.   Defendant Sauk County committed the acts or omissions that breached the Employment Contract with a wanton, reckless, or grossly negligent disregard for Plaintiff's contract rights and privileges.

509.   Defendant Sauk County is liable to Plaintiff for punitive damages in an amount to be determined by the trier of fact.

**THIRTEENTH CLAIM FOR RELIEF**
**STATE LAW CLAIM**
**BREACH OF EMPLOYMENT CONTRACT BY GOVERNMENT EMPLOYER**
**WRONGFUL PUBLIC POLICY DISCHARGE**
(Against Defendant Sauk County)

510.   Each paragraph of this Complaint is incorporated as if restated fully herein.

511.   Defendant Sauk County voted to hire Plaintiff as Corporation Counsel on June 19, 2018.

512.   On or about mid-November 2019, Plaintiff uncovered public corruption evidence and information described in this Complaint.

513.   Plaintiff had a duty to report the public corruption evidence and information described in this Complaint pursuant to Wisconsin law and his responsibilities as a public official and a lawyer.

514.   Plaintiff would violate Wis. Stat. § 946.12 and other law if he did not report the public corruption evidence and information described in this Complaint.

515.   Plaintiff reported the public corruption evidence and information described in this Complaint on December 10, 2019 (E&L Committee Meeting), January 7, 2020 (E&L Committee Meeting), January 21, 2020 (Investigation Request), January 31, 2020 (Cease &

Desist Letter), February 12, 2020 (Mandamus Petition), February 20, 2020 (County Board Letter) and May 5, 2020 (Notice of Claims).

516. Defendant Sauk County voted to terminate Plaintiff's employment on May 5, 2020, with an effective date of May 8, 2020.

517. Sauk County unlawfully terminated Plaintiff because he fulfilled his mandatory duty(s) to report the public corruption information.

518. Sauk County unlawfully terminated Plaintiff because he refused to violate Wis. Stat. § 946.12 or other law that prohibited non-disclosure of public corruption information.

519. Sauk County unlawfully terminated Mr. Olson's employment to punish or otherwise retaliate against Plaintiff for reporting public corruption information and such retaliatory action by Sauk County is prohibited and unlawful under Wis. Stat. §§ 940.43 and 940.42 (prohibiting intimidation of witnesses) and unlawful under Wis. Stat. § 134.01 (prohibiting malicious interference with lawful conduct) or other law.

520. Defendant Sauk County did not have a valid reason for terminating Plaintiff on May 5, 2020 is evidenced by:

   a. The termination occurred in conjunction with a special meeting of the County Board rather than a regular meeting;

   b. Sauk County did not provide Plaintiff with any notice of the termination meeting;

   c. Sauk County did not provide Plaintiff with an opportunity to rebut evidence or information it considered at the termination meeting;

   d. Sauk County allowed disqualified County Board members to participate in the termination discussion contrary to Wisconsin law and County Board rules;

   e. Sauk County allowed disqualified County Board members to participate in the termination vote contrary to Wisconsin law and County Board rules;

   f. The termination decision occurred in connection with a request filed by Plaintiff for a criminal investigation of public corruption allegations concerning some members of the County Board;

   g. The termination decision followed and is part of an organized campaign that included more than one-hundred-fifty (150) unlawful retaliatory acts or

omissions against Plaintiff between December 10, 2019, and May 5, 2020, by Sauk County officials, employees and agents;

h. The termination notice included a severance payment offer from Sauk County to Plaintiff on May 7, 2020, pursuant to his contract that was only required if they did *not* terminate Plaintiff for cause;

i. The termination notice from Sauk County did not include any reason for the termination decision;

j. Sauk County has not provided Plaintiff with any reason for the termination decision since May 5, 2020;

k. County Board chair on May 5, 2020, and presiding officer for the termination meeting, Defendant McCumber, stated falsely but publicly on or about May 10, 2020, that Sauk County did not need a reason to terminate its employment relationship with Plaintiff;

l. County Board chair on May 5, 2020, and presiding officer for the termination meeting, Defendant McCumber, has not provided any reason for the termination decision since May 5, 2020; and

m. Legal counsel for Sauk County, Defendant Curtis, in a written denial of Plaintiff's request for copy of the Stadler investigation report stated that release "posed a significant threat to County interests in a subsequent legal action."

521. Defendant Sauk County wrongfully discharged Plaintiff from his employment on May 5, 2020.

522. Defendant Sauk County is liable to Plaintiff for all necessary remedies to make Plaintiff "whole" or otherwise remediate his injuries including but not limited to reinstatement as the Sauk County Corporation Counsel with an effective date of May 9, 2020.

523. Defendant Sauk County is liable to Plaintiff for damages all appropriate damages in amount to be determined by the trier of fact for back pay, front pay, uninsured dental expenses, uninsured healthcare expenses, dental insurance expenses, healthcare insurance expenses, law license expenses, retirement benefits, social security benefits, and all other appropriate damages.

524. Defendant Sauk County committed the acts or omissions that breached the Employment Contract with a wanton, reckless, or grossly negligent disregard for Plaintiff's rights and privileges.

525. Defendant Sauk County is liable to Plaintiff for punitive damages in an amount to be determined by the trier of fact.

**FOURTEENTH CLAIM FOR RELIEF**
**STATE LAW CLAIM**
**TORTIOUS INTERFERENCE WITH PROFESSIONAL/EMPLOYMENT RELATIONSHIP**
**(INDIVIDUAL AND CONSPIRACY)**

(Against Defendants Bisek, Boehlke, Bolin, Braunschweig, Bychinski, Chrisler, Crammond, Cross, Curry, Curtis, Czuprynko, Desmond, Detter, Deitrich, Dorner, Eberl, Evert, Flint, Gibson, Good, Gruber, Hazard, Kinsman, Klitzke, Krueger, Letendre, Lohr, McAuliffe, McCumber, Meister, Nelson, O'Rourke, Peper, Phillips, Polivka, Posewitz, Rego, Rehfeldt, Reppen, Riek, Scanlon, Schell, C. Spencer, T. Spencer, Stadler, Stehling, Stevens, White Eagle, Whitsell, Witecha and Jane Doe)

526. Each paragraph of this Complaint is incorporated as if restated fully herein.

527. Defendants committed unlawful acts or omissions against Plaintiff with such frequency and depravity that they created a near certain risk of injury to Plaintiff's legal rights.

528. Plaintiff had independent but overlapping attorney-client and employment relationships with Sauk County between July 10, 2018, through May 8, 2020.

529. Defendants, separately or in combination, intentionally committed acts or omissions that interfered with Plaintiff's attorney-client or employment relationship with Sauk County and included but are not limited to:

   a. Participation, support or enforcement of retaliatory, unauthorized or otherwise unlawful confidential legal information leaks, personal information leaks, non-attorney "legal" advice or instruction to agents of Plaintiff's client, or other acts or omissions adverse to significant duties or responsibilities assigned to or growing out of his professional or employment relationship with Sauk County.

   b. Participation, support or enforcement of retaliatory, unauthorized or otherwise unlawful "investigations" of Plaintiff.

109

     c. Participation, support or enforcement of frivolous, retaliatory or otherwise unlawful public records, Lighthouse or other employment-related complaints against Plaintiff.

     d. Participation, support or enforcement of unauthorized, defamatory or otherwise unlawful communications with Plaintiff's client, Sauk County.

     e. Retaliatory or otherwise unlawful participation, support or enforcement of unlawful suspension imposed against Plaintiff.

     f. Retaliatory or otherwise unlawful participation, support or enforcement of unlawful termination imposed against Plaintiff.

530. Defendants, separately or in combination, intentionally committed the acts or omissions that unlawfully interfered with Plaintiff's professional or employment relationship with Sauk County and such acts or omissions also contravened Sauk County interests.

531. Defendants, separately or in combination, intentionally committed the acts or omissions that unlawfully interfered with Plaintiff's professional or employment relationship with Sauk County when Defendants did not have a valid justification or privilege to commit such acts or omissions.

532. Defendants, separately or in combination, intentionally committed the acts or omissions that unlawfully interfered with Plaintiff's professional or employment relationship with Sauk County when he was not performing service growing out of and incidental to his employment with Sauk County.

533. Defendants, separately or in combination, intentionally committed the acts or omissions that unlawfully interfered with Plaintiff's professional or employment relationship with Sauk County and thereby injured and damaged him.

534. Defendants, separately or in combination, intentionally committed the acts or omissions that injured Plaintiff's professional or employment relationship with Sauk County and such acts or omissions were a substantial contributing factor of his injury(s) and damage(s).

535. Defendants failed to mitigate Plaintiff's injuries and damages and thereby aggravated them.

536.   Defendants are liable to Plaintiff for compensatory damages in amounts to be determined by the trier of fact but exceed the jurisdictional requirements of this Court as can nearly be determined at this time.

537.   Defendants, separately or in combination, intentionally committed the acts or omissions that interfered with Plaintiff's professional or employment relationship with Sauk County with a wanton, reckless, or grossly negligent disregard for his rights.

538.   Defendants are liable to Plaintiff for punitive damages in amounts to be determined by the trier of fact.

**FIFTEENTH CLAIM FOR RELIEF**
**· STATE LAW CLAIM**
**DEFAMATION**
**(INDIVIDUAL AND CONSPIRACY)**
(Against Defendants Bisek, Boehlke, Bolin, Braunschweig, Bychinski, Cross, Curtis, Czuprynko, Deitrich, Desmond, Evert, Good, Gruber, Hazard, Krueger, Letendre, Lohr, McAuliffe, McCumber, Meister, O'Rourke, Peper, Phillips, Posewitz, Rehfeldt, C. Spencer, Stadler, Stehling, Whitsell, Witecha and Jane Doe)

539.   Each paragraph of this Complaint is incorporated as if restated fully herein.

540.   Defendants committed unlawful acts or omissions against Plaintiff with such frequency and depravity that they created a near certain risk of injury to Plaintiff's legal rights.

541.   Defendants, separately or in combination, made or otherwise communicated false statements concerning Plaintiff as described in this Complaint and include: the Lighthouse Complaints, the public records violation allegations, the McCumber Petition, the Stadler "urgent" meeting letter, the Czuprynko "terrorist" email, the Witecha "thoughts" email, the Whitsell "hit list" email, the Good letter, the Letendre letter, the Deitrich email, the Evert newspaper statement, the Sheriff deputy posting, the Cross "witch hunt" email, the Witecha letter and the O'Rourke public comment.

542.   Defendants, separately or in combination, made or otherwise communicated a false statement(s) concerning Plaintiff that harmed Plaintiff's reputation so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him and adversely affected his profession or office.

543.   Defendants, separately or in combination, made or otherwise communicated through speech, writing or conduct to a person other than Plaintiff a false statement(s) concerning Plaintiff with knowledge of its falsity or a reckless disregard for the truth or with ill will, bad intent, envy, spite, hatred, revenge or other bad motives.

544.   Defendants, separately or in combination, made or otherwise communicated false statement(s) concerning Plaintiff that defamed, injured and damaged Plaintiff and were a substantial contributing factor of Plaintiff's injury(s) and damage(s).

545.   Defendants, separately or in combination, defamed, injured and damaged Plaintiff when Defendants did not have any valid justification or privilege.

546.   Defendants, separately or in combination, defamed, injured and damaged Plaintiff when he was not performing service growing out of and incidental to his employment with Sauk County.

547.   Defendants failed to mitigate Plaintiff's injuries and damages and thereby aggravated them.

548.   Defendants are liable to Plaintiff for compensatory damages in amounts to be determined by the trier of fact but exceed the jurisdictional requirements of this Court as can nearly be determined at this time.

549.   Defendants, separately or in combination, made or otherwise communicated false statement(s) concerning Plaintiff with a wanton, reckless, or grossly negligent disregard for Plaintiff's rights.

550.   Defendants are liable to Plaintiff for punitive damages in amounts to be determined by the trier of fact.

**SIXTEENTH CLAIM FOR RELIEF**
**STATE LAW CLAIM**
**CONSPIRACY TO HINDER LAWFUL WHISTLEBLOWER CONDUCT**
**(COMMON LAW & WIS STAT. § 134.01)**

(Against Defendants Bisek, Boehlke, Bolin, Braunschweig, Bychinski, Chrisler, Crammond, Cross, Curry, Curtis, Czuprynko, Desmond, Detter, Deitrich, Dorner, Eberl, Evert, Flint, Gibson, Good, Gruber, Hazard, Kinsman, Klitzke, Krueger, Letendre, Lohr, McAuliffe, McCumber, Meister, Nelson, O'Rourke, Peper, Phillips, Polivka, Posewitz, Rego, Rehfeldt, Reppen, Riek, Scanlon, Schell, C. Spencer, T. Spencer, Stadler, Stehling, Stevens, White Eagle, Whitsell, Witecha and Jane Doe)

551.    Each paragraph of this Complaint is incorporated as if restated fully herein.

552.    Defendants combined, agreed, associated, mutually undertook, concerted together or otherwise conspired to commit acts or omissions against Plaintiff to hinder Plaintiff from reporting public corruption or other lawful conduct of Plaintiff and thereby violate Wisconsin common law and/or Wis Stat. § 134.01.

553.    Defendants committed their conspiracy acts or omissions against Plaintiff intentionally and with ill will, bad intent, envy, spite, hatred, revenge or other bad motives.

554.    Defendants committed conspiracy acts or omissions against Plaintiff that prevented or hindered lawful conduct of Plaintiff, injured Plaintiff and damaged Plaintiff and were a substantial contributing factor of Plaintiff's injury(s) and damage(s)

555.    Defendants committed their conspiracy acts or omissions against Plaintiff when they did not have any valid justification or privilege for such acts or omissions.

556.    Defendants committed their conspiracy acts or omissions against Plaintiff when he was not performing service growing out of and incidental to his employment with Sauk County.

557.    Defendants, failed to mitigate Plaintiff's injuries and damages and thereby aggravated them.

558.    Defendants are liable to Plaintiff for compensatory damages in amounts to be determined by the trier of fact but exceed the jurisdictional requirements of this Court as can nearly be determined at this time.

559.    Defendants committed their conspiracy acts or omissions against Plaintiff with a wanton, reckless, or gross disregard for Plaintiff's rights.

560.    Defendants are liable to Plaintiff for punitive damages in amounts to be determined by the trier of fact.

### SEVENTEENTH CLAIM FOR RELIEF
### STATE LAW CLAIM
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(INDIVIDUAL AND CONSPIRACY)**

(Against Defendants Bisek, Boehlke, Bolin, Braunschweig, Bychinski, Chrisler, Crammond, Cross, Curry, Curtis, Czuprynko, Desmond, Detter, Deitrich, Dorner, Eberl, Evert, Flint, Gibson, Good, Gruber, Hazard, Kinsman, Klitzke, Krueger, Letendre, Lohr, McAuliffe, McCumber, Meister, Nelson, O'Rourke, Peper, Phillips, Polivka, Posewitz, Rego, Rehfeldt, Reppen, Riek, Scanlon, Schell, C. Spencer, T. Spencer, Stadler, Stehling, Stevens, White Eagle, Whitsell, Witecha and Jane Doe)

561.   Each paragraph of this Complaint is incorporated as if restated fully herein.

562.   Defendants, separately or in combination, intentionally or recklessly committed more than fifty (50) acts or omissions between December 10, 2019, and May 5, 2020, with intent or a high expectation to abuse, stigmatize, disgrace, vilify, shame, degrade, humiliate, ridicule, denigrate, or otherwise make Plaintiff suffer emotional distress.

563.   Defendants, separately or in combination, more than fifty (50) acts or omissions between December 10, 2019, and May 5, 2020, that were atrocious and utterly intolerable in a civilized community and included but were not limited to: filing, supporting, broadcasting or prosecuting frivolous and malicious Lighthouse Complaints against Plaintiff; filing, supporting, broadcasting malicious public records complaints against Plaintiff; sending a malicious mass email message to every county board member and every county department head to try and discredit Plaintiff; making a frivolous and malicious request for the resignation of Plaintiff while unable to provide a single reason for the request; preparing a vindictive agenda petition to demand an administrative suspension of Plaintiff; circulating or signing a patently retaliatory petition with proposed adverse action against Plaintiff that was prepared by a government official who has publicly admitted a criminal adverse personal interest in the petition; demanding retaliatory government action Plaintiff when he properly challenged a reckless and irresponsible "investigation" of frivolous and malicious complaints against him; using a government attorney position to maliciously attack Plaintiff's ethics while conveniently "forgetting" to disclose to every email recipient the messaging attorney's adverse personal interests and appalling ethical misconduct; sending a malicious email message that falsely claimed Plaintiff had a "hit list" of county officials; abusing government authority to commit more criminal misconduct and retaliate against Plaintiff after he just filed a criminal investigation request; facilitating, supporting

and enforcing and administrative suspension against Plaintiff that is soaked in criminal misconduct; ordering armed deputies to stand "guard" in a public hallway to "prevent" office access by Plaintiff after he just had surgery and couldn't even walk; making a vile statement to a local newspaper that falsely alleged Plaintiff scary and such a safety "threat" that doors to the county clerk's office "had" to be locked event though Plaintiff just had major surgery and couldn't even walk, and; other shocking and persistent abuses of government authority that assaulted Plaintiff's emotional wellbeing;

564.    Defendants, separately or in combination, intentionally committed acts or omissions that falsely or otherwise unlawfully marked Plaintiff as a vindictive, irrational, abusive, and unethical person in the minds of thousands of people; permanently shackled Plaintiff to the vile assaults on his character and integrity that remain publicly accessible on the internet; irreparably scarred Plaintiff's professional reputation, or; otherwise inflicted severe emotional stress on Plaintiff due to shame, humiliation, disgrace, condemnation, or other public trauma.

565.    Defendants, separately or in combination, intentionally committed emotionally abusive acts or omissions against Plaintiff that devastated his marriage; denied him irreplaceable childhood moments with his teenage son; damaged his personal relationship with his son; destroyed his personal well-being and security; permanently scarred his reputation; shattered his employability at the height of a national pandemic and a period of extreme unemployment; forced an early retirement with reduced retirement and social security benefits; ruined his long-term financial well-being; or otherwise inflicted severe emotional stress on him due to grief, isolation, depression, fear, or other personal trauma.

566.    Defendants separately or in combination, committed "extreme and outrageous" acts or omissions that made Plaintiff suffer severe emotional stress, injured Plaintiff and damaged Plaintiff and were a substantial contributing factor of Plaintiff's injury(s) and damage(s).

567.    Defendants committed their "extreme and outrageous" acts or omissions against Plaintiff when they did not have any valid justification or privilege for such acts or omissions.

568. Defendants committed their "extreme and outrageous" acts or omissions against Plaintiff when he was not performing service growing out of and incidental to his employment with Sauk County.

569. Defendants failed to mitigate Plaintiff's injuries and damages and thereby aggravated them.

570. Defendants are liable to Plaintiff for compensatory damages in amounts to be determined by the trier of fact but exceed the jurisdictional requirements of this Court as can nearly be determined at this time.

571. Defendants committed their "extreme and outrageous" acts or omissions to inflict severe emotional distress on Plaintiff with a wanton, reckless, or gross disregard for his rights.

572. Defendants are liable to Plaintiff for punitive damages in amounts to be determined by the trier of fact.

## EIGHTEENTH CLAIM FOR RELIEF
### STATE LAW CLAIM
#### NEGLIGENCE

(Against Defendants Bisek, Boehlke, Bolin, Braunschweig, Bychinski, Chrisler, Crammond, Cross, Curry, Curtis, Czuprynko, Desmond, Detter, Deitrich, Dorner, Eberl, Evert, Flint, Gibson, Good, Gruber, Hazard, Kinsman, Klitzke, Krueger, Letendre, Lohr, McAuliffe, McCumber, Meister, Nelson, O'Rourke, Peper, Phillips, Polivka, Posewitz, Rego, Rehfeldt, Reppen, Riek, Scanlon, Schell, C. Spencer, T. Spencer, Stadler, Stehling, Stevens, White Eagle, Whitsell, Witecha and Jane Doe)

573. Each paragraph of this Complaint is incorporated as if restated fully herein.

574. Wisconsin does not follow the majority view in *Palsgraf v. Long Island Railroad Co.*, under which the existence of duty of care and, thereby negligence, depends on whether injury to a particular victim was foreseeable. Rather, in Wisconsin, everyone owes to the world at large the duty of refraining from those acts or omissions that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property.

575. The Defendants, without intending to do harm, each committed an act or omission that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property and thereby committed a negligent act or omission.

576.   Defendants repeatedly ignored or otherwise failed to follow established public, professional or private rules of conduct applicable to them; repeatedly failed to object to violations of public, professional or private rules of conduct committed by other Defendants; repeatedly failed to enforce established public, professional or private rules of conduct applicable to them and other Defendants, or; repeatedly participated in or otherwise supported violation of established public, professional or private rules of conduct applicable to them and other Defendants and thereby committed a negligent act or omission.

577.   Plaintiff, to the extent necessary, was a member of the class of persons that the public, professional or private rules of conduct applicable to Defendants are intended to protect.

578.   Defendants committed a negligent act or omission that injured and damaged Plaintiff and was a substantial contributing factor of Plaintiff's injury and damage.

579.   Defendants committed the negligent acts or omissions that injured Plaintiff when he was not performing service growing out of and incidental to his employment with Sauk County.

580.   Defendants failed to mitigate Plaintiff's injuries and damages and thereby aggravated them.

581.   Relevant legal cause public policy considerations do not preclude liability of Defendants for Plaintiff's injuries and damages.

582.   Defendants are liable to Plaintiff for compensatory damages in amounts to be determined by the trier of fact but exceed the jurisdictional requirements of this Court as can nearly be determined at this time.

583.   Defendants committed negligent acts or omissions with such frequency and depravity that they created a near certain risk of injury to Plaintiff's legal rights.

584.   Defendants committed their negligent acts or omissions against Plaintiff with a wanton, reckless, or grossly negligent disregard for his rights.

585.   Defendants are liable to Plaintiff for punitive damages in amounts to be determined by the trier of fact.

## NINETEENTH CLAIM FOR RELIEF
### STATE LAW CLAIM

## NEGLIGENT HIRING, TRAINING OR SUPERVISION

(Defendants: Aegis Corporation, Cross-Jenks-Mercer, Hawks-Qindel, Jackson-Lewis, Letendre Group, von Briesen-Roper, Wisconsin Counties Association, Wisconsin County Mutual Insurance Corporation)

586.    Each paragraph of this Complaint is incorporated as if restated fully herein.

587.    Defendants Aegis Corporation (Aegis), Letendre Group, Cross-Jenks-Mercer, Hawks-Qindel, Jackson-Lewis, von Briesen-Roper, Wisconsin Counties Association (WCA), and Wisconsin County Mutual Insurance Corporation (WCMIC) employed Defendants Bisek, Cross, Curtis, Good, Letendre, Phillips, and/or Stadler.

588.    Defendants Aegis, Letendre Group, Cross-Jenks-Mercer, Hawks-Qindel, Jackson-Lewis, von Briesen-Roper, WCA, or WCMIC owed everyone a duty to avoid acts or omissions concerning the hiring, retaining, or supervising of Defendants Bisek, Cross, Curtis, Good, Letendre, Phillips, and/or Stadler that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property.

589.    The Defendants, without intending to do harm, each committed an act or omission concerning the hiring, retaining, or supervising of Defendants Bisek, Cross, Curtis, Good, Letendre, Phillips, and/or Stadler that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property.

590.    Defendants knew or should have known that Defendants Bisek, Cross, Curtis, Good, Letendre, Phillips, or Stadler had or were likely to have frequent contact with local government organizations or in-house lawyers who represent local government organizations.

591.    Defendants knew or should have known that local government organizations operate under unique legal rules and unique internal and external legal relationships that requires special training and knowledge to understand and not injure by inappropriate acts or omissions  but hired, retained and failed to supervise Defendants Bisek, Cross, Curtis, Good, Letendre, Phillips, or Stadler despite their lack of training and knowledge concerning unique operational rules and unique internal and external legal relationships of local government organizations.

592.    Defendants knew or should have known that in-house local government lawyers have a unique attorney-client relationship with their local government organization client that requires special training and knowledge to understand and not injure by inappropriate acts or omissions but hired, retained and failed to supervise Defendants Bisek, Cross, Curtis, Good, Letendre, Phillips, or Stadler despite their lack of training and knowledge concerning the unique attorney-client relationship between in-house local government lawyers and their local government clients.

593.    Defendants Aegis, von Briesen-Roper, WCA, or WCMIC, knew or should have known that Defendant Phillips had a history of interfering improperly with the attorney-client relationship of in-house local government lawyers and their clients.

594.    Defendants Aegis, WCA, or WCMIC knew or should have known that Defendant Bisek had a history of interfering improperly with the attorney-client relationship of in-house local government lawyers and their clients

595.    Defendants Bisek, Cross, Curtis, Good, Letendre, Phillips, and/or Stadler committed an act or omission within the scope of their employment with or duties to Defendants Aegis, Letendre Group, Cross-Jenks-Mercer, Hawks-Qindel, Jackson-Lewis, Sauk County, von Briesen-Roper, WCA, or WCMIC that injured and damaged Plaintiff and was a substantial contributing factor of such injury(s) and damage(s).

596.    Defendants Aegis, Letendre Group, Cross-Jenks-Mercer, Hawks-Qindel, Jackson-Lewis, von Briesen-Roper, WCA, or WCMIC did not properly hire, supervise, train, or take remedial measures against Defendants Bisek, Cross, Curtis, Good, Letendre, Phillips, and/or Stadler and such failure(s) injured and damaged Plaintiff and were a substantial contributing factor of Plaintiff's injury(s) and damage(s).

597.    Defendants Aegis, Letendre Group, Cross-Jenks-Mercer, Hawks-Qindel, Jackson-Lewis, von Briesen-Roper, WCA, or WCMIC failed to mitigate Plaintiff's injury(s) and damage(s) and thereby aggravated them.

598.    Defendants Aegis, Letendre Group, Cross-Jenks-Mercer, Hawks-Qindel, Jackson-Lewis, Sauk County, von Briesen-Roper, WCA, or WCMIC are liable to Plaintiff for compensatory

damages in amounts to be determined by the trier of fact but exceed the jurisdictional requirements of this Court as can nearly be determined at this time.

599.   Defendants Aegis, Letendre Group, Cross-Jenks-Mercer, Hawks-Qindel, Jackson-Lewis, von Briesen-Roper, WCA, or WCMIC committed their negligent acts or omissions against Plaintiff with a wanton, reckless, or grossly negligent disregard for his rights.

600.   Defendants Aegis, Letendre Group, Cross-Jenks-Mercer, Hawks-Qindel, Jackson-Lewis, von Briesen-Roper, WCA, or WCMIC are liable to Plaintiff for punitive damages in amounts to be determined by the trier of fact.

## TWENTIETH CLAIM FOR RELIEF
### STATE LAW CLAIM
### INDEMNIFICATION (ALL CLAIMS): SAUK COUNTY

Sauk County is liable to Plaintiff, pursuant to Wis. Stat. §895.46(1)(a), for payment of any judgment as to damages and costs attributable to acts or omissions within the scope of employment of and entered against Defendants Bisek, Boehlke, Bolin, Braunschweig, Bychinski, Chrisler, Crammond, Curry, Curtis, Czuprynko, Desmond, Detter, Deitrich, Dorner, Eberl, Evert, Flint, Gibson, Gruber, Hazard, Kinsman, Klitzke, Krueger, Lohr, McAuliffe, McCumber, Meister, Nelson, O'Rourke, Peper, Phillips, Polivka, Posewitz, Rego, Rehfeldt, Reppen, Riek, Scanlon, Schell, C. Spencer, T. Spencer, Stadler, Stehling, Stevens, White Eagle, Whitsell, and Witecha, in excess of any insurance applicable to such Defendants.

## CLAIM FOR DECLARATORY RELIEF

This suit involves an actual controversy within the Court's jurisdiction and the Court may declare the rights of Plaintiff under the Constitution and laws of the United States and the Constitution and laws of Wisconsin and grant such relief as is necessary and proper and Plaintiff thereby seeks declaratory relief on his behalf.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award him all relief allowed by law or equity, including but not limited to the following:

A. Declaratory judgment that Defendants violated Plaintiff's First Amendment rights;

B. Declaratory judgment that Defendants violated Plaintiff's Fourteenth Amendment rights;

C. Compensatory damages against all Defendants jointly and severally in amounts to be established at trial as compensation for constitutional deprivations, past and future economic loss, physical harm, emotional trauma, loss of privacy, and loss of reputation;

D. Punitive damages in an amount to be established at trial to punish Defendants for outrageous conduct and discourage them from engaging in similar conduct in the future, and to deter others similarly situated from engaging in similar misconduct;

E. Pretrial interest;

F. Attorney's fees, expert witness fees and litigation costs; and

G. Such other and further relief at law or equity as the Court deems just and equitable to effectuate a complete resolution of the legal disputes between Plaintiff and Defendants.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

Respectfully submitted this ____ day of September 2022.

Daniel M. Olson
30 Heritage Circle, No. 5
Madison, WI 53711
(608) 520-2440
olsonvsaukcounty@yahoo.com