UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

DANIEL M. OLSON,

                         Plaintiff,                        Case No. 3:22-cv-00562-wmc

    v.

SAUK COUNTY, et al.

                         Defendants.

**PLAINTIFF'S RESPONSE BRIEF OPPOSING THE
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT BY
DEFENDANTS RICHARD CROSS, BENOIT LETENDRE, AND CROSS, JENKS
MERCER & MAFFEI, LLP**

## INTRODUCTION

Plaintiff is the former corporation counsel for Sauk County (County). He filed this action after Sauk County officials, employees, agents and others, including the Cross, Jenks, Mercer, Maffei law firm (CJMM) and two of their employees, Richard Cross (Cross) and Benoit Letendre (Letendre) waged an unconscionable campaign of retaliation and other abuse against him for disclosing and reporting public corruption in the County. Plaintiff suffered severe injuries and now seeks damages and other relief for them from the defendants as stated in his First Amended Complaint (FAC).

## LEGAL STANDARDS

A motion to dismiss challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6). A plaintiff "need not 'show' anything to survive a motion under Rule 12(b)(6)-[he] need only allege." *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005). "To survive a motion to dismiss for failure to state a claim, "the complaint must 'state a claim for relief that is plausible on its face.'" *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854 (7th Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). the court must view the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

It is well-established law that "[t]he mere presence of a potential affirmative defense does not render the claim for relief invalid." *Brownmark Films, LLC v. Comedy Partners,* 682 F.3d 687, 690 (7th Cir. 2012). And "[a] complaint states a claim on which relief may be granted whether or not some defense is potentially available." *U.S. v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004). Thus, a plaintiff is not required to anticipate and attempt to plead around defenses in his complaint. *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980) and *United States Gypsum Co. v. Indiana Gas Co.,* 350 F.3d 623 (7th Cir. 2003).

<u>STATEMENT OF FACTS</u>

This lawsuit involves fifty-nine defendants and twenty claims. The relevant facts are connected to numerous events between at least September 2015 and September 2022, which the FAC fully details. They will not be restated here. Rather, FAC allegations, documents incorporated by the FAC, and admissions by CJMM, Cross, Letendre or other defendants in or associated with their filings will be cited where needed. And new allegations in this brief consistent with the FAC are permissible. *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015).

<u>SUBSTANTIVE CLAIM FACTS</u>

Plaintiff reviewed more than three-thousand email messages and other records as part of a lawsuit settlement agreement between June 2019 and November 2019. He discovered in that review substantial evidence of criminal misconduct that precipitated formation of a Corruption Enterprise by Bolin, Krueger, O'Rourke, Posewitz and others.

Plaintiff contacted the County Board Chair, Peter Vedro (Vedro), and explained the situation to him. Plaintiff requested an open session meeting with a committee chaired by Vedro because Plaintiff knew he had to refer the matter for an outside investigation. Plaintiff wanted, as a public official and citizen, and needed, pursuant to his professional

duties as a lawyer, to inform Vedro's committee and elicit their support. Vedro agreed and scheduled a special meeting for Plaintiff's communications.

During the meeting on December 10, 2019, Plaintiff did not disclose any names or specifics. But the corrupt officials knew exactly who and what they were. And they decided to attack Plaintiff with a vengeance. Czuprynko, Evert, Gruber, Krueger and McCumber were some of the most vicious and persistent assailants.

In early January 2020, Czuprynko, Evert, Gruber, Krueger and McCumber decided to get some lawyers to help them attack Plaintiff. They hired a law firm, CJMM, and two CJMM lawyers, Cross and Letendre.

At all relevant times, Cross and Letendre were employees of CJMM, a small Sauk County law firm in Baraboo, WI with its only office across the street from the Sauk County government building. CJMM was a joint and willful participant in all acts or omissions of Cross and Letendre in the year 2020 related to the representation of Czuprynko, Evert, Gruber, Krueger, and McCumber (County Clients) by CJMM, Cross and Letendre including, but not limited to, the acts or omissions of Cross and Letendre identified in the FAC and this brief and plausibly inferred therefrom.

At all relevant times, Cross and Letendre knew the County Clients were government officials. Cross and Letendre knew their County Clients owed a strict public fiduciary duty of ethical and lawful service to the Sauk County government organization and the public. Cross and Letendre knew that whenever they acted as agent for their County Clients they owed a strict public fiduciary duty of ethical and lawful service to the Sauk County government organization and the public.

At all relevant times, Cross and Letendre knew Plaintiff was the Sauk County Corporation Counsel. They knew Plaintiff was a public official. They knew Plaintiff had an attorney-client relationship with the County. They knew Plaintiff represented the County. And they knew or were required to know that Plaintiff had an employment contract with the County.

At all relevant times, Cross and Letendre knew the Sauk County E&L Committee

3

held a meeting on January 7, 2020, to discuss a criminal investigation petition (Petition) by Plaintiff and the Committee to state and local law enforcement agencies that concerned criminal misconduct allegations against the County Clients. They knew that on January 7, 2020, the Committee granted Plaintiff's request for Committee support of the Petition. They knew the Petition would be based at least in part on Plaintiff's personal knowledge of the matters to be reported in it. They knew the County Clients had severe personal interests in the Petition and obstructing Plaintiff's forthcoming submission of it to law enforcement.

At all relevant times, Cross and Letendre knew the County Clients had unlawfully abused their public authority to thwart, obstruct or otherwise interfere with Plaintiff's lawful conduct. They knew the County Clients attempted to obstruct the January 7th Committee meeting. They knew McCumber and Gruber had filed frivolous public records complaints against Defendant. They knew McCumber filed a retaliatory and frivolous Lighthouse Complaint against Plaintiff.  including disclosure of official misconduct by the County Clients.

On January 14, 2020, Cross knowingly and intentionally joined the attacks on Plaintiff of the County Clients. Cross intentionally prepared a letter (Cross Letter I) addressed to the Board. (FAC, ¶ 249). Cross, a lawyer with 40+ years of experience, knowingly and intentionally did not seek or secure any consent from Plaintiff to communicate with Plaintiff's client through the County Board and knew he did not have such consent. Cross did not care. He created thirty-one email messages and attached Cross letter I to it. Then he hit the send button and distributed the emails and letter copies by interstate wireless communication.

Cross defamed Plaintiff in Cross Letter I. Cross falsely accused Mr. Olson of commencing an unlawful ethics investigation against the County Clients; retaliating against them; or otherwise acting unlawfully. And Cross baselessly and unlawfully threatened to sue Plaintiff.

On January 15, 2020, Evert attended and participated in a closed-door meeting in

a private meeting room with Plaintiff, County Board Chair Vedro and two others to discuss the agenda for a forthcoming County Board meeting. During the meeting Vedro asked Plaintiff if Vedro still had time to discuss the McCumber Petition with outside counsel. Plaintiff advised Vedro that he did. Evert heard Plaintiff provide this confidential legal advice to Vedro.

Evert had personal interests in the blatantly criminal and unconstitutional McCumber Petition. It was designed to obstruct preparation of the criminal investigation petition by Plaintiff and thereby thwart a criminal investigation request supported by the County into criminal misconduct of the County Clients including Evert.

Evert knew Plaintiff's advice to Vedro was confidential government information. Evert knew she could not disclose the content of Plaintiff's communications to Vedro to anyone inside or outside of the Sauk County government organization without Plaintiff's permission. But she knew a criminal investigation of her conduct could put her in jail. So, Evert contacted Cross after the meeting ended and disclosed Plaintiff's advice to Cross.

Cross did not stop Evert from disclosing confidential government information to him. He did not stop her from committing criminal misconduct in office. He did not alert Plaintiff to Evert's criminal conduct even though such communications are not subject to the attorney-client privilege and Cross owed Sauk County public fiduciary duties of ethical and lawful conduct as an agent of Evert. Instead, Cross joined Evert. And Cross knowingly and intentionally aided and abetted Evert's criminal misconduct in office.

On January 15, 2020, Cross, now unlawfully armed with Evert's criminal confidential information disclosure, used and falsely attacked Plaintiff with it. He intentionally prepared a letter (Cross Letter II) addressed to the Board that discussed the information disclosed by Evert. Once again, Cross knowingly and intentionally did not seek or secure any consent from Plaintiff to re-disclose the information or to communicate with Plaintiff's client through the County Board and knew he did not have such consent. Cross did not care. He created thirty-one email messages and attached Cross letter II to it. Then he hit the send button and distributed the emails and letter

copies by interstate wireless communication.

Cross defamed Plaintiff in Cross Letter II. Cross knowingly and falsely accused Plaintiff of ethics violations, abuse of government authority, and county ordinance violations. Cross knew his accusations were false. But Cross wanted to injure Plaintiff's employment relationship, attorney-client relationship and his reputation.

On January 26, 2020, Letendre joined the Conflict-of-Interest smear attack on Plaintiff. He prepared a letter addressed to the Board even though he knew he did not have consent from Plaintiff to communicate with Plaintiff's client through the Board. Letendre did not care. He created thirty-plus email messages and attached his attack letter (Letendre Letter) to it. Then he hit the send button and distributed the emails and Letter copies by interstate wireless communication.

Letendre hurled accusations against Plaintiff in the Letendre Letter. Letendre falsely accused Plaintiff of ethics violations, abuse of government authority, and county ordinance violations. Letendre knew his accusations were false. But Letendre wanted to injure Plaintiff's employment relationship, attorney-client relationship and his reputation.

Two days later, a minority of Board supervisors, led by the County Clients, conducted an unlawful special meeting of the County Board to take adverse employment action against Plaintiff. County Clients participated and voted to suspend Plaintiff even though federal and state criminal laws prohibited their actions. County Board Chair Vedro explicitly stated the action was retaliation for Plaintiff's disclosure and reporting of criminal misconduct by the County Clients to law enforcement agencies.

On January 30, 2020, Vedro prepared and circulated a County Board special meeting petition for February 7, 2020, that would give Plaintiff an opportunity to share detailed information with more County Board members (Vedro Meeting). Evert once again abused her public authority to serve her personal interests and attacked Vedro's meeting petition with phony content objections.

On February 4, 2020, Cross joined Evert's criminal abuse of authority and criminal

attempt to prevent the February 7th special meeting. Cross prepared an email addressed to the Board that attacked Plaintiff a third time. Cross knew he did not have any valid to communicate with the Board about a matter that concerned Evert and the other County Clients. Cross did not care. He intentionally created thirty-plus email messages with his intentional attack on Plaintiff in it. Then Cross intentionally hit the send button and distributed those email messages to the Board and others by interstate wireless communication.

Cross hurled more spittle and accusations at Plaintiff. Cross intentionally and falsely accused Plaintiff of conducting a "witch-hunt" against the County Clients. (FAC, ¶ 305). He intentionally and falsely accused Plaintiff of abusing public authority to make "allegations in search of a crime." (FAC, ¶ 305). Cross knew his accusations were false. He did not care. Cross wanted to injure Plaintiff's employment relationship, attorney-client relationship and his reputation.

The attacks on Plaintiff and Vedro did not prevent the Vedro Meeting on February 7th. The County Board majority wanted to hear what Mr. Olson had to say. Vedro got enough signatures on his petition for a Board special meeting on February 7th. But the County Clients, CJMM and Letendre were not done trying to obstruct Plaintiff's communication with the Board.

Letendre attended the February 7th meeting. He came prepared with a statement that attacked Plaintiff to help the County Clients obstruct the meeting and Plaintiff's First Amendment rights. Like before, Letendre did not seek or secure valid consent to speak to the Board about a matter concerning the County Clients. Letendre knew he could not speak to the Board without valid consent. He did not care.

On February 7th, Letendre intentionally signed and delivered a public comment request sheet to Evert. Evert gave the sheet to Vedro even though she knew Letendre was her lawyer. Vedro then called Letendre's name to come up and speak. Letendre intentionally walked to the front of the Board meeting room past Plaintiff who was sitting in a chair with his surgically repaired foot propped up on a second chair. Letendre made

a three-minute statement to the Board and the public listening to the meeting on a live-stream feed broadcast via interstate wireless communication. Letendre then walked back to his seat in the rear of the meeting room. And he smirked at Plaintiff as he walked by.

Letendre hurled more accusations at Plaintiff and he lied to the Board. Letendre said that Attorney Witecha, Attorney Good, Attorney Stadler, Attorney Cross, Letendre all agree "that placing Attorney Witecha on leave was improperly done" and "the hiring of Attorney Kalny [by Plaintiff], not that you can't do that, but under the circumstances is improper." And Letendre said that Attorney Witecha, Attorney Good, Attorney Stadler, Attorney Cross, Letendre and the DA all agree "that Corporation Counsel Dan Olson was properly placed on administrative leave." And Letendre said that "these are people who have studied the question and arrived at the same conclusion using the same reasoning." Each of these statements is blatantly false and Letendre knew it.

First, Stadler, Cross, and Letendre did not represent Witecha and never sent a communication to the Board stating Plaintiff's administrative suspension of Witecha was improper. And if they had, it would have been another lie because Plaintiff had unquestionable authority not only to suspend Witecha for his criminal conduct but fire him on the spot.

Second, Witecha, Good, Stadler, Cross, and Letendre never told the Board that Plaintiff's lawful exercise of authority specifically delegated to him by an explicit and decades old policy authorization by the E&L Committee was improper. And, if they had/did, they would have been wrong. A county policy explicitly permitted such action by Plaintiff.

Third, neither Witecha, Good, Cross, Letendre nor the DA had advised the Board that Plaintiff was "properly placed on administrative leave." The district attorney by Letendre was particularly outrageous and intentionally malicious because the district attorney does not have any authority to render any opinion on such matters and he never did.

Finally, Letendre knew that Witecha, Good, Stadler, Cross, the district attorney

and Letendre had not "studied the question and arrived at the same conclusion using the same reasoning." Letendre knew that all of them had not even addressed the same questions yet alone arrived at the same conclusions.

Letendre knew his accusations were false. He did not care. Letendre wanted to injure Plaintiff. Letendre was not done.

During the meeting the County Clients and a few other Board members committed multiple violations of criminal law. Czuprynko, Gruber, Krueger, and McCumber each exercised their authority to participate in the meeting even though it directly concerned their personal interests. Czuprynko, Gruber and McCumber each made or seconded at least one motion designed to prevent or obstruct the purpose of the meeting. They each spoke multiple times during the meeting in favor of motions or other actions that would prevent or obstruct the purpose of the meeting.

Letendre saw all of it. He sat in the meeting and knowingly and intentionally allowed his County Clients to violate criminal laws. But Letendre, as agent of public officials, knew he had a duty to intervene and stop such conduct. He did not care. Letendre knowingly and intentionally aided and abetted the criminal conduct of the County Clients on February 7th during a public meeting of the County Board.

Letendre and CJMM knowingly and intentionally joined and participated in the concerted criminal actions or omissions of his County Clients and others to intentionally injure Plaintiff. Letendre and CJMM intentionally committed acts or omissions to destroy or damage Plaintiff's employment relationship, attorney-client relationship and his reputation.

Letendre knowingly and intentionally committed malicious acts or omissions to injure Plaintiff. He knowingly and intentionally violated mandatory rules of professional conduct to injure Plaintiff. He knowingly and intentionally lied to county government officials and made false statements about Plaintiff to injure Plaintiff. And he knowingly and intentionally aided and abetted criminal conduct by his County Clients to injure Plaintiff.

Letendre committed his acts or omissions while he was an employee of CJMM. He used CJMM resources to commit them. CJMM did nothing to stop or try to stop Letendre from using its resources to commit his heinous and gutless acts or omissions that injured Plaintiff. And CJMM did not provide Letendre with sufficient training or supervision to prevent Letendre's malicious, unlawful, and unethical attacks on Plaintiff.

The CJMM, Cross, Letendre, and County Clients concerted obstruction and smear campaign against Plaintiff worked. They prevented Plaintiff from speaking with the Board and sharing vital information about the County Clients with the Board. And Plaintiff never got another chance.

In April 2020, the corrupt County Clients and their allies took control of the County Board. They held their statutory organizational meeting on April 21, 2020, and elected McCumber as County Board chair. McCumber moved immediately to finish his criminal assault on Plaintiff's rights with two special meetings in rapid succession. McCumber and other County Clients arranged and conducted an E&L Committee special meeting on April 22, 2020, to authorize a special Board meeting to fire Plaintiff. Then McCumber and the other County Clients arranged and conducted a County Board special meeting on May 5, 2020, to wrongfully terminate Plaintiff's employment.

Plaintiff filed a notice of claims with the County on September 4, 2020. The Board did not act on it. Meanwhile, Plaintiff pursued reinstatement in state court by a mandamus action he had filed in February 2020. In early January 2022, the Wisconsin Court of Appeals decided the Sauk County circuit court dismissed Plaintiff's mandamus action against the County Clients and others solely on mootness grounds.[1]  Plaintiff then filed a notice of intent to sue with the County on January 15, 2022. The Board, led (contrary to criminal law restrictions) by the County Clients, denied Plaintiff's claims on February 15, 2020. Corporation Counsel Brian Desmond notified Plaintiff of the corrupt on March 30, 2022.

---

[1] Plaintiff named Sauk County as the defendant. But the County Clients and others supplied the criminal abuse of public authority that supported Plaintiff's request for mandamus relief. And it is a flagrant misrepresentation of facts to describe the mandamus action as a lawsuit against the County. Plaintiff did not challenge any action by the County. He challenged the criminal actions of a Board *minority* and the other corrupt officials who helped them.

Plaintiff commenced this lawsuit on September 30, 2022, and named CJMM, Cross, Letendre and 56 others as defendants. Plaintiff hired professional process servers for all defendants except the law firm and law firm lawyer defendants. Plaintiff engaged an inexperienced process server (Server) for all of the law firm and law firm lawyer defendants, except Curtis and Phillips.

## ARGUMENT[2]

Plaintiff chose an inexperienced process server for the law firms and law firm lawyer defendants for a simple reason. Plaintiff believed in the rules of professional conduct for lawyers. He believed lawyers were officers of the court and stewards of the legal system. He believed lawyers and law firms owed special obligations to the administration of justice.

Despite the disgusting law firm and law firm lawyer conduct described in the FAC and this brief, Plaintiff still wanted to believe the principles he swore an oath to follow mattered. And he believed, despite their personal interests, the law firm and law firm lawyer defendants also understood these duties. Thus, Plaintiff did not think CJMM, Cross or Letendre would shove a CJMM receptionist or a Cross/Letendre co-worker in front of the court and request a pat on the back for obstructing the administration of justice and trashing their duties to the legal system and the legal profession.

Once again, Plaintiff overestimated the value of principles for organizations and individuals like CJMM, Cross and Letendre. But this is a different day and a different forum. This time Plaintiff has the opportunity to engage their assertions and show how unsound and meritless they are.

## I.    Plaintiff Served CJMM.

Federal Rule of Civil Procedure 4(e) provides two methods of serving process on individuals when a waiver is not requested. These two methods are:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or

---

[2] This brief only responds to the arguments actually and meaningfully raised by the Defendants in their opening brief. Any other objections Defendants may have had were waived. *Campos Cook Cnty.*, 932 F.3d 972, 976 n.2 (7th Cir. 2019) ("Parties waive arguments which they develop for the first time in a reply brief.") (citation omitted). And see *Uncommon, LLC v. Spigen, Inc.*, 926F.3d 409, 419 n.2 (7th Cir. 2019) ("As briefed, the argument is terse, free of legal citation, and vague. It is therefore waived.").

where service is made; or
(2) doing any of the following:
    (A) delivering a copy of the summons and of the complaint to the individual personally;
    (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
    (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Plaintiff complied with Fed. R. Civ. P. 4(e)(2)(C) when Plaintiff served CJMM.

CJMM admits a number of critical facts. It admits the Server delivered the Summons and Complaint to the correct address. It admits the Server delivered them prior to the expiration of the 90-day service window. And it admits they were received and read by a responsible member of the firm.

Most importantly, CJMM *admits the Server delivered the documents to an authorized agent of CJMM* for service of process. CJMM admits that Ms. Bass received the Summons and Complaint on December 16, 2022, from the Server. Ms. Bass specifically acknowledged that she is an authorized agent for CJMM. In her affidavit, Ms. Bass stated: "*As a general rule*, I did not accept service from process servers." (Dkt. 99, p. 2) (emphasis added). Ms. Bass thus admitted she did accept service from process servers *sometimes*. And she thereby admitted she is a sometimes agent for CJMM.

On December 16, 2022, as a sometimes agent for CJMM, Ms. Bass did not refuse the documents from the Server or otherwise attempt to reject them or return them. Instead, she accepted them and, to the best of her recollection, gave them to Ms. Rathkamp, a CJMM paralegal. (Dkt. 99, p. 2). Thus, Ms. Bass did the same things she would on any other day she functioned as a sometimes agent for CJMM.

The facts, as admitted by CJMM and Ms. Bass, show Plaintiff's Server personally served a copy of the summons and complaint on an authorized agent of CJMM prior to the expiration of the time period for service. Such service fully complied with Fed. R. Civ. P. 4(e)(2)(C). Thus, CJMM's motion to dismiss the claims against it for insufficient service must be denied.

## II.        Plaintiff Served Cross & Letendre.

On December 16, 2022, Plaintiff's Server went to the West & Dunn business office in Baraboo, Wisconsin. (Adams Aff. P. 2). He made contact with West & Dunn Attorney Andrew Adams whose photograph and law firm status is available on the internet.[3] Mr. Adams understood that the person he spoke to was a process server. (Adams Aff. P. 2). The Server advised Mr. Adams that he had documents for Cross and Letendre. *Id.*

Cross and Letendre are partners in the West & Dunn firm.[4] The Server handed the documents for Cross and Letendre to Mr. Adams. (Adams Aff. P. 2). Mr. Adams did not refuse the documents or otherwise object to the transaction offered by the Server. *Id.* Mr. Adams did not alert the Server to any problems or concerns with the transaction. *Id.* And Mr. Adams knowingly and intentionally accepted the documents from the Server, a person he understood to be a process server, as agent for Cross and Letendre.

Mr. Adams delivered the documents for the Server. He placed them on the desks of Cross and Letendre. (Adams Aff. P. 2). And he told Cross and Letendre that they were from a process server. *Id.* Cross and Letendre then received the documents, opened and read them on or about December 16, 2022. (Cross Aff. P. 2) (Letendre Aff. P. 2).

The facts, as admitted by Mr. Adams as well as Cross and Letendre show Plaintiff's Server personally served a copy of the summons and complaint on an authorized agent of Cross and Letendre (Attorney Adams) before the service period expired.[5] Such service complied with Fed. R. Civ. P. 4(e)(2)(C). Thus, the Cross and Letendre motion to dismiss the claims against them for insufficient service must be denied.

## III.     CJMM/Cross/Letendre Failed to Raise & Waived IP Defense

A defendant must raise the defense of insufficiency of service of process in his or

---

[3] https://www.westdunn.com/team-members/andrew-adams/ (last visited January 2, 2024).

[4] https://www.westdunn.com/team-members/richard-cross/ (last visited January 2, 2024) and https://www.westdunn.com/team-members/benoit-ben-marc-letendre/ (last visited January 2, 2024).

[5] Cross and Letendre asserted Adams "was simply a co-worker and not 'an agent authorized…to receive service of process.'" But that is a legal conclusion and they did not support it with any facts. Moreover, Mr. Adams did not make the assertion in his own affidavit, which is a glaring omission and provides a reasonable inference that he was such an agent.

her *first* pre-answer motion **under Fed. R. Civ. P. 12(b)** or, if no motion is made, in his or her first responsive pleading. *See* Fed. R. Civ. P. 12(h)(1); 5C Charles Alan Wright Arthur R. Miller, *Federal Practice and Procedure* § 1391 (3d ed. 2004); and *see Trustees of Cent. Laborers' Welfare Fund v. Lowery,* 924 F.2d 731, 732 (7th Cir.1991) ("A party may waive a defense of insufficiency of process by failing to assert it seasonably in a motion or their first responsive pleading."); *Giotis v. Apollo of the Ozarks, Inc.,* 800 F.2d 660, 663 (7th Cir. 1986), *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1303, 94 L.Ed.2d 158 (1987). CJMM, Cross and Letendre did not satisfy this requirement.

On January 12, 2023, CJMM, Cross and Letendre filed a motion to join a pending motion to dismiss filed by another party. (Dkt. 45). Joining a pending motion to dismiss is equivalent to filing the motion to dismiss. Thus, they were required to raise their IP defense in that motion to preserve it. However, examination of their motion to join the pending motion to dismiss reveals no attempt to preserve the IP defense.

The motion to join does not mention any affirmative defense of any kind. (Dkt. 45). However, the motion specifically acknowledges the motion it sought to join "ask[ed] the court to screen and dismiss the complaint." *Id.* CJMM, Curtis and Letendre were fully aware they were joining a Rule 12(b) motion to dismiss and not just a motion to screen. Thus, they knew they were required to raise an IP defense in their motion to join the pending Rule 12(b) motion. But they did not raise it and thereby waived it and all other affirmative defenses they were required to raise on their first Rule 12(b) motion. Waived, they cannot assert an IP defense now and their attempt must be rejected.

## IV.   CJMM/Cross/Letendre Failed to Plead & Waived IP Defense

Decisions of the Court of Appeals for the Seventh Circuit indicates the pleading standard that applies to claims also applies to defenses. *See Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1294 (7th Cir. 1989) (affirmative defenses are subject to all pleading requirements of the Federal Rules of Civil Procedure, and "must set forth a 'short and plain statement' of the defense pursuant to Rule 8(a)). Accordingly, absent further guidance, "most district courts in this circuit, including this one, have applied the

14

plausibility standard to affirmative defenses." *Weber v. Pierce Cnty.*, No. 21-cv-300-wmc, at **3-4 (W.D. Wis. Jan. 18, 2022) citing *Oregon Potato Co. v. Kerry Inc.*, No. 20-cv-92-jdp, 2020 WL 4586401, at *2 (W.D. Wis. Aug. 10, 2020) (collecting cases). Thus, it typically does not "take a rich factual exposition to make an affirmative defense plausible" when coupled with the allegations in the complaint as context. *Nouis Techs., Inc. v. Polaris Indus. Inc.*, No. 14-cv-233-jdp, 2015 WL 3407862, at *2 (W.D. Wis. May 27, 2015).

However, even though a plausible affirmative defense does not require "a rich factual exposition" it does require something. An empty assertion cannot logically acquire any plausibility under any circumstance. Moreover, an assertion in a factual vacuum never gives anyone effective notice of anything, which is the fundamental purpose of the plausibility standard. Thus, a defendant must do more than declare "xyz" affirmative defense to satisfy the plausibility standard and preserve the defense.

"Rule 8(a)(2) requires a short and plain statement of a claim showing entitlement to relief by giving fair notice of the claim ***and the grounds upon which it rests***." *Hartwig v. Experian Info. Sols.*, 23-cv-8-wmc, at *2 (W.D. Wis. May 8, 2023) (emphasis added) citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This pleading requirement does not demand detailed factual allegations. However, the pleader must provide "just enough facts to raise [the claim] above the level of mere speculation." *See Riley v. Vilsack*, 665 F.Supp.2d 994, 997 (W.D. Wis. 2009).

In other words, a plausible affirmative defense claim must be more than a bare bones declaration. It must provide at least some inkling (i.e., the grounds upon which it rests) of *why* the defendant thinks his alleged affirmative defense is plausible. Otherwise, the asserted defense leaves the Plaintiff and the court only guessing at the grounds for it. And guessing is mere speculation not plausibility. Thus, CJMM, Cross and Letendre were required to do more than declare an affirmative defense to preserve it. They also needed to disclose some grounds for it.

CJMM, Cross and Letendre filed four documents with the court in December 2022

and January 2023. They included a Notice of Appearance by Attorney Emmerich (Dkt. 29), a Notice of Appearance by Attorney Sullivan (Dkt. 30), a Motion for Extension of Time (Dkt. 44) and the noted Motion to Join the pending motion to dismiss/screen (Dkt. 45). Only one of these documents mentioned an affirmative defense—the Motion for Extension of Time.

The CJMM, Cross and Letendre Motion for Extension of Time states in part the barest of bare bones affirmative defense declarations:

> By filing this motion, CJMM preserves and does not waive its right to assert any defenses available under Fed. R. Civ. P. 12(b), including defenses relating to improper service of process.

It is the only affirmative defense assertion they filed before November 2023. It is neither procedurally nor substantively enough to preserve any affirmative defense.

A motion for extension of time is not a Rule 12(b) motion and cannot preserve any affirmative defense. However, even if it is treated as a Rule 12(b) motion it still failed to preserve an affirmative defense. This spit ball declaration did not provide even a speck of factual matter on the wall that notified Plaintiff or the court of the grounds for any affirmative defense including an IP defense.

CJMM, Cross, and Letendre certainly had the information then that they have tried to use in their "gotcha" game ten months later. Nothing about the service process changed between December 2022 and November 2023. The only change was a SOL claim opportunity for them if they waited long enough. But, even if they could (they cannot) wait for an ambush chance, they still had to say something that left Plaintiff and the court with something other than speculation. They did not.

A conclusory affirmative defense declaration is worth as much as a conclusory claim declaration—nothing. CJMM, Cross and Letendre never met their burden to raise their affirmative defense claim above mere speculation. They preserved nothing in any of the documents they filed with the court in December 2022 or January 2023. And that is all the court can give them for their effort—nothing. Thus, CJMM, Cross and Letendre **waived all of their potential Rule 12(b) affirmative defenses** including their

alleged IP defense when they failed to satisfy the Rule 8(a) pleading requirements.

## V.    CJMM/Cross/Letendre Conduct Waived IP Defense.

Even if properly raised, CJMM, Cross and Letendre could not preserve an IP affirmative defense in perpetuity. It is well-established that a defendant's conduct can waive an otherwise valid defense. And intentionally dilatory conduct is particularly objectionable activity that can result in surrender of an otherwise valid IP defense. Intentional delay to inflict the most damage with an affirmative defense ambush is not laudable conduct. That is certainly the case here.

The affirmative defense waiver by conduct question in this matter cannot ignore the unique character of the defendants. CJMM, Cross and Letendre are not defendants who only have to satisfy the affirmative defense waiver rules that apply to all defendants. Instead, CJMM, Cross and Letendre owed Plaintiff and the court special duties that must be considered when applying the affirmative defense waiver rules.

CJMM is a collection of lawyers and their supervised subordinates. Cross and Letendre are lawyers. And CJMM lawyers, CJMM staff, Cross and Letendre are all bound to the same mandatory professional duties imposed by the Wisconsin Supreme Court. These duties properly informed the service process issue analysis in Sections I and II of this brief given their application to Attorney Adams and Ms. Bass. They also inform the conduct waiver issue.

The Wisconsin Rules of Professional Conduct provide general and specific directives. One of the most encompassing is set forth in the Preamble which directs a lawyer to "demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials." (Preamble para. [5]). It is hard to fathom how a deliberate affirmative defense ambush comports with this duty. In short, it does not.

CJMM, Cross, and Letendre admit they knowingly and intentionally waited for nearly a year before they decided to give Plaintiff or the court any meaningful notice of their alleged IP defense. The delay, if approved, will unquestionably harm Plaintiff by preventing refiling of his claims. Thus, CJMM, Cross and Letendre demonstrated "respect

for the legal system" by hiding in the weeds for almost a year. Their conduct should not be condoned by any court even if they were not a law firm and lawyers. But the conduct should be repudiated because they are.

## VI.    FAC Did Not Open Door to New IP Defense Pleading.

An amended complaint does not open the door for a new "first" motion by a defendant to resurrect a waived, stale or untoward affirmative defense or assert a new one unless the amended complaint fundamentally "change[s] the scope or theory of the case ***in a way relevant to the new defense***." *Burton v. Ghosh*, 961 F.3d 960 (7th Cir. 2020) (emphasis added); see also Wright & Miller, 5C Federal Practice & Procedure § 1388 ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading."). The FAC did not change the scope or theory of this case in a way relevant to the CJMM, Cross or Letendre IP defense.

The FAC did not add or modify any general factual allegations related to the IP defense asserted by CJMM, Cross or Letendre. The original complaint alleged individual and concerted activity by all defendants. And the FAC did the same.

The FAC did not add or modify any specific factual allegations related to the IP defense asserted by CJMM, Cross or Letendre. The original complaint did not contain specific factual allegations related to service. And the FAC did not add any.

The FAC did not include any new claims or factual allegations that changed the scope or theory of the lawsuit in any manner relevant to an alleged IP defense. The FAC clarified the factual allegations in the original complaint to strengthen support for all of the claims in the original complaint and provide specific notice of two new RICO claims (Claim I and II), aa and a WOCCA claim (Claim XI) associated with those clarified allegations. But, as CJMM, Cross and Letendre acknowledged, these "conspiracy" claims do not differ from concerted conduct theories associated with the same or similar claims in the original complaint.

The original complaint and the FAC posited multiple claims based on concerted

activity legal theories. The original complaint and the FAC do not contain any specific factual allegations related to service of process. And the FAC did not add any new claims or legal theories that triggered different IP defense elements or different statute of limitations periods. Thus, the FAC did not open the door for CJMM, Cross or Letendre to revive their forfeited or waived IP defense. And the court must deny their attempt to force it open.

**VII.   CJMM/Cross/Letendre Forfeited Their Affirmative Defenses Again By Improperly Using a Motion to Dismiss to Assert Them.**

Even if the FAC opened the door for CJMM/Cross/Letendre to revive their IP defense, they needed to raise it in a procedurally permissible manner. They did not. They contravened well-established law and attempted to assert the IP defense in a motion to dismiss and a motion to amend a motion to dismiss by adding factual allegations to Plaintiff's pleadings with multiple affidavits. (Dkts. 86, 87, 88, 99, 100). These grossly improper affidavits must be stricken. And, with them removed, the CJMM, Cross and Letendre motion for dismissal based on their alleged IP defense must not only be denied but the alleged IP defense must be deemed forfeited as a matter of law.

A plaintiff is not obligated to address potential affirmative defenses in his complaint. So, it is well-established that "dismissal is appropriate [under Rule 12(b)(6)] *only* when the factual allegations in the complaint unambiguously establish all the elements of the [affirmative] defense." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (emphasis in original); and *see Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014) ("[A] motion to dismiss based on failure to comply with the statute of limitations should be granted ***only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.***") (internal quotation marks omitted) (emphasis added). Thus, it is also settled law in the Seventh Circuit that if a complaint does not unambiguously contain all elements of an affirmative defense for a defendant, then a motion to dismiss is not a permissible method for doing so. See *Luna Vanegas v. Signet*

*Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022); *Burton v. Ghosh*, 961 F.3d 960, 964-65 (7th Cir. 2020); *H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 631-32 (7th Cir. 2020); *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010), *Forty One News, Inc. v. County of Lake*, 491 F.3d 662, 664 (7th Cir. 2007); *McCready v. eBay, Inc.*, 453 F.3d 882, 892 (7th Cir. 2006). The rationale for this procedural principle is obvious.

A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). So, a motion to dismiss only tests the factual allegations ***a plaintiff provides*** in his complaint. It does not and cannot assess factual allegations of a defendant because there is no procedural mechanism for a defendant to amend a plaintiff's complaint by affidavit or otherwise and add his adverse factual allegations to it. Thus, a defendant cannot unilaterally amend a plaintiff's pleadings with adverse affidavits and then use a motion to dismiss to attack the plaintiff's "amended" pleadings. But that is exactly and impermissibly what CJMM, Cross and Letendre did.

The FAC does not include any factual allegations related to service of process. Plaintiff did not have obligation to address any potential insufficient process affirmative defense of any defendant in this matter. And Plaintiff did not do so. This point is obvious given the fact that CJMM, Cross and Letendre had to use adverse affidavits to "amend" Plaintiff's FAC ***with their factual allegations to support their IP defense***. Thus, the absence of IP factual allegations in the FAC absolutely barred the CJMM, Cross and Letendre motion and they knew it.[6]

But CJMM, Cross, and Letendre cannot unilaterally add new factual allegations ***to Plaintiff's FAC*** with their motion to dismiss and affidavits. The case law in this circuit does not permit such an abhorrent procedural tactic. Plus, CJMM, Cross, and Letendre

---

[6] Incredulously, CJMM, Cross and Letendre cited *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) but deliberately ignored its holding that an affirmative defense can only be raised in a motion to dismiss *if the allegations in the complaint set forth the facts necessary to satisfy* it.

never sought or secured Plaintiff's permission to do so. And Plaintiff is obviously not going give them such permission. Thus, Plaintiff correctly objected to such grossly improper modification of **his** FAC by CJMM, Cross and Letendre. (Dkts. 101 and 106). Unfortunately, the court did not consider the merits of Plaintiff's objections to this procedural assault on his FAC. (Dkts. 102 and 107).

However, if the court disagrees with all of Plaintiff's other arguments for rejecting the untimely IP defense, Plaintiff will incur obvious prejudice and harm from the CJMM, Cross and Letendre motion to dismiss affidavits. These abhorrent pleading "amendments" do not yield just a dismissal of multiple claims. They inflict *a statute of limitations bar on refiling*. (Dkt. 98). Thus, the court must strike the IP defense affidavits from the motion to dismiss and amended motion to dismiss. *See Ill. Tool Works Inc v. ESAB Grp., Inc.*, No. 16-C-201, 2016 WL 8224331, at *1 (E.D. Wis. Sept. 13, 2016) ("To warrant court intervention, the offending defense must give rise to some kind of prejudice, such as actual confusion, or it must at a minimum be shown how striking the matter would streamline the case."). And, separated from the offending affidavits, there is once again nothing left in the motion to dismiss and amended motion to dismiss but a bare bones IP defense declaration that does not even come close to satisfying the Rule 8(a) pleading standard and for the second (or third) time, CJMM, Cross and Letendre forfeited their affirmative defenses again.

## VIII.   CJMM/Cross/Letendre Failed to Justify Delay & Waived Defense.

Federal Rule of Civil Procedure 8(c) requires a party to raise an affirmative defense, including preemption, in the pleadings. *See Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005). The purpose of Rule 8(c) is to avoid unfair surprise and prejudice. Thus, a defendant should inform the court and opposing parties of its intent to assert an affirmative defense as soon as it is "reasonably apparent." *See Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir. 1997). CJMM, Cross and Letendre did not.

Every fact used by CJMM, Cross and Letendre to support their IP defense was known to them in January 2023. The five affidavits they filed do not contain any new IP

defense facts. (Dkts. 86, 87, 88, 99, 100). Yet they intentionally waited in the weeds for almost eleven months to ambush Plaintiff and the court. And they did not offer a single reason for their delay. That is not permissible.

CJMM, Cross, and Letendre were required to show Plaintiff and the court **why** they did not assert their IP defense for almost **eleven months**. *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 482 (7th Cir. 2019) (district court abused its discretion in considering affirmative defense in part because the defendant offered no excuse for the delay). They did not.

There is nothing in any filing from CJMM, Cross or Letendre that even attempts to justify their intentional delay. They do not get a second chance to present one and thereby waived any argument that their delay is justifiable. And, as already noted, the CJMM, Cross and Letendre delay must be deemed acutely offensive and unjustifiable given their mandatory duties as officers of the court to facilitate and promote the administration of justice as a law firm and lawyers even when they are defendants.

An affirmative defense is waived by delayed assertion "only if the plaintiff is harmed by the defendant's delay in asserting it." *Reed*, 915 F.3d at 478 (quoting *Matthews v. Wis. Energy Corp., Inc.*, 642 F.3d 565, 570 (7th Cir. 2011). There is no need to presume or guess if the CJMM/Cross/Letendre "gotcha" strategy harmed Plaintiff. Their motion to dismiss gleefully declares the harm they inflicted with their delay—a statute of limitations expiration. (Dkt. 98, p. 13). Therefore, the CJMM, Cross and Letendre delay unquestionably harmed Plaintiff.

Assuming the court will not approve their bushwhacking tactic, the court must find that CJMM, Cross and Letendre waited too long and thereby waived their right to assert their IP defense. *Sullivan v. Flora, Inc.*, 936 F.3d 562, 573 (7th Cir. 2019) ("Our cases are clear that waiver, not forfeiture, occurs when a defendant waits until the eleventh hour or beyond to raise an affirmative defense and in doing so prejudices the opposing party.") And the court must reject their unseemly and unethical claim to IP defense protection in this lawsuit. *See Carr v. O'Leary*, 167 F.3d 1124, 1126 (7th Cir. 1999) (explaining that a

party's unreasonable delay in advancing an argument "is normally a compelling ground for deeming even a good ground waived").

## IX.  CJMM/Cross/Letendre Did Not Run Out the Clock on All the Claims.

When the facts are undisputed, whether the applicable statute of limitations (SOL) has run on a given claim is a question of law. *Munger v. Seehafer*, 2016 WI. App. 89, ¶18, 372 Wis. 2d 749, 890 N.W.2d 22. Here, the FAC alleges federal RICO claims, state WOCC claims, and other federal and state claims against CJMM, Cross and Letendre. The SOL period has not run on these claims or it is inappropriate to resolve such issue on a motion to dismiss. Accordingly, the CJMM, Cross and Letendre demands for dismissal based on an SOL defense must be denied.

**RICO Claims.** Claims I and II are the RICO claims against CJMM, Cross or Letendre. They are subject to a 4-year statute of limitations. *Agency Holding Corp. v. Malley-Duff Associates, Inc.*, 483 U.S. 143, 156 (1987). A RICO claim accrues and the four-year SOL period commences when a plaintiff knows or should have known of his RICO injury. *See Rotella v. Wood*, 528 U.S. 549, 553, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000); *McCool v. Strata Oil Co.*, 972 F.2d 1452 (7th Cir. 1992) ("[A] RICO claim accrues when the plaintiff discovers [his] injury"). However, "a new cause of action under RICO arises on the occurrence of each separate injury." *Id.*

CJMM, Cross and Letendre did not even attempt to argue that the RICO claims against them are time-barred. They have waived their opportunity to do so. Moreover, the uncontroverted facts show Plaintiff did not suffer even a potential actionable RICO injury to his property or business by CJMM, Cross or Letendre until Cross sent his first letter to the Board on January 14, 2020. (FAC, ¶ 249). Only then could Plaintiff have possibly discovered any potential damage by them to Plaintiff's property or business interests. Thus, the SOL for the RICO claims against CJMM, Cross or Letendre has not expired and Claims I and II against them are not time-barred.

**WOCCA Claims**.[7] The WOCCA claims (Claim XI) against CJMM, Cross and Letendre are the state counterpart to the federal RICO claims. However, Wisconsin provides a six-year SOL for such claims, not the four under RICO. *See* Wis. Stat. § 946.88(1). The most adverse six-year SOL period for Plaintiff expires on July 10, 2024, the day he started work with Sauk County. Therefore, the SOL for Claim XI has not expired and cannot be dismissed on such grounds.

**Other Claims**. The FAC asserts multiple Section 1983 claims (Claims V, VI, VIII, IX)[8] and state law claims (Claims XV, XVI, XVII, XIX and XX) against CJMM, Cross or Letendre. CJMM, Cross and Letendre assert the date of their action(s) or omission(s) is the date of accrual. (Dkt., p. 13). But that is an overly simplistic and wholly insufficient SOL argument.

"Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir.2009). "Further, these defenses typically turn on facts not before the court at that stage in the proceedings." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir.2012). "As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015); and see *Clark v. City of Braidwood,* 318 F.3d 764, 767 (7th Cir.2003) (reversing dismissal because, "at this stage, the question is only whether there is *any* set

---

[7] The FAC inadvertently omitted CJMM and Letendre as WOCCA defendants. However, the factual allegations support such claims against them and they should be considered WOCCA defendants despite the claim caption omissions.

[8] CJMM incorrectly identifies the *Monell* Claim (Claim X) in the FAC against it as a substantive claim subject to a three-year SOL under Wisconsin law. (Dkt. 98, p. 14). But it is not a substantive claim. It is well-established law that a *Monell* "claim" is simply a liability theory that a complaint must affirmatively plead. Therefore, Claim X is not subject to any SOL. And the CJMM assertion that the *Monell* claim is barred by a three-year SOL is frivolous and must be rejected.

of facts that if proven would establish a defense to the statute of limitations, and that possibility exists" (citation omitted)). Thus, weighing the facts to address the merits of an SOL defense is a substantial departure from well-established principles that is justified only in a very narrow class of cases. *Id.*

 Courts in the Seventh Circuit Court of Appeals utilize a "two-part inquiry for determining the accrual of claims." *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004). "First, a court must identify the injury. Next, it must determine the date on which the plaintiff could have sued for that injury." *Id.* (citations omitted). That is the date that the plaintiff knew or should have known that his constitutional rights had been violated. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006).

CJMM, Cross and Letendre did not even engage this two-step accrual inquiry. They did not discuss the potential impact of Plaintiff's mandamus action or other events on Plaintiff's right-to-sue date even though these and other facts might defeat their SOL defense. And their failure to go beyond a simplistic argument not only waived the opportunity but precludes their demand for dismissal of Claims V, VI and VIII based on their alleged SOL defense.

Wisconsin courts also apply the discovery rule as the general accrual rule for all tort and fraud claims. *See* Wis. Stat. § 893.93(1m)(b) (codifying the discovery for fraud claims); *Hansen v. A.H. Robins, Inc.*, 113 Wis. 2d 550, 560, 335 N.W.2d 578 (Wis. 1983) ("[W]e adopt the discovery rule for all tort actions . . . ."). Under Wisconsin's discovery rule, a tort claim accrues when "the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only the fact of injury but also that the injury was probably caused by the defendant's conduct or product," *Borello v. U.S. Oil Co.*, 388 N.W.2d 140, 146 (Wis. 1986), and a fraud claim accrues when the plaintiff discovers "the facts constituting the fraud." Wis. Stat. § 893.93(1m)(b). Statute of limitations defenses under the discovery rule require fact intensive inquiries, normally presenting issues of fact. *See Gumz v. N. States Power Co.*, 2007 WIS 135, ¶ 49, 305 Wis. 2d 263, 742 N.W.2d 271 (Wis. 2007) ("Statute of limitations defenses based on failure to exercise reasonable

diligence will often present questions of fact . . . .").

These issues cannot be fairly resolved at the motion to dismiss stage even if the court considers the improper affidavits filed by CJMM, Cross and Letendre. SOL determinations under Wisconsin law, like determinations under federal law, require a full exploration of facts and other law (e.g., Wis. Stat. § 893.15). CJMM, Cross, and Letendre have not even attempted such an exploration, much less analyzed all facts or addressed relevant law. Thus, their demand for dismissal of any state law claims based on an alleged SOL defense under Wisconsin law must be rejected.

## X.   The FAC Alleges Plausible Claims Against CJMM, Cross and Letendre.

CJMM, Cross and Letendre put nearly all their dismissal eggs in the statute of limitations basket. So, they put very little effort into challenging the legal sufficiency of the FAC factual allegations that support the federal and state-law claims against them. That was their strategic choice. And they do not get a second chance in their reply brief to assert new objections they did not make in their initial brief. Thus, CJMM, Cross and Letendre conceded the legal sufficiency of the FAC as to every federal and state claim against them except for a handful of objections.[9] But those objections are frivolous and do not support their demands for dismissal.

### A.   The CJMM/Cross/Letendre "No Conspiracy" Objection is Frivolous.

The FAC includes a RICO (Claim I), RICO Conspiracy (Claim II), Section 1983 Conspiracy (Claim IX), a Wisconsin organized criminal activity claim (Claim XI), and Wisconsin state law civil conspiracy claim (Claim XVIII). Defendants describe these as "conspiracy claims" in their brief. (Dkt. 98, p. 14). CJMM, Cross and Letendre asserted one collective challenge to these claims. And they did so with one conclusory statement: "Sending a few emails to a public entity on behalf of clients does not constitute a conspiracy under federal or state law." *Id.*

---

[9] CJMM, Cross and Letendre incorporated the arguments of co-defendants (Dkts. 82) in its brief. (Dkt. 98, p. 14). Plaintiff likewise incorporates his responses (Dkts. 112. 113. 115) to those arguments herein. And for the reasons stated, the CJMM, Cross and Letendre dismissal demands based on those incorporated arguments must be rejected.

One sentence is not an argument. It demands—once again—Plaintiff and the court use their time and resources to construct a real argument for CJMM, Cross and Letendre and then respond to it. Plaintiff is (forcibly) retired. But he is not even remotely interested in doing the work for himself and any other defendant in this lawsuit. If CJMM, Cross, Letendre or any other defendant has a real argument to make, it is time for them to start doing it and stop wasting time with simplistic assertions that are plopped on the court calendar as if the pile of goo they just shared might be worthy of analysis or debate. The court should reject the CJMM, Cross, Letendre single-sentence argument summarily for lack of effort. Moreover, their proposition is legally and factually frivolous.

Claim I against CJMM, Cross and Letendre is not a conspiracy claim. A simple reading of the RICO provisions cited in Claim I and Claim II shows the FAC does allege a RICO conspiracy claim against them. But it is Claim II, not Claim I. Claim I is the RICO **enterprise conduct** claim. Thus, the CJMM, Cross, Letendre objection to Claim I for lack of "conspiracy" evidence is frivolous and must be rejected.

Claims II, IX, XI and XVIII are conspiracy claims. And, although overlooked by CJMM, Cross and Letendre, Claims XV, XVI, XVII, and XIX are also conspiracy claims against them. But these conspiracy claims do not and need not rest only on the acts or omissions of CJMM, Cross and Letendre. A conspiracy claim against a conspiracy participant does not succeed or fail based on the number of actions or omissions he committed. **One participatory action or omission is sufficient to be a co-conspirator**. The reasons are obvious.

If a conspiracy claim depended on the number conspiracy acts or omissions by a participant, then a bunch of "smart" co-conspirators would all agree to only commit one or two acts in furtherance of some unlawful purpose. According to the CJMM/Cross/Letendre legal theory, these obvious co-conspirators could successfully but illogically avoid any claim they were involved in a conspiracy. For obvious reasons, this legal theory and the objection based on it lack merit. Thus, the CJMM, Cross and letendre "no conspiracy" objection must be rejected.

### B.  CJMM's *Monell* Claim Objections Are Frivolous

Plaintiff also alleges a Monell claim (Claim X) against CJMM. CJMM responded to the allegations with zero analysis and a one sentence objection. This is not an argument that Plaintiff or the court must enhance for CJMM and then refute. CJMM did not do its own work to support the argument. And it is waived.

Even on the merits the objection is unsound. It is uncontroverted that Cross and Letendre were CJMM agents capable of acting as final policymakers for CJMM. The FAC clearly alleges without any objection that Cross and Letendre committed multiple actions/omission of grossly unethical conduct. The FAC clearly alleges without any objection that Cross and Letendre committed intentional acts or omissions that supported criminal conduct of the County Clients. The FAC clearly alleges without any objection the County Clients criminal conduct that Cross and Letendre supported obstructed justice and interfered with lawful conduct of Plaintiff. Thus, the FAC includes uncontroverted factual allegations that plausibly support the allegation that CJMM "maintained Obstruct Justice, Failure to Train and Hostile Interference customs." (Dkt. 62, ¶ 411). CJMM's contrary assertions are factually and legally frivolous. And they must be rejected.

### C.  CJMM's Claim XX Objections Are Frivolous.

Plaintiff alleges a state-law claim (Claim XX) for negligent hiring, training and supervision against CJMM. (FAC, ¶¶490-519). CJMM responded with a one paragraph objection. After citing one case for the claim elements, CJMM finished its response with three sentences:

> In this instance, Richard Cross has been licensed as an attorney in Wisconsin since 1977. In other words, the file was being supervised by an attorney with 43 years' experience as of 2020. Under those circumstances, the plaintiff cannot show a breach of the duty of care by the firm and the claim fails as a matter of law.

There are multiple reasons why the CJMM objection must be rejected.

First, three sentences are not an argument. It is a woefully undeveloped proposition that neither Plaintiff nor the court is required to consider. Second, CJMM

does not explain why the court must construe facts in its favor (which is what its proposition requires) when the law compels the court to do exactly the opposite. Finally, CJMM could not even cite a single decision to support its quite novel but quite illogical assertion that a law firm enjoys immunity from negligent training or supervision claims simply because "the file was being supervised by an attorney with 43 years' experience." CJMM's objections to Claim XX are undeveloped and frivolous. They must be rejected.

## CONCLUSION

CJMM, Cross and Letendre demand dismissal based on purported statute of limitations assertions and a "no conspiracy" proposition. For the reasons stated, those assertions and proposition are factually and legally meritless. Their demands for dismissal of the claims against them must be denied. Moreover, their proposition that Plaintiff's valid legal claims cannot be resolved on the merits because they "successfully" hid in the weeds for almost a year and ran out the clock is offensive.

CJMM, Cross and Letendre kept their mouths shut for almost a year and then tried to ambush Plaintiff and the court with their gotcha moment. And they still screwed it up after months to prepare. But their almost comedic bungling is no laughing matter in a real court where justice and fairness are also real. The CJMM, Cross, and Letendre ambush exemplifies conduct a legitimate legal system cannot condone. And it is particularly appalling behavior by lawyers, officers of the court.

The CJMM, Cross and Letendre procedural ambush does however perfectly mirror their malicious actions and omissions in 2020 that severely injured Plaintiff. It handed Plaintiff even more evidence to support his claims against them. And their demand that the court give them a pass on consequences for their prior misconduct based on a repeat offense must be denied.

Dated this 2nd day of January 2024.

Electronically signed by Daniel M. Olson
Daniel M. Olson
Plaintiff *Pro se*

29

4700 Dale Street
Unit 202
McFarland, WI 53558
608.520.2440
olsonvsaukcounty@yahoo.com