IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DANIEL M. OLSON,

                Plaintiff,                OPINION and ORDER

v.

                                        22-cv-562-wmc

SAUK COUNTY, et al.,

                Defendants.

On July 12, 2024, this court dismissed plaintiff Daniel Olson's claims against 59 defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and 42 U.S.C. § 1983 for failure to state a claim, declined to exercise supplemental jurisdiction over his state law claims, and denied Olson's motion to disqualify the attorneys representing the county defendants. (Dkt. #172.) Olson, who is representing himself, has now moved: (1) to alter or amend the court's judgment under Federal Rule of Civil Procedure 59 and file a second amended complaint under Rule 15(a)(2) to dismiss defendant Jane Doe, add four new attorney defendants, and correct various pleading deficiencies identified in his first amended complaint (dkt. #176); (2) for leave to amend his pleading to dismiss defendants Hawks Quindel, S.C. and Colin Good, with whom he has reached a settlement (dkt. #184); and (3) for my recusal under 28 U.S.C. § 455(a) and to stay all proceedings pending resolution of this motion (dkt. ##188, 192, and 195). For the reasons below, the court will deny these motions and not reopen this case.

OPINION

As discussed in this court's dismissal order, Olson is a former corporation counsel for defendant Sauk County who was terminated in March 2020, a little less than two years after he was appointed to the position. The named defendants include Sauk County and current

and former county board supervisors, officers, and personnel, along with several of their attorneys and insurers. Olson has challenged both my impartiality and substantive rulings on his claims, which I will address separately.

## I. Motion for Recusal

For the first time in this lawsuit spanning over two years, Olson contends that I should recuse myself from any further post-judgment proceedings because of my: (1) deliberate failure to disclose a conflict of interest with defendants Richard Cross and Cross, Jenks Mercer & Maffei, LLP, with whom Olson previously reached a settlement in April 2024 (*see* dkt. #151 and #171); (2) statements that various actions by the parties constituted "political infighting" (*see* dkt. #172, at 8-9 and 20); and (3) willful refusal to disqualify the county's attorneys despite what Olson sees as obvious evidence of "fraudulent representation" (*see* dkt. #188, at 12-13). As support, Olson cites authority requiring recusal when the judge's "impartiality might reasonably be questioned," and when "he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(a) and (b)(1); *see also Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."); *United States v. Walsh*, 47 F.4th 491, 499 (7th Cir. 2022) ("Even when there is insufficient evidence of actual bias, recusal may still be required by § 455(a), which aims 'to avoid even the appearance of partiality.'"). Olson's arguments are not persuasive and do not require extended discussion.

*First*, Olson notes that in 2009, I identified in a judicial nominee questionnaire that one of the 10 most significant matters I had litigated was *Noah's Ark Family Park v. Bd. of Review*,

573 N.W. 2d 387 (Wis. 1998), in which I represented the plaintiff from 1995 to 1999, and Richard Cross and Cross, Jenks, Mercer & Maffei represented the defendants. (*See* dkt. #188, at 6.) While Olson takes issue with my failure to disclose these facts to him in this case, my dealings with Cross and his law firm ended 23 years before this case was filed in September 2022. Even past employment relationships do not require recusal when, as in this case, an extended period of time has passed and those relationships did not give the judge any inside knowledge about the case. *E.g., In re Draper v. Reynolds*, 369 F.3d 1270, 1281 (11th Cir. 2004) (judge's impartiality could not be reasonably questioned based on affiliation with law firm 15 years prior to lawsuit); *United States v. Walton*, 56 F.3d 551 (4th Cir. 1995) (fact that sentencing judge was senior partner at law firm that represented defendant 20 years prior was too attenuated to require judge's recusal); *Smith v. City of Chicago,* No. 21-cv-1159, 2024 WL 2722620, at *17 (N.D. Ill. May 28, 2024) (summarizing cases) ("Numerous other courts have [] recognized that the passage of an extended period of time is relevant to the inquiry of whether a reasonable person would question a judge's impartiality.").

Here, not only is the relationship decades old, but it was an *adverse* one, in which Cross and his firm represented the opposing party to my client. Moreover, Olson settled his claims with these particular defendants before I issued any dispositive rulings adverse to Olson. Regardless, having *no* recent or current relationship with Cross or the law firm of any kind, there is no basis to question my impartiality.

*Second*, Olson claims that I "smeared" him by falsely implying that he "knowingly used his status and authority as a government lawyer for political hackery (or personal gain)." (Dkt. #188, at 9.) However, a review of the dismissal order shows that the only references I made to politics or political infighting were in my descriptions of *defendants'* activities. (*See* dkt. #172, at 8 (finding that McCumber's January 2020 petition to consider placing Olson on

3

administrative leave and appoint an interim corporation counsel resulted in accusations against Olson and "infighting among the board of supervisors, county staff, and the outside counsel"), 9 ("Infighting and complaints among the board of supervisors regarding Olson's suspension and his allegations against county supervisors and staff continued throughout early February 2020."), and 20 ("C. Spencer's February 2020 email concerning a plan to remove or hamper the new county board chair after the 2018 election . . . [a]t most . . . describes political infighting and attacks among the board's minority and majority members, not an agreement.").) While I noted in a footnote that "Olson's complaint is devoted to a demonstration of just how contentious local and personal politics can be" (*id*. at 3 n.6), a reasonable observer could not read that or any other statement to imply that *Olson's* complaints of corruption and criminal activity were politically motivated or made for personal gain. Indeed, I expressly held that "[c]ertainly, many of the issues raised by Olson, particularly in his reports to the board, plainly involve important public concerns that may merit public scrutiny." (Dkt. #172, at 27.)

*Third*, and finally, Olson accuses me of aiding and abetting the fraudulent representation of the county because Attolles Law and two of its attorneys, Matthew Thome and K. Scott Wagner, have never been authorized to represent Sauk County in this lawsuit. Olson bases his accusation on my denial of several motions he made related to his request for disqualification of the law firm and its attorneys. (*See* dkt. ##166 and 168 (declining to consider Olson's motion for sanctions related to the death of a defendant before resolving motions to dismiss); dkt. #172, at 2 (dismissing Olson's motions related to sanctions, discovery, and substitution of a party as moot because Olson's lawsuit and motion for disqualification were dismissed on their merits); and dkt. #172, at 9-15 (dismissing Olson's motion for disqualification for lack of standing).) Olson's disagreement with my findings and

4

rulings, no matter how false or misguided he believes they are, is insufficient by itself to show the deep-seated favoritism or antagonism required for recusal. *See Liteky*, 510 U.S. at 555 ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves . . . they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal.").

Absent evidence of a conflict of interest, the appearance of a conflict, or no other basis to question my impartiality, Olson's motion for recusal must be denied.

## II.  Motion to Alter or Amend Judgment

To prevail on a motion for reconsideration under Rule 59(e), Olson "must present either newly discovered evidence or establish a manifest error of law or fact." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Thus, motions for reconsideration are "not properly utilized to advance arguments or theories that could and should have been made before the district court rendered a judgment." *Anderson v. Cath. Bishop of Chi.*, 759 F.3d 645, 653 (7th Cir. 2014). In addition, Rule 59(e) does not allow a party to rehash previously rejected arguments. *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014). Finally, a manifest error of law is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto*, 224 F.3d at 606.

While he clearly disagrees with the court's determinations that there are no grounds to disqualify Attolles Law or Attorneys Thome and Wagner, or that his allegations fail to state a federal claim upon which relief may be granted against any defendant, Olson fails to show that these determinations resulted from manifest errors of law or fact. Instead, Olson rehashes

several of the arguments that he made in responding to defendants' motions to dismiss, reasserting that: (1) he plausibly alleged defendants committed a host of federal and state crimes constituting a pattern of racketeering under RICO leading to his suspension and termination of his employment contract; (2) defendants' numerous criminal offenses, especially those associated with the death of C.M. in 2016 and an alleged agreement defendant Charles Spencer had with 15 county board members to oust or obstruct Olson, constituted a shocking abuse of power that violated his fundamental rights under the due process clause; (3) defendants violated his procedural due process rights by depriving him of a multitude of property and liberty interests in addition to his employment; and (4) he engaged in speech protected under the First Amendment as a lawyer, separate and distinct from his public management role, both before and after his termination.

Not only do these arguments wholly fail to establish one of the allowable grounds for relief under Rule 59(e), but as explained at length in the court's earlier opinion and order, Olson's sweeping allegations of a county-wide, corruption scheme spanning nearly a decade, including a period before he was hired as corporation counsel in June 2018, fall far short of permitting a plausible inference that any of the various county officials, insurance companies, and law firms named as defendants conspired in an ongoing pattern of joint decision-making to harm Olson specifically. Further, contrary to Olson's contention, the court did not ignore his allegations that defendants committed felonies in violation of Wisconsin state law, including an alleged cover-up of C.M.'s death before Olson took office, and the alleged plan to oust Olson after he was employed. (Dkt. #172, at 3-6, 20.) Instead, the court concluded for the reasons discussed in its previous opinion that Olson's complaint, at most, alleges a state law contract or employment dispute, not the kind of long-term, criminal conspiracy required to state a civil RICO claim.

While Olson also bases his substantive due process claim on defendants' alleged "criminal plan to destroy his employment relationship with the county," such claims are limited to violations of more fundamental rights than continued employment. (*See* dkt. #172, at 38-39 (citing *Nelson v. City of Chicago*, 992 F.3d 599, 604 39 (7th Cir. 2021); *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010)). This is especially true here given the court's finding that Olson had no constitutionally-protected interest in his employment. (*Id.*) Similarly, while Olson contends that the court ignored *other* property and liberty interests not related to his employment, he still fails to identify or otherwise describe these *non*-employment interests, despite the court noting his vague references to business, reputational, legal, contractual, and financial interests, but finding that he had no plausible entitlement or actual claim to such benefits. (Dkt. #172, at 32-35 (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) ("[T]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.").)

Finally, Olson again argues that he made numerous statements of public concern in his professional capacity as a lawyer, and not as corporation counsel, that are protected from retaliation under the First Amendment. However, as the court explained at length in its opinion and dismissal order, "an employee's speech about misconduct affecting an area within [his] responsibility is considered pursuant to [his] employment even when [he] is not strictly required to make it." *Hatcher v. Bd. of Trs. of S. Ill. Univ.*, 829 F.3d 531, 539 (7th Cir. 2016), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016); *see also Fehlman v. Mankowski*, 588 F. Supp. 3d 917, 924 (W.D. Wis. 2022), *aff'd*, 74 F.4th 872 (7th Cir. 2023) ("[T]he court of appeals has consistently held that an employee's complaints about

workplace misconduct aren't protected under the First Amendment, even when the employee's express job duties didn't include a duty to report that misconduct.").

While Olson further accuses the court of ignoring his "post-termination speech" as a basis for his First Amendment retaliation claim, the court expressly noted that even though Olson allegedly filed notices of breach of contract claims, investigation inquiries, and a notice of intent to sue, all of those filings occurred *after* Olson was terminated in May 2020, *and* Olson fails to allege what retaliation he suffered and how it could have plausibly affected him once no longer employed by the county. (*See* dkt. #172, at 27 n.16.)

### III.  Motion for Leave to Amend Complaint

Alternatively, Olson seeks to amend his complaint a second time to fix the deficiencies identified by the court in the dismissal order. The Seventh Circuit recently clarified in *Taylor v. Salvation Army National Corp.*, 110 F.4th 1017, 1033 (7th Cir. 2024) (citing *KAP Holdings, LLC v. MarCone Appliance Parts Co.*, 55 F.4th 517, 528 (7th Cir. 2022)), that post-judgment motions for leave to amend in cases in which "a district court enters judgment at the same time it first dismisses a case," must be evaluated under Rule 15(a)(2) without first requiring the moving party to meet Rule 59(e)'s more stringent requirements. *See also Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) ("A district court cannot nullify the liberal right to amend under Rule 15(a)(2) by entering judgment prematurely at the same time it dismisses a complaint that would be amended."); *but see Fannon v. Guidant Corp.*, 583 F.3d 995, 1002 (7th Cir. 2009) ("[W]e have held that, once a final judgment has been entered, the normal right to amend once as a matter of course under Fed. R. Civ. P. 15(a) is extinguished.").

Regardless, Olson's proposed second amended complaint does *not* cure the deficiencies that the court identified with his first amended complaint, and continuing further on this path

8

would unduly prejudice defendants. *See Taylor*, 110 F.4th at 1033 (district court may deny post-judgment leave to amend if the amendment would be futile); *Johnson v. Cypress Hill*, 641 F.3d 867, 871-72 (7th Cir. 2011) (internal citation omitted) ("[D]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile.").

Because Olson filed a 116-page, proposed second amended complaint that did not identify the new or revised allegations he believes resolve deficiencies in his first amended complaint, the court ordered Olson to file a redline version of his second amended complaint highlighting these new allegations, as well as crossing out any deleted allegations as compared to the first amended complaint, and a short, supplemental brief identifying the new allegations he believes resolve the deficiencies identified in the dismissal order. (Dkt. #181.) In his response, Olson states that he seeks leave to amend his complaint to: (1) dismiss defendant Jane Doe, whom he never served; (2) correct certain deficiencies the court previously identified with his RICO, First Amendment, and procedural and substantive due process claims;[1] and (3) add Attolles Law, Thome, Wagner, and Brent Miller as defendants to his existing claims.

As defendants' point out, therefore, Olson's proposed amendments largely consist of wordsmithing, irrelevant information, or legal conclusions couched as factual allegations in an apparent attempt to avoid the court's past findings. Despite its considerable length, however,

---

[1] The proposed second amended complaint omits Olson's previously-pled substantive due process claim based on wrongful termination and Fourth Amendment claim of unlawful seizure of his personal property, but Olson does not address these claims in any of his briefing. In addition, while Olson has made several proposed changes and deletions to his state law claims, he agrees that it is not necessary to address those proposed amendments at this point because the court has declined to exercise supplemental jurisdiction over these claims in the absence of any federal claim. (*See* dkt. #183, at 1 ("Plaintiff seeks to redress by his SAC only addressed the FAC federal claims and declined to exercise supplemental jurisdiction on Plaintiff's state law claims.").)

there is little new in the second amended complaint as compared to the first, and what is new does not state a separated, plausible claim for relief under federal law. Accordingly, the court will deny Olson leave to amend his first amended complaint because those amendments would be futile for the same reasons discussed in this court's earlier order. Further, because the court finds that Olson's new allegations fail to cure the deficiencies identified in the first amended complaint, which was dismissed, it is unnecessary to address his requests to: (1) dismiss defendants Doe, Hawks Quindel, and Good; or (2) add Attolle Law, Miller, Thome, and Wagner as "general defendants" based on the same allegations. Both motions are moot.

ORDER

IT IS ORDERED that plaintiff Daniel Olson's motions for recusal and a stay (dkt. ##188, 192, and 195), to alter or amend this court's judgment and for leave to file a second amended complaint (dkt. #176), and for leave to amend his complaint to dismiss defendants Hawks Quindel, S.C. and Colin Good (dkt. #184) voluntarily are DENIED.

Entered this 17th day of June, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge